## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 20–cr–00418** |
| v. | |
| **JOSE TORRES,** | **OPINION** |
| **Defendant.** | |

**KIEL**, U.S.M.J.

**THIS MATTER** comes before the Court on the Government's motion for a protective order pursuant to Federal Rule of Criminal Procedure 16(d)(1) and Title 18, United States Code, Section 3771(a) (Motion). (ECF No. 42.) Jose Torres (Defendant) opposes the Government's Motion. (ECF No 51.) The Government filed a reply to Defendant's opposition. (ECF No. 52.) For the following reasons, the Government's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I.    INDICTMENT AND ALLEGATIONS

On May 29, 2020, a grand jury returned an indictment charging Defendant with three counts of violating Title 18, United States Code, Section 2422(a) by knowingly persuading, inducing, enticing, and coercing three victims to travel in interstate or foreign commerce to engage in prostitution and other criminal sexual activities. (ECF No. 32.) Allegedly, upon luring the victims to New Jersey, Defendant "bec[ame] aggressive, often assaulting and raping [the victims]," while refusing to pay them for their services. (ECF No. 1 p. 4.) Defendant allegedly told one victim that he was a police officer, which "[s]cared [the victim] of the possible consequences of getting turned in." (*Id.* p. 5.) Defendant allegedly threatened

another victim by telling her "it would be in her best interest to not leave or attempt to leave." (ECF No. 42 p. 9.)

## II. BAIL HEARING

On March 17, 2020, this Court determined that "there was no condition or combination of conditions that would reasonably assure the safety of the community" to warrant releasing Defendant on bail. *United States v. Torres*, No. 20–10059, 2020 WL 2512892, at *1 (D.N.J. May 14, 2020) (reciting the findings from the bail hearing conducted on March 17, 2020). This Court concluded:

> [t]he totality of the circumstantial evidence, the statements from the two alleged victims, and the results of the law enforcement authorities' investigation, paint an alarming picture of a person who presents a serious danger to the community and, in particular, to commercial sex workers. The bail package proposed by Defendant at the first hearing did not overcome the clear and convincing evidence demonstrating the danger to the community, if Defendant were released.

*Id.* at *3.[1]

After the Government and Defendant presented new information, this Court reopened Defendant's detention hearing. *Id.* Defendant presented "a $200,000 bond secured by a residential property, three 'friends' who [were] willing to be cosigners for the bond, and two third-party custodians." *Id.* The Government objected to Defendant's release and presented new information that it "found over 100 contacts in foreign countries in Defendant's mobile phones, which were seized at the time of his arrest" and that Defendant had made about 65 international phone calls in the prior two months. *Id.*

---

[1] Following the entry of the Court's opinion and order on May 14, 2020, the Government added a third charge for similar alleged conduct on which Defendant was indicted. This charge involved a third victim. (ECF No. 32.) Subsequently, while the Motion was pending, a grand jury returned a superseding indictment to add a fourth count relating to a fourth victim on July 31, 2020. (ECF No. 55.)

This Court again denied Defendant's application for release on bail on May 14, 2020.   This Court determined that "the serious charges against Defendant and his substantial ties to South America … require[] Defendant's continued pretrial detention.   The Government has shown, by the preponderance of the evidence, that Defendant is a serious flight risk."   *Id.* at \*4.

### III.    PRESENT MOTION

On June 22, 2020, the Government filed the Motion for the entry of a protective order.   It claims a protective order is necessary to safeguard the alleged victims' identities and personal information.   The Government proposes the Court permit it to designate material to be produced in discovery as "Protected Information," "Redacted Materials," or "Unrestricted Materials."   (ECF No. 42 p. 1.)

"Protected Information" would include sexually explicit information or images of victims or witnesses, visual depictions of victims or witnesses, and/or other materials identifying victims or witnesses. (ECF No. 42–1 p. 1.)  "Protected Information" would be disclosed only to Defendant's counsel and Defendant's investigators and experts.   Defendant would not be permitted to review "Protected Information."   (*Id.* p. 2.)

"Redacted Materials" would include materials subject to redaction because they otherwise identify potential victims or witnesses or contain sensitive information.  (*Id.* pp. 1–2.)  Defendant would be able to review a single copy of "Redacted Materials."   Defendant would not be permitted to share these materials with anyone and would be required to return these materials at the conclusion of the case.   (*Id.* p. 2.)

"Unrestricted Materials" would include all other discovery not subject to restriction or redaction.   (*Id.*)  Defendant would be able to retain a single copy of "Unrestricted Materials," with the understanding that he cannot share these materials with anyone.   (*Id.*)

The Government's proposal would require Defendant's counsel to notify his staff and experts about the prohibitions of the protective order before sharing the

materials with them.  (*Id.*)  Though not included in its proposed protective order, the Government also requests that Defendant's counsel obtain a certification from each person to whom discovery is disclosed.  (ECF No. 42 p. 2.)  Further, the Government's proposal would require the redaction from all discovery materials of the alleged victims' last names or any other identifying information.  (ECF No. 42–1 p. 3.)  The Government seeks this order pursuant to Federal Rule of Criminal Procedure 16(d)(1) and Title 18, United States Code, Section 3771(a) due to the nature of the allegations and crimes with which Defendant has been charged, combined with the sexually explicit and sensitive nature of the discovery materials. (ECF No. 42 p. 5.)

Defendant opposes the Motion, arguing that the proposed protective order would "unconstitutionally restrict[] [Defendant] from participating in his defense and [would] amount[] to a deprivation of his Sixth Amendment right to effective assistance of counsel."  (ECF No. 51 p. 1.)  Defendant argues he and his counsel presently cannot communicate meaningfully, which impedes counsel's ability to effectively and zealously represent Defendant.  (*Id.*)  Further, Defendant argues that Defendant's inability to review "Protected Information" is "troubling" because it "completely eradicates the ability to participate and assist in his defense," as these items "may likely be the most informative of the allegations and the accusers from which they are coming."  (*Id.* p. 2.)

Defendant objects to the Government's request to require certifications from persons to whom Defendant's counsel will disclose discovery materials.  Defendant believes this requirement "is an unduly burdensome and unnecessary component," because investigators and experts may be discouraged from participating in this case. Defendant's counsel suggests that his explanation of the prohibitions to these people would be "sufficient to ensure compliance with the intent and purpose of the Protective Order."  (*Id.* pp. 2–3.)  Defendant also objects to the Government's proposal to redact information from discovery without "seeing the nature and essence of the redactions."  (*Id.* p. 2 n.1.)

## ANALYSIS

### I.    RELEVANT LAW

"[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).   Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."   While a court order is generally not needed for the parties to conduct discovery, the Court "has the inherent right to enter an order under this rule." Fed.R.Crim.P. 16 Advisory Committee's Notes (1974 amendments). "Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed."   *Id.*

For civil cases, "it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection."   *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citing *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir. 1989)).   A protective order is appropriate where a party has shown "with specificity" that "disclosure will work a clearly defined and serious injury to the party seeking closure."   *Id.* (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).   However, "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing."   *Id.* (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

In *Pansy*, the Third Circuit used a balancing test to determine whether good cause existed for a protective order.   *Id.* at 787.   The test balanced "the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled."   *Id.* (citations omitted).   The Third Circuit has adopted

this test for criminal cases. *See United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007). The Court should consider the following non-exhaustive factors:

> 1. whether disclosure will violate any privacy interests;
>
> 2. whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> 3. whether disclosure of the information will cause a party embarrassment;
>
> 4. whether confidentiality is being sought over information important to public health and safety;
>
> 5. whether the sharing of information among litigants will promote fairness and efficiency;
>
> 6. whether a party benefitting from the order of confidentiality is a public entity or official; and
>
> 7. whether the case involves issues important to the public.

*United States v. Johnson*, 191 F.Supp.3d 363, 368–69 (M.D. Pa. 2016) (citing *United States v. Luchko*, No. 06–00319, 2007 WL 1651139, at *6–7 (E.D. Pa. June 6, 2007), *Wecht*, 484 F.3d at 211, and *Pansy*, 23 F.3d at 787–91).

Separately, the Crime Victims' Rights Act (CVRA) provides victims of crime with a collection of rights including the "right to be reasonably protected from the accused" and the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). Courts around the country have relied on the CVRA to find good cause for entry of protective orders. *See United States v. Patkar*, No. 06–00250, 2008 WL 233062, at *5 (D. Haw. Jan. 28, 2008) ("[The victim] thus has an unquestionable right to be treated with fairness and with respect for his dignity and privacy. Congress, in effect, has determined that failure to treat a victim with fairness and with respect to privacy works a clearly defined and serious injury to the victim. This right fully supports a finding of good cause to limit disclosure of [the victim's] documents.") (internal quotations omitted); *United States v. Tsethlikai*, No. 18–01392, 2018 WL 3801248, at *2 (D.N.M. Aug. 9, 2018) (the CVRA "requires that victims are treated with fairness, and with respect for their dignity and privacy, which are interests also at stake in the disclosure of [the victim's]

medical records."); *United States v. Tsosie*, No. 18–00738, 2018 WL 2745114, at *5 (D.N.M. June 6, 2018) ("Keeping the confidential material confined to only those who need it, and requiring that [the victim's] name and personal information be redacted in public filings, protects [the victim's] privacy interest."); *see generally United States v. Gakhal*, No. 15–00470, 2015 WL 5559852 (N.D. Ill. Sept. 17, 2015) (granting a protective order in reliance upon Federal Rule of Criminal Procedure 16(d)(1) and the CVRA).

Good cause for a protective order must be balanced with an accused's constitutional right to the effective assistance of counsel in criminal prosecutions. *See* U.S. Const. amend. VI.   "The right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments is indispensable to the fair administration of our adversarial system of criminal justice."  *Maine v. Moulton*, 474 U.S. 159, 168 (1985).   This right "attaches at earlier, critical stages in the criminal justice process where the results might well settle the accused's fate and reduce the trial itself to a mere formality."  *Id.* at 170 (citations and internal quotations omitted).   The Government has "an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel."  *Id.* at 171.   However, a protective order prohibiting defense counsel from sharing certain discovery with the defendant does not violate that defendant's Sixth Amendment rights.   *See United States v. Moore*, No. 12–02193, 2013 WL 3742414, at *5 (E.D. Pa. July 17, 2013) ("Because [the defendant's] counsel complied with a valid Protective Order, he was not ineffective for failing to give [the defendant] copies of this discovery prior to trial or prior to filing his appeal.   Moreover, [the defendant] has not shown how the failure to provide him with the requested discovery material resulted in prejudice against him.").

## II.   THE GOVERNMENT HAS SHOWN GOOD CAUSE FOR A PROTECTIVE ORDER.

### A.   Application of the balancing test provides good cause.

The Government has shown good cause to grant the Motion.   Under the Government's proposal, Defendant would be able to possess and review all discovery materials, except for materials deemed "Protected Information."   (ECF No. 42 pp. 8–9.)   Defendant's counsel would not be prohibited from reviewing "Protected Information."   Thus, the Government's proposal will not hamper the ability of Defendant and Defendant's counsel to formulate a defense.   *See* discussion *infra* Section III.

The victims' privacy interests are implicated because of the highly sensitive and personal nature of some of the information to be produced in discovery.   The Government has proffered that discovery materials will include explicit photographs taken without the alleged victims' consent, intimate statements, and detailed information about events that allegedly humiliated and horrified the victims.   (ECF No. 42 pp. 4–5.)   The disclosure of these sensitive materials would likely cause "particularly serious" embarrassment to the victims and, potentially, economic harm. *See Pansy*, 23 F.3d at 787.

For example, Defendant has already allegedly distributed explicit photographs of at least one victim.   Further dissemination of these photographs is likely to cause further embarrassment and humiliation to the alleged victims.   Disclosure of these materials also poses risks to the victims' employment.   Specifically, two of the referenced victims are no longer engaged in the commercial sex business.   These victims reasonably fear that information about their conduct will reach their current employers.

Additionally, "Protected Information" in the nature of sexually explicit and visually identifying images of the victims is banned from the Essex County Correctional Facility (ECCF) where Defendant is currently housed.   (ECF No. 42 p. 9 n.3.)   Defendant will be able to review all discovery that is allowed in the ECCF

and Defendant's counsel will be able to review all discovery.  The Government's proposal strikes a reasonable balance for  fairness and efficiency in consideration of the serious privacy and safety concerns of the alleged victims.

Lastly, the discovery materials are not related to the issue of the general public's health and safety.  Discovery in this case will only relate to the criminal charges against Defendant.

### B.    The rights of the alleged victims under the CVRA provide additional good cause.

Providing Defendant unfettered access to and unlimited use of discovery materials containing the personal information of the alleged victims conflicts with the victims' rights under the CVRA.   *See* 18 U.S.C. § 3771(a)(1), (8).   Victims have the right to be treated with fairness and respect for their dignity and privacy, and the right to be reasonably protected from the accused.   *Id.*

Courts have applied the rights under the CVRA to find good cause to enter a protective order.   For example, in *United States v. Tsethlikai*, the court entered a protective order to limit the defendant's access to and retention of certain discovery materials, including the victim's medical records and photographs taken by a Sexual Assault Nurse Examiner.   The defendant had been charged with aggravated sexual abuse by force and threat.   *See* 2018 WL 3801248, at *1.   The court reasoned that the protective order was needed to protect the privacy and dignity of the victim by ensuring that the defendant did not have access to the victim's medical records.   *Id.* at *2–3.   The court elaborated that these medical records fell within the victim's right to privacy over her private and sensitive information because they contained intimate facts of a personal nature.   *Id.*[2]

---

[2] While the court granted a protective order requiring the defendant to return certain discovery materials, such as medical records and photographs, it denied part of the Government's proposal requiring the return of audio and visual materials containing personally sensitive and identifying information. Instead, the court ordered the Government to redact the personally identifiable and sensitive information before disclosing the materials to the defendant.   However, unlike *Tsethlikai*, requiring Defendant to return

The result should be no different here. The materials the Government seeks to restrict access to and to limit the dissemination of may be considered equally personal and embarrassing to the alleged victims as the materials protected in *Tsethlikai*. In considering the Government's proffer of the nature of the materials it seeks to protect and the important rights granted victims under the CVRA, the Court finds good cause for the entry of the protective order.

### III.   THE PROPOSED PROTECTIVE ORDER DOES NOT INFRINGE ON DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

The Government's proposed protective order does not violate Defendant's Sixth Amendment rights. Even with the protective order in place, Defendant will maintain the full effective assistance of counsel. The parties agree that the Government's proposal would allow Defendant to review all discovery, other than "Protected Information." Although Defendant will not personally have access to "Protected Information," Defendant's counsel will be able to review the "Protected Information" and can discuss it with Defendant to prepare his client's defense. However, Defendant will have access to all other discovery. In this way, the protective order does not "eradicate[ ] [Defendant's] ability to participate and assist in his defense," as Defendant argues. (ECF No. 51 p. 2.) The Government's proposal aims to limit Defendant's possession of particularly sensitive material and to prevent the dissemination of those materials. Along these same lines, the added requirement that Defendant's counsel must obtain a certification from anyone to whom discovery is disclosed provides a reasonable layer of security for the victims without unduly burdening or hampering Defendant's counsel. Given the potential for harm and embarrassment to the alleged victims should certain discovery materials become public, the requested certification from anyone to whom discovery is disclosed is reasonable.

_____

"Redacted Materials" at the conclusion of this case is warranted due to Defendant's prior alleged misuse and manipulation of victim information.

It appears the main focus of the opposition of Defendant's counsel, however, is Defendant's purported fear that there will be an "inability to meaningfully communicate with [Defendant]," particularly in light of Defendant's detention combined with the COVID-19 pandemic.  (*Id.* pp. 1–2.)  To address the challenges presented by the pandemic, the ECCF has implemented the following policies to ensure communication between client and attorney:

> 19(n). Transitioned all attorney and contact visits to window visits only and expanded the window visit schedule.
>
> 20(g). ECCF facilitates confidential telephone calls between detainees and inmates and their attorneys. Every housing area has a set of tablets that inmates and detainees can use to make telephone calls.   Attorneys may contact the Inmate/Detainee Advocate to arrange for a telephone call with their client.   The inmate or detainee can use headphones while speaking with their attorney.
>
> 20(k). On or about April 1, 2020, ECCF opened a dedicated room within the visitor's lobby wired to support video conferencing capability between inmates and detainees and their attorneys at the facility.
>
> 20(l). From the POD, inmates and detainees can make a non-confidential calls [sic] to the attorneys for 15 minutes. Advocates can initiate calls to inmates or detainees on a confidential line for up to 99 minutes.

(ECF No. 52–1.)

While the pandemic undoubtedly presents added difficulties for Defendant's counsel to communicate with Defendant, these concerns do not implicate the proposed protective order.   The protective order does not infringe on Defendant's Sixth Amendment rights.

The Government has requested permission to designate certain discovery materials as "Unrestricted Materials," which would not be subject to "restriction or redaction."   The Government, however, seeks to limit Defendant to "a single copy of 'Unrestricted Materials'" and to prohibit Defendant from disseminating

"Unrestricted Materials" to the public or any other individuals.   (ECF No. 42–1 p. 2.)   The Government has not provided any basis to restrict "Unrestricted Materials." The Court, accordingly, denies this portion of the Motion.

## IV.   THE GOVERNMENT MAY REDACT THE VICTIMS' LAST NAMES IN DISCOVERY MATERIALS.

Courts frequently allow victims of sex crimes and witnesses to conceal their full identities in discovery materials or while testifying.   *See, e.g., United States v. Paris*, No. 06–00064, 2007 WL 1484974, at *2 (D. Conn. May 18, 2007) (allowing former sex workers to testify using their first names and last initials to protect them from the adverse consequences of information about their past lives being disclosed publicly and because the protection of these individuals' identities does not impede the public's ability to stay informed); *United States v. Corley*, No. 13–00048, 2016 WL 9022508, at *4 (S.D.N.Y. Jan. 15, 2016) (finding "good cause for the entry of a protective order keeping [the defendant] from having access to the surnames of the minor victims" because "[c]oncealing the victims' surnames protects their privacy and safety."); *United States v. Thompson*, 178 F.Supp.3d 86, 96 (W.D.N.Y. 2016) ("Given the anticipated explicit and sensitive nature of the evidence in this case, the Government has a compelling interest in protecting the victims from likely adverse personal, professional and psychological consequences of linking their identities to their past lives as sex workers.") (internal citations and quotations omitted).   The Government has proffered that the victims have expressed fear of Defendant learning their names and personal information, and of repercussions in their employment if the information the Government seeks to protect were to be disseminated.   The Government has a compelling interest in concealing the last names of the victims.

The Court must also consider what interest the public and the press have in the victims' identities.   *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (holding that the public has a right to attend criminal trials).   *But see Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982) (holding that the right of access to criminal trials is not absolute and that the Government's attempt

to inhibit disclosure of sensitive information must be necessitated by a compelling government interest).   While the public and the press maintain an interest in this case, the redaction of the victims' last names does not impede the ability of the public and the press to follow the case.  *See Thompson*, 178 F.Supp.3d at 96.   The *Thompson* court held that:

> the limited scope of the Government's proposed protective order—limiting identification to the victims' first names and last initial—shows that the protective order would be narrowly tailored to serve the interests identified above. Even with the Government's proposed limit in place, the press and the public would still be able to attend trial and follow the testimony and evidence.  In particular, the public and press will be able to hear the victims' testimony in full.   The only information that would be denied to the public and the press is the victims' complete last names. Thus, the First Amendment interests underlying the press and the public's right to access criminal trials would still be fully served: even with the Government's proposed protective order in place, the trial in this case would still [be] open to public scrutiny, and it would still foster an appearance of fairness.

*Id.* (internal citations and quotations omitted).

As in *Thompson*, the redaction of the last names of the victims does not impinge on the right of the press and the public to access criminal trials.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.   The Court will enter an appropriate protective order consistent with this opinion.

_/s/ Edward S. Kiel_
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**

Date:  August 4, 2020