

**U.S. Department of Justice**

*U.S. Attorney's Office, District of New Jersey*

*AUSA Sabrina G. Comizzoli*
*970 Broad Street, Suite 700*
*Newark, NJ 07102*

*(973) 645-2878*
*FAX (973) 297-2007*

June 11, 2021

**BY ECF AND EMAIL**

The Honorable Brian R. Martinotti
United States District Court
Martin Luther King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, N.J.  07102

 Re: *United States v. Jose Torres*, 20-Cr-418
 <u>**Government's Response to Defendant's Oral Motion For Internal**</u>
 <u>**Department of Justice Communications**</u>

Dear Judge Martinotti:

 Please accept this response to Defendant Jose Torres' oral request, made during oral argument on May 11, 2021, Tr. at 25,[1] to obtain a communication, provided to the U.S. Attorney's Office ("USAO") by its legal counsel, the General Counsel ("GCO") for the Executive Office of U.S. Attorneys ("EOUSA") at the Department of Justice ("DOJ").

 As this Court is aware, during that oral argument, this Court denied Torres' fifth bail motion, which had been based, in part, upon his claim that AUSA Emma Spiro had a conflict of interest. In so ruling, Your Honor found that no conflict of interest existed, nor was there any appearance of a conflict of interest. Tr. at 14; ECF #95. In its briefing on the conflict issue, the Government had informed the Court and Torres that the USAO had sought and received advice (hereinafter "advice") from GCO and the outcome of that advice: that AUSA Spiro has no financial conflict of interest, nor a prohibited "covered relationship" with any of the parties to this

---

 [1] "Tr." refers to the transcript of this Court's May 11, 2021 oral argument; "ECF # __" refers to specific docket entries in this matter.

litigation or their representatives.[2] Further, the Government informed Torres and the Court that GCO explicitly authorized AUSA Spiro to participate in this matter.[3]

After failing to show that AUSA Spiro had a conflict of interest or the appearance of a conflict of interest, Torres nevertheless sought discovery of the internal DOJ advice, without citing any case law for the proposition that he is entitled to it, nor articulating any need for it. As discussed further below, the Government objects to the disclosure of the advice because it is an attorney-client privileged communication, covered by the deliberative process privilege, and not discoverable under Fed. R. Crim. P. 16, nor under Jencks, Giglio, or Brady.

## I.    THE ADVICE IS PROTECTED BY THE ATTORNEY CLIENT PRIVILEGE.

"The attorney—client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The privilege applies to (1) a communication (2) between privileged persons (3) made in confidence (4) for the purpose of obtaining or providing legal counsel. *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). "Privileged persons" include the client, the attorneys, and any of their agents who help facilitate attorney-client communications. *Id.* The privilege does not merely protect facts divulged by a client to the attorney, it also includes opinions given by the attorney to the client and the communications between attorneys that reflect client-supplied information. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005). The purpose of the attorney-client privilege is "to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 209 (D.D.C. 2010) (internal citation omitted). The attorney-client privilege is not limited to the litigation context. *See Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 114.

A government agency, like a private party, "needs … assurance of confidentiality so it will not be deterred from full and frank communications with its

---

[2] *See* ECF #88 at 3-4 & #92 at 3-4.

[3] As the Government stated during oral argument, should the Court wish to see the advice, the Government will provide it *ex parte* and *in camera*. Tr. at 25.

counselors." *In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998). Accordingly, unless applicable law provides otherwise, the Government may invoke the attorney-client privilege "to protect confidential communications between Government officials and Government attorneys." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011). Within the agency context, the attorney-client privilege shields "counseling[ ] intended to assist the agency in protecting its interests," as well as "legal advice and recommendations regarding agency action." *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 79, 80 (D.D.C. 2014) (cleaned up). Likewise, the privilege "applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees." *Judicial Watch v. U.S. Dep't of the Army*, 466 F. Supp. 2d 112, 121 (D.D.C. 2006) (*citing Upjohn*, 449 U.S. at 392-97).

GCO provides guidance and legal advice to all personnel in U.S. Attorney's Offices regarding government ethics matters, such as conflicts of interest, recusals, outside activities, and financial disclosure reports. GCO attorneys serve as legal advisors or "in-house" ethics counsel to individual personnel in the USAO, including the U.S. Attorney, seeking legal advice, thus creating an attorney-client relationship between that individual and the GCO. Consequently, as numerous courts have held, GCO's advice to an inquiring AUSA or U.S. Attorney's Office, who are constituents of the DOJ, is protected by the attorney-client privilege of the DOJ. S*ee, e.g., Marquez-Marin v. Lynch*, 2018 WL 1358214, *8 (D. P.R. 2018) (in employment discrimination matter, denying plaintiff's request for correspondence between GCO and USAO that was designed to provide or obtain legal advice on human resource matters based on attorney-client privilege); *Bartko v. U.S. Dep't of Justice*, 2018 WL 4608239, *11 (D.D.C. 2018) (granting summary judgment to EOUSA, finding that email chain containing USAO's request for legal advice from EOUSA, and GCO's provision of that advice in response, to be properly withheld from FOIA production under the attorney-client privilege); *Doe v. United States*, 2015 WL 4077440, *12 (S.D. Fla. 2015) (alleged victims of Jeffrey Epstein who sued DOJ under Crime Victims' Rights Act were not entitled to communications between USAO and GCO related to reason why USAO was "conflicted out" of case); *Aaron v. U.S. Dep't of Justice*, 2011 WL 13253641, *6 (D.D.C. 2011) (communications between U.S. Attorney and GCO regarding recusal were confidential communications, protected by attorney-client privilege); *Parker v. U.S. Dep't of Justice*, 68 F.Supp.3d 218, 230 (D.D.C. 2014) (confidential communications between EOUSA and GCO with respect to AUSA's unauthorized practice of law fell under attorney-client privilege and were properly withheld from FOIA response).

3

Here, the client, the USAO, sought legal advice in confidence from its attorney, GCO, and GCO rendered its legal advice to the USAO. Therefore, the attorney-client privilege applies to the advice, which was a "communication," "between privileged persons," "made in confidence" "for the purpose" of "providing legal counsel." *In re Teleglobe Comm'ns*, 493 F.3d at 359. Disclosure of the advice would deprive USAO personnel, and the DOJ in general, of the benefit of confidential advice from GCO attorneys when navigating ethics issues, including potential conflicts of interest. *See In re Lindsey*, 148 F.3d at 1105 (government agency "needs … assurance of confidentiality so it will not be deterred from full and frank communications with its counselors.").

Torres offers no compelling reason, and in fact no reason at all, to pierce the attorney-client privilege. Indeed, Torres already knows the outcome of the advice: GCO authorized the Acting U.S. Attorney to allow AUSA Spiro to continue to participate in the case. Torres is not entitled to see the document itself. *See, e.g.*, *United States v. Fieger*, 2008 WL 205804, *15 (E.D. Mich. 2008) (Fieger sought internal DOJ legal opinion forming basis of recusal of top three USAO officials from his case; court ruled that while that the Government had to reveal *the reasons* for the recusal, it was not required to turn over the internal DOJ recusal memorandum itself).

## II. THE ADVICE IS ALSO PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE, AND TORRES HAS NOT DEMONSTRATED ANY NEED FOR IT.

Designed to protect the quality of executive agency decision-making, *see NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 149, 151 (1975), the deliberative process privilege is a privilege uniquely available to the Government, *see Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001). The privilege applies to "decision making of executive officials generally," and protects documents containing deliberations that are part of the process by which government decisions are formulated. *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997). "Although this privilege is most commonly encountered in Freedom of Information Act litigation, it originated as a common law privilege." *Id.* at 737.

The privilege "recognizes that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Redland Soccer Club, Inc. v. U.S. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995) (internal citation omitted). As the Supreme Court has explained, "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves

4

if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n.*, 532 U.S. 1, 8-9 (2001) (citation omitted). Notably, documents generated by ethics counsel, in particular, have been found to be "exactly" what should be protected by the deliberative process privilege. *Broderick v. Shad*, 117 F.R.D. 311 (D.D.C. 1987) ("[A]ny handwritten notes of the Ethics officer and counsel, recommendations, opinions, or conclusions should be redacted from these documents before disclosure, as those portions are protected by the deliberative process privilege.").

An agency may withhold information under the deliberative process privilege if it is both "predecisional" and "deliberative." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007). "A document is predecisional if it was drafted to aid a decision maker in reaching his or her decision, and it is deliberative if it reflects the give-and-take of the consultative process." *Quatanani v. U.S. Dep't of Justice*, Nos. 12-4042 & 12-5379 (KSH), 2015 WL 1472227, *8 (D. N.J. Mar. 31, 2015) (cleaned up). Courts should afford "considerable deference to an agency's judgment as to what constitutes part of the agency give-and-take – of the deliberative process[.]" *Gosen v. U.S. Citizenship & Immigration Servs.*, 118 F. Supp. 3d 232, 244 (D.D.C. 2015) (cleaned up).

The "deliberative process privilege is qualified and can be overcome by a sufficient showing of need outweighing the harm that might result from disclosure." 2 *Testimonial Privileges* § 9:10 (3d ed.); *Sears Roebuck*, 421 U.S. at 149 n. 16. The Third Circuit has held that "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case ... or by making a *prima facie* showing of misconduct." *Redland*, 55 F.3d at 854. "This need determination is to be made flexibly on a case-by-case, *ad hoc* basis." *In re Sealed Case*, 121 F.3d at 737-738. A district court, in balancing the interests, "should consider at least the following factors: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Redland,* 55 F.3d at 854 (internal citation omitted).

Here, the Government easily meets the initial burden of showing that the advice is protected by the deliberative process privilege. General Counsel's advice

to the USAO is protected by the deliberative process privilege because the advice was both predecisional and deliberative. The advice was predecisional because it was sent by GCO to the Acting U.S. Attorney in order to assist her in determining the appropriate course of action to pursue, *i.e.* whether AUSA Spiro should remain assigned to the matter. In addition, the advice is deliberative. It is an internal DOJ document intended to assist in the development of the USAO's final position on the issue. The advice contains the facts GCO relied upon and weighed as well as its analysis, opinions, suggestions, and evaluative commentary.

In considering the applicability of the deliberative process privilege, this Court must also consider the effects of the disclosure on General Counsel's future consultations with U.S. Attorneys and employees of their offices. *See City of Virginia Beach, VA v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) ("[T]he ultimate questions posed by the deliberative process privilege [are] whether the materials bear on the formulation or exercise of agency policy-oriented judgment and whether disclosure would tend to diminish candor within an agency.") (cleaned up). If General Counsel's deliberations and discussions were disclosed, it could compromise the necessarily confidential and candid relationship General Counsel maintains with employees of U.S. Attorney's Offices and impair the ability of U.S. Attorney's Offices to receive highly specialized advice and support. *See Am. Petroleum Inst. v. U.S. E.P.A.*, 846 F. Supp. 83, 89 (D.D.C. 1994) (documents containing recommendations and opinions on policy or legal matters were deliberative communications).

The foregoing demonstrates that the Government has met its burden to show the applicability of the deliberative process privilege. But, it is Torres's burden to establish that his need for the information outweighs the interest of the Government in preventing its disclosure. *Redland*, 55 F.3d at 854. Torres has not articulated any need whatsoever for disclosure of the advice. It is not relevant to the Government's proofs, nor to his defense. By contrast, the Government's interest in protecting the deliberative process privilege is strong. On balance, Torres cannot meet his burden of demonstrating that his need outweighs the harm from disclosure.[4]

---

[4] The DOJ has not waived either the attorney-client privilege or its deliberative process privilege; it has not quoted the advice, nor revealed its details to the Court, Torres, or any third parties. *See, e.g.*, *Rockwell*, 235 F.3d at 604. Rather, the advice, which was marked "attorney-client privileged," was intended to be, and has been, kept confidential.

## III.    THE ADVICE IS NOT OTHERWISE DISCOVERABLE UNDER RULE 16, NOR IS IT JENCKS, GIGLIO, OR BRADY.

Finally, the legal advice the Government received is not discoverable by Torres for purposes of his trial preparation and defense against the Government's case in chief. The advice does not contain witness statements, which would be discoverable under the Jencks Act, 18 U.S.C. § 3500. Nor is it exculpatory or impeaching for Brady or Giglio purposes. Further, as an "internal government document," it is explicitly exempt from discovery under Rule 16 of the Federal Rules of Criminal Procedure, which states:

> **Information Not Subject to Disclosure.** Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or *other internal government documents made by an attorney for the government* … in connection with investigating or prosecuting the case.

Fed. R. Crim. P. 16(a)(2) (emphasis added).

The advice does not fall within any of the categories of items required to be disclosed by Rule 16(a)(1). It is an "internal government document" made by attorneys for the Government in connection with the prosecution of this case. *See United States v. Armstrong*, 517 U.S. 456, 461-62 (1996) (Rule 16(a)(2) "exempts from defense inspection … internal government documents made by the attorney for the government … in connection with the investigation or prosecution of the case."); *see also United States v. Elliott*, 363 F.Supp.2d 439, 449 (N.D. N.Y. 2005) (denying defendant's request for discovery of documents related to the decision to prosecute him federally rather than in state court because defendant "offered no factual support demonstrating that such records are material to any defense he intends to raise or to his guilt or punishment" and because "internal government documents" are not subject to discovery under Rule 16(a)(2)).

## IV.    CONCLUSION

As Your Honor has already found, there is no conflict or an appearance of a conflict. Moreover, Torres already knows the ultimate decision encapsulated in General Counsel's advice. Torres has cited no law supporting his entitlement to the actual document, nor has he explained why he needs it or how he might use it.

After consultation with General Counsel and supervisors within the Criminal Division of the USAO, the Acting U.S. Attorney has determined that AUSA Spiro should remain assigned to this case, which she has investigated and prosecuted for almost two years. AUSA Spiro has shepherded dozens of search warrants, evaluated a sizeable amount of evidence, interviewed numerous witnesses, and produced discovery. AUSA Spiro has deep knowledge of the proofs and familiarity with witnesses. She has done nothing improper; in fact, as Your Honor found, "she has done everything she was supposed to do following the regulations." Tr. at 13. With trial scheduled in less than four months, it would not be in the interests of justice to reassign this matter to another AUSA.

Should the Court need any further information regarding this issue, I would be more than happy to provide it.

Very truly yours,

RACHAEL A. HONIG
Acting United States Attorney

By:    s/ SABRINA G. COMIZZOLI
Assistant United States Attorney

CC:    David Schafer, Esq.
AUSA Emma Spiro
AUSA Shawn Barnes

8