**DAVID E. SCHAFER**
*Attorney-at-Law*
3131 Princeton Pike
Bldg. 2B, Suite 105
Lawrenceville, NJ 08648
(609)439-7790
schafdave@gmail.com

Honorable Brian R. Martinotti                                     June 30, 2021
United States District Judge

*United States v. Jose Torres*
Crim. No. 20-418 (BRM)

**REPLY TO GOVERNMENT'S RESPONSE TO TORRES' MOTION FOR
DISCLOSURE OF GENERAL COUNSEL'S COMMUNICATION TO THE UNITED
STATES ATTORNEY FOR THE DISTRICT OF NEW JERSEY REGARDING AN
INQUIRY ON CONFLICT OF INTEREST IN THE PROSECUTION OF TORRES**

### I. Whether the Advice Is Protected by the Attorney-Client Privilege

Torres' request for the communication by the Attorney General's General Counsel answering the query by the New Jersey U.S Attorney as to a potential conflict of interest in the prosecution of Torres will not have any chilling effect on future queries by any U.S. Attorneys or their staffs, since Torres is not requesting the query, only the Attorney General's answer on such a potential conflict of interest, a policy decision.

Only two of the fourteen cases cited by the Government regarding Point I of its Response have precedential value, one by the Supreme Court and one by the Third Circuit. The remainder are mostly civil cases, with a few criminal cases, on issues such as grand jury questions and recusal rather than conflict of interest. They are often misquoted and summarized in a misleading fashion.

*Fed. R. Crim. Proc.* 501, "Privilege in General," states:

> The common law—as interpreted by United States courts in the light
> of reason and experience—governs a claim of privilege unless any of the
> following provides otherwise:
> *the United States Constitution
> *a federal statute; or
> *rules prescribed by the Supreme Court.
> *But in a civil case,* state law governs privilege regarding a claim or
> defense for which state law supplies the rule of decision (emphasis added).

The eight cases the Government cites from the District of Columbia—the one circuit that contains no states—has its own governing set of rules in the civil forum. Moreover, the civil cases the Government cites outside the District of Columbia, from the District Courts of Puerto

1

Rico and Southern Florida, allowed *in camera* review of the both the query and the answer—an alternative to which was part of Torres' motion but which the Government did not specifically address in its Response:

> Recognizing that a party seeking production often will not be able to prove an exception to a privilege without having access to the document(s) in question, a party can request that the court conduct an *in camera* review in order to insure the proper balance is struck between one party's assertion of privilege and another's need for relevant documents (citation omitted).

> "The decision whether to engage in *in camera* review rests in the sound discretion of the district court." (Citation omitted).

*Marquis-Marin v. Lynch*, 2018 U.S Dist. LEXIS 43786 at *8, 2018 WL 1358214, (D. PR 2018). *See, also, Doe v. United States*, 2015 U.S. Dist. LEXIS 87203, 2015 WL 4077440 (S.D. FL) ("Intervenor Jeffrey Epstein supports the Government's assertion that certain grand jury materials should remain secret …").

Torres asserts that General Counsel's answer to the query by the New Jersey U.S. Attorney is not privileged. He totally agrees with the Government's cite to *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) to "promote broader public interests in the observance of law and administration of justice" (Government Response at 2-14). However, this is a criminal case, where Torres' due process rights under the Fifth Amendment come into play. Rather than being privileged, General Counsel's decision to continue the prosecution of Torres in this unique indictment by an AUSA who was recently associated with a firm representing at least two of the victims questions fair and impartial targeting. The decision appears to be a policy decision that is brand-new and should be revealed to the general public. Whether or not Torres paid the alleged victims is suddenly of no consequence; the mere fact that he offered sums of money to the alleged victims advertising their wares over the Internet apparently now is approved by the Department of Justice to constitute enticement, the second element of 18 U.S.C. §2422. Every john in America should now be on notice that he or she will be subject to federal prosecution under this statute.

The Government's citing of *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F. 3d 345 (3d Cir. 2007) was full of misquotes (*e.g.*, compare the Government's Response at 4-4 to 8 to the text of the case: "made in confidence" is not a quote; "providing legal counsel" is not a quote). Torres submits that his due process rights to a fair and impartial indictment demands that he obtains full notice of what occurred leading up to that process:

> The privilege does, after all, hinder the truth-seeking process, and so we carefully police its use. *United States v. Doe*, 429 F. 3d 450, 453 (3d Cir. 2005).

2

*Teleglobe, supra* at 361.

After the General Counsel's communication was sent to the New Jersey U.S. Attorney and filtered down to the AUSA handling the case, the logical next step was that the AUSA would have forwarded the communication—or a summary of it—to the lawyers of the alleged victims, in particular those members of the firm from which she had recently left, to assure them that her involvement was not a conflict of interest according to the General Counsel. The Sher Tremonte attorneys representing some of the alleged victims have a noteworthy history of criminal defense, and it is probable that they were aware of the potential conflict.

> The disclosure rule operates as a corollary to this principle: if a client subsequently shares a privileged communication with a third party, then it is no longer confidential, and the privilege ceases to protect it.
>
> ....
>
> Disclosing a communication to a third party unquestionably waives the privilege.

*Teleglobe, id.* at 361.

The Government cites another civil case to assert the impenetrable barrier of the privilege, and yet the page noted does not mention "conflict of interest." *In re Lindsey*, 148 F. 3d 1100, 1105 (D.C. Cir. 1998) (similar to the Epstein case, this grand jury issue with regard to Paula Jones suing former President Clinton makes interesting reading, but it does not bolster the Government's position):

> Although *Rule 501* manifests a congressional desire to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis, ..., the Supreme Court has been 'disciplined to exercise this authority expansively.' ... 'These exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' ... Consequently, federal courts do not recognize evidentiary privileges unless doing so 'promotes sufficiently important interests to outweigh the need for probative evidence.'

*In re Lindsey, supra* at 1104.

Also, *Lindsey* notes that Government guidance within its agencies does not merit the same strict privilege as individuals and their attorneys:

> In the instant case, by contrast, there is no such existing body of caselaw upon which to rely and no clear principle that the government attorney-client privilege has as broad a scope as its

3

> personal counterpart. Because the "attorney-client privilege must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'"

*Id.* at 1108; citations omitted.

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest ... is not that it shall win a case, but that justice shall be done.

*Id.* at 1109, f. n. 4; citations omitted.

## II. Whether the Advice Is Protected by the Deliberative Process Privilege

In *Redlands Soccer Club v. Department of the Army*, 55 F.3d 827, 854 (3d Cir. 1995), the Third Circuit stated:

> This Court has previously stated that 'the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case ....

Using the balancing test of the D.C. Circuit that the Third Circuit adopted, *ibid,* Torres asserts that he overcomes the Government's claim of the deliberative process privilege.

First, the relevance of General Counsel's communication to the New Jersey U.S. Attorney is far greater to Torres than it is to the Government. He needs to know the reason why he has been indicted for the three elements listed in 18 U.S.C. §2422(a)—enticement of a person across state lines for the purpose of prostitution—when all the Government has addressed in causing him to be detained for a year and a half was alleged violence, foreign ties and failure to pay, none of which are elements of the six counts.

Secondly, Torres cannot determine General Counsel's policy on the alleged conflict of interest or the policy behind his extraordinary indictment by any other means.

Third, the criminal nature of this case alone, with the specter of a maximum imprisonment term of twenty years if convicted, makes it more serious than any civil case.

Fourth, the Government is a party to the case, not a witness. Torres is seeking a single document, not the fifty-nine requested in *Redland Soccer Club. Ibid.*

Fifth, Torres addressed on page 1 of this Memorandum why his request for only the response to the query will not cause future timidity to a U.S. Attorney considering a query.

Finally, neither the Government's March 22, 2021 Response (Docket #88) at 4-2 and 3, nor the Government's April 20, 2021 Sur-Reply (Docket #92) at 3-17 to 4-5, provides the date of General Counsel's communication to the New Jersey U.S. Attorney's query. This is crucial as to the deliberative process privilege, for if it postdated August of 2019, it was after the New Jersey U.S. Attorney's decision to prosecute Torres and outside the privilege:

> For a communication to be "pre-decisional," the communication must be "antecedent to the adoption of an agency policy. Communications that occur *after* a policy has already been settled upon—for example, a communication promulgating or implementing an established policy—are *not* privileged."

*Aaron v. United States DOJ*, 2011 U.S. Dist. LEXIS 164342 *23, 2011 WL 13253641 (D.D.C. 2011) (citations omitted, emphasis included).

In conclusion, if the Court does not grant Torres' request to order the Government to disclose General Counsel's communication to New Jersey's U.S. Attorney regarding the alleged conflict of interest in his case, Torres requests that the Court order the Government to disclose it to him for an *in camera* review. This will ensure that it will be preserved as part of the record:

> This Court recognizes that district judges examine matters *in camera*, and if they find the matter to be privileged, or not relevant, do not disclose the information. The matter, however, becomes part of the record—it does not revert back to the party that submitted it and disappear. The Court will not destroy that part of the record in this case. Further, the Court recognizes that if the information provided is relevant to the Court's ruling, the Court must consider the information in reaching its ruling.

*United States v. Fieger*, 2008 U.S. Dist. LEXIS 5043, *21 and 22; 2008 WL 205244; *see, also,* 2008 U.S. Dist. LEXIS 11848 (E.D. Mich., Feb. 19, 2008).

Respectfully submitted,

David Schafer
Attorney for Jose Torres