UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | RESPONSE TO GOVERNMENT's |
| v. | : | MOTIONS *IN LIMINE* |
| JOSE TORRES | : | CRIM. NO. 20-418 (BRM) |

MEMORANDUM OF LAW

David E. Schafer
3131 Princeton Pike
Bldg. 2B, Suite 105
Lawrenceville, NJ 08648
(609)439-7790
FAX: (609)896-3184
schafdave@gmail.com

## I. THE DISTRICT COURT SHOULD SUBSTANTIALLY LIMIT THE GOVERNMENT'S INTRODUCTION OF EVIDENCE THAT IT CLAIMS IS INTRINSIC OR OTHERWISE ADMISSIBLE UNDER *FED. R. EVID.* 404(b)

### A. Evidence that Torres Allegedly Assaulted and Threatened the Charged Victims

The Government's proposed evidence of alleged assaults and threats Torres made to the six charged victims are not intrinsic because they allegedly occurred after the three elements of the crime would have been completed, thereby excluding them from "directly prov(ing)" the crime. *United States v. Green*, 617 F. 3d 233, 248 (3d Cir. 2010). The charged victims either enticed Torres by their prostitution adds on various websites or by referrals from other prostitutes, or Torres enticed them as the Government charges. The Government has overwhelming evidence that the women communicated with Torres and crossed state lines into New Jersey for the purpose of prostitution in either a hotel or other place of rendezvous. Torres concedes these last two elements, even though the Government is allowed to introduce evidence to prove them despite his stipulation. *Old Chief v. United States*, 519 U.S. 172, 189, 117 S. Ct. 644 (1997). Once inside the hotel or other place of rendezvous, the crime is over if the Government can prove Torres' enticement element. Anything that happened thereafter, whether it was part of the prostitution agreement or not, cannot rationally bolster the enticement, interstate or prostitution elements.

The alleged assaults and threats are also not intrinsic because they do not "facilitate the commission of the *charged* crime." *Green, id.* at 249. They would have occurred inside the hotel or other place after the three elements had either occurred or not. The women travelled across state lines for prostitution purposes. Any assault or threat at the hotel or other place could not have facilitated those two elements and would not have facilitated the enticement element.

1

Likewise, the Government's proposed evidence of alleged assaults and threats by Torres at the hotel or other place should not be admitted under *Fed. R. Evid.* 404(b). The evidence under this rule must have a proper purpose that is "probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S. Ct. 1496 (1988). Alleged assaults or threats in the hotel or other place are not material to any of the three elements. They only are material in trying to prove that Torres' character is so amoral that he not only did not pay the prostitutes for their services, but also assaulted or threatened them:

> (a)lthough the government will hardly admit it, the reasons proffered to admit prior bad act evidence may often be Potemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact *as well as to impugn the defendant's character* (emphasis added).

*United States v. Jemal*, 26 F. 3d 1267, 1272 (3d Cir. 1994) (citing *United States v. Sampson*, 980 F. 2d 883, 886 (3d Cir. 1992)); see, also, "a false front or façade." Webster's New World College Dictionary, Third Edition (Potemkin being the Russian field marshal who "built fake villages to deceive Catherine the Great about his accomplishments").

Furthermore, even if the Court finds the alleged assaults or threats have some material bearing on proving 18 U.S.C. §2422(a), it's probative value "is substantially outweighed by *a danger* ... of unfair prejudice, confusing the issues, misleading the jury." *Fed. R. Evid.* 403 (emphasis added). The Government's dependence on *United States v. Williams*, 291 F.3d 1180 (9th Cir. 2002) is misplaced. (Memorandum of the United States (hereinafter "Memorandum") at page 6). Williams was charged and convicted of four counts under 18 U.S.C. §2423(a) "transporting a minor in interstate commerce to engage in prostitution," *id.* at 1183, as well as the instant statute charging Torres. Williams "was a pimp" who employed "violent control" over

2

15-year old girls and forced them to go from state to state to prostitute themselves and give him their proceeds. *Id.* at 1184-85. It is clear from the *per curiam* decision that Williams' brutally violent acts upon the girls before and after the interstate travel was intrinsic evidence to prove under §2423(a) Williams' intent for the girls to both engage in prostitution and travel across state lines with him for that purpose:

> The beatings were an integral part of the transactions that constituted the crimes charged. Defendant was charged with *persuading young girls to become prostitutes and transporting those young girls in interstate commerce* for the purpose of prostitution. Although Defendant is correct that the violent acts were not statutory elements of proof, *the assaults were the means by which Defendant maintained the necessary control over his victims so as to carry out the crimes charged.*

*Id.* at 1189 (emphasis added).

In other words, Torres' alleged assaults or threats did not facilitate his commission of the "charged offense, *i.e.*, the sexual activity component of prostitution." (Memorandum at 6-5 to 6). Rather, in each instance of the six counts, the sexual activity that both Torres and the women had agreed upon before and after the interstate travel had already been completed by the time that any alleged assaults or threats occurred; any additional activity afterward was irrelevant or at best carries the danger of the jury convicting Torres on account of his assaulting or threatening the women. Williams used his violence to persuade; Torres' alleged assaults or threats were not connected to the crimes charged.

The next case cited by the Government is similar to *Williams*, where the violent pimp, also convicted of 18 U.S.C. §2423(a), terrorizes his underage charges: "These violent acts are relevant and probative of Mann Act violations because they were done to control and discipline prostitutes …." *United States v. Evans*, 285 F. 3d 664, 670 (8th Cir. 2002). None of the six

women in the instant case were controlled or disciplined by Torres to serve as prostitutes; any alleged violence or threat in the hotel or other place were after the fact and not "inextricably intertwined" with the offense.

The Government's cite to *Wilkerson v. United States*, 342 F. 2d 807 (8th Cir. 1965) continues the detour away from the statute in the instant case to court rulings on other statutes generally lumped together under the "Mann Act." Wilkerson was another forceful pimp who used violence to control his group of prostitutes. He was convicted of "18 U.S.C. §2421, commonly known as the 'Mann Act' ...." This particular statute contains an element of intent that the Government had to prove: "Whoever knowingly transports any individual in interstate or foreign commerce, ... *with intent that such individual engage in prostitution* ...." 18 U.S.C. §2421(a), emphasis added. The *Wilkerson* panel relied on the intent and purpose of the interstate transportation to allow into evidence the violent acts of the defendant:

> *Where the intent of the parties is a matter in issue*, it has always been deemed allowable ... to introduce evidence of other acts of the party, of a kindred character, *in order to illustrate or establish his intent or motive of the particular act directly in judgment.*

*Id.* at 813. See. also, *Neff v. United States*, 105 F.2d 688,692 (8th Cir. 1939):

> If no question of a defendant's intent is involved, unless there is some connection between such offense and those charged, it is manifestly unfair and unjust that evidence of like offenses to those charged in the indictment should be introduced.

In the instant case, intent is not an issue. The internet advertisements of the six women as well as texts and other communications between the women and Torres prove the intent of the interstate travel; alleged assaults and threats after the rendezvous has occurred serve no purpose but to confuse the jury and impugn Torres' character.

4

For example, Victim-1 and Torres "began engaging in sexual activity" before she "asked him to stop." (Memorandum at 7-15 to 17). Victim-2 was already in the hotel room for the purpose of prostitution before she "requested payment" and "Torres became irate" and said "he was a police officer." (Memorandum at 8-1 to 5). Victim-3 and Torres "engaged in sexual activity" before Torres "did not respect her requests." (Memorandum at 8-18 to 23). Victim-6 was already in the hotel room for the purpose of prostitution before she "brought up the issue of payment." (Memorandum at 9-6 to 9). The Government does not proffer any alleged assaults or threats involving Victims-4 and 5, thereby raising the question of how violence could logically facilitate four of the Counts but not the other two.

The Government leaps to the hypothesis that, but for Torres' "threats and violent behavior," these three victims "would have left the room and terminated the encounter." (Memorandum at 9-18 to 20). Contrary to the Government's theory, the beginning of the encounter completed the offense and did not need to be facilitated by any alleged assaults or threats. Unlike the violent pimps for whom the Government had to introduce assaults and threats to prove they intended to have their bevy of prostitutes travel interstate for the purpose of prostitution, Torres needed no force as the prostitutes traveled interstate under their own volition.

With regard to Torres' *pro se* motion for a Writ of Mandamus received by the Third Circuit on December 29, 2020 (Memorandum Exhibit 1, page 2), he was responding to the *Government's* placement of "the assaults, threats and violence at issue in this matter" during his multiple detention hearings and appeal. It is difficult to comprehend the Government's rationale that Torres' hypothetical trial strategy "to argue that the victims are lying" somehow makes the assaults, threats and violence intrinsic. (Memorandum at 10-1 to 9). In order for the horse to go

before the cart, the Government would have to first introduce the evidence.

For all of the above reasons, evidence that Torres allegedly assaulted and threatened the charged victims should not be admitted either as intrinsic or under *Fed. R. Evid.* 404(b).

### B. Evidence that Torres Utilized and Frequently Switched Phone Numbers

Although Torres maintains that the particular phone or phone number he used in communicating with each individual prostitute has no probative value as to the elements of the offense, he concedes that he switched numbers on the telephone he used to communicate with prostitutes, and that these actions would be admissible under *Fed. R. Evid.* 404(b) to show his intent to defraud the prostitutes by not paying them. However, he objects to the introduction of any mistaken facts as to switching or disposing of telephones. (Memorandum at 11-11 to 17).

In 2015, Torres had only one telephone, and he used that one to communicate with prostitutes. When that phone broke, he replaced it with two other phones, one for business and personal use other than communicating with prostitutes, and the other for communicating with prostitutes from 2016 until his arrest in February of 2019. Regarding the latter phone, he repeatedly changed phone numbers on the SIM card of that phone. Although this fact variance does not materially affect the probative value of the evidence, it obviously should be corrected as forensically as possible before it is disclosed to the jury.

### C. Evidence of Torres' Text Messages to Uncharged Victims Are Not Admissible if He Puts the Enticement Element at Issue

As stated above, Torres concedes both the elements of interstate travel and the purpose of prostitution. He will stipulate to both elements to streamline the trial, even though the Government is allowed to introduce evidence to prove them. However, he will be contesting the enticement element. Whether or not Torres enticed a particular woman to travel interstate for the

6

purpose of prostitution is a fact-based exchange to enter into a verbal agreement to engage in an illegal act. The trier of fact will have to determine whether a specific prostitute enticed Torres to trade her services for his money, or whether Torres enticed a specific prostitute with his "exorbitant rates" to engage in prostitution with him. (Memorandum at 13-21). If "uncharged victims" are allowed to testify, there would have to be mini-trials with each one as to a plethora of details regarding the financial details of their prostitution experiences, their methods of advertisement of their wares, the cost of various sex acts and so on. As argued above, Torres was not a violent pimp whose intentions had to be proven to have his prostitutes cross state lines.

The Government cites cases from 1978, 1960 and 1939, but does not inform the Court of the changes Congress made over the years to the statute and its elements of which Torres is charged, in particular the element of intent. In 1939, the *Neff* court refers to "Sec. 398, Title 18 U.S.C.A., commonly known as the Mann Act," but does not specify which of the various Mann Act statutes of which Neff was convicted. (Torres cited to *Neff's* discussion of the "intent" element above in section I.A., page 4). In 1960, the *Ratley* court discussed intent in relation to evidence of acts "prior to the dates of the *transportations charged in the indictment*, which clearly refers to an element of the §2421 conviction rather than the §2422 conviction. *United States v. Ratley*, 284 F. 2d 553, 554 (2d Cir. 1960). In 1978, the *Drury* court spelled out an alternative element of "*intent and purpose* on the part of such person" that Congress deleted in one of the five later amendments to §2422. *United States v. Drury*, 582 F. 2d 1181, 1182 (f. n. 1) (8th Cir. 1978) (emphasis added).

Torres was a "john," and it was obvious from the communications between Torres and the "charged victims" that it was his "intent was to engage in prostitution with his victims" and

that he "intended his victims to engage in prostitution." (Memorandum at 14-19 to 22). To delve into the communications of Torres with uncharged victims, with all of the related ramifications, has little probative value that would be "substantially outweighed by … unfair prejudice, confusing the issues, misleading the jury … wasting time, or needlessly presenting cumulative evidence." *Fed. R. Evid.* 403.

Considering the correspondence between Torres and the six charged victims, the fact that they were from outside of New Jersey in and of itself proves the second element. Putting aside the pre-internet idea of a john trolling a red-light district on foot, the fact that the uncharged victims were from out-of-state has no probative value.

### II. THE DISTRICT COURT SHOULD PERMIT THE VICTIMS TO TESTFY ABSENT SOME OF, BUT NOT ALL OF, THEIR IDENTIFYING INFORMATION

Torres agrees there is no need to supply home addresses, but the victims should supply the name of a city if they reside in one. Living in a city such as New York, Toronto, Las Vegas, Reno or Hollywood would aid the jury in judging the sophistication of a particular woman while not specifically identifying her since there are probably others in that city with the same name.

He also agrees that their specific place of employment or college also need not be identified, but if either of these is located in a city, the city should be named to aid the jury in judging the sophistication of a particular woman.

There are no apparent safety concerns for these women if they identify themselves, unlike witnesses in protection programs and organized crime prosecutions. (Memorandum at 16-15 to 21). Nor are they minors, victims in a sex trafficking conspiracy, *United States v. Paris*, 2007 U.S. Dist. LEXIS 31212 at *1 (D. Conn. April 18, 2007), or victims of sex trafficking by force in violation of 18 U.S.C. §1591, *United States v. Lewis*, 2017 U.S. Dist. LEXIS 27236 at

\*1 (S.D. Ga. Feb. 27, 2017). Victims of such crimes have good reason to fear their pimps and traffickers. The instant case is not a sexual assault case (Government Memorandum at 17-21 to 18-10), despite the characterization by the Government. It is an enticement to cross state lines for prostitution case.

In *United States v. Stevens*, 935 F.2d 1380 (3d Cir. 1991), although the Court of Appeals used a pseudonym for the female victim, during the two Stevens trials at the District Court level before the appeal (the first was a hung jury), and the one after the remand (although Stevens was convicted, he was released before sentencing after the real rapist was arrested), the female victim used her true name, background and occupation (Torres' counsel was Stevens' counsel).

Therefore, Torres submits that the charged victims should use their real full names, as well as the uncharged victims if the Court allows them to testify. The public may be concerned that, if any of them are not sincere in "getting their lives on track" (Memorandum at 18-18 to 19-8), using a fake identity would support their return to their often illegal "commercial sex business."

### III. The Court Should Not Exclude Evidence of the Victims' Other Sexual Behavior Related to Their Sex Worker Profession

*Fed. R. Evid.* 412 (b)(1)(C) states in pertinent part, "(b) Exceptions (1) Criminal Cases. The court may admit the following evidence in a criminal case: ... (C) evidence whose exclusion would violate the defendant's constitutional rights."

The rule's 1994 Advisory Committee Notes expounded on this subsection:

> Under subdivision (b)(1)(C), evidence of specific instances of conduct may not be excluded if the result would be to deny a criminal defendant the protections afforded by the Constitution. For example, statements in which the victim has expressed an intent to have sex with the first person encountered on a particular

9

occasion might not be excluded without violating the due process right of a rape defendant seeking to prove consent.

The Supreme Court has recognized that, under the Confrontation Clause, a defendant may have the right to introduce evidence that would otherwise be precluded by a rule of evidence:

> In *Davis v. Alaska*, we observed that, subject to "the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation ... , the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." ... We emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." ... Recently, in *Delaware v. Van Arsdall*, ... we reaffirmed *Davis*, and held that "a criminal defendant states a violation of the *Confrontation Clause* by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'"

*Olden v. Kentucky*, 488 U.S. 227, 109 S. Ct. 480, 483 (1988) (citations omitted).

Torres does not intend to produce or solicit evidence of any of the victims' sexual behavior or sexual predisposition, other than the sexual and other behavior between a particular victim and Torres during their rendezvous, and any sexual behavior by sex workers in general, including the victims, that are probative of the enticement issue, such as the cost of various sex worker acts that are a part of their industry.

For example, perhaps a victim alleges on direct examination that Torres slapped her. He asserts that asking her whether slapping is ever a "product" in the sex worker trade, and whether such a product would make the rendezvous cost more, is probative of bias, because Torres never paid anything to the victim.

In *United States v. Williams*, 666 Fed. App'x 186 (3d Cir. 2016), the only case written by the Third Circuit cited by the Government on the *R.* 412 issue (Memorandum at 25-1 to 6), the Court of Appeals did "not determine whether the constitutional exception under *R.* 412 applies" because the victim

> admitted that she had been a prostitute for 12 years prior to her involvement with Williams, stated numerous times that she voluntarily worked as a prostitute for Williams, and testified that she was not motivated by his use of force ... to engage in prostitution. Williams counsel then capitalized on her admission of prior acts of prostitution in his closing.

*Id.* at 201. Williams objections were therefore harmless.

Williams had been convicted of sex trafficking under 18 U.S.C. §1591, and his denied requests were related to that statute. *Id.* at 200. As mentioned above on page ten, Torres has no expectation to question the victims about sexual behavior that is not relevant to the elements of 18 U.S.C. §2422 (a) as they relate to the instant case.

Likewise, the District Court cases cited by the Government are inapposite to the instant case. In *United States v. Totoro*, 2017 U.S. Dist. LEXIS 117371 at *1 (E.D. Pa. July 27, 2017), Totoro was convicted of child pornography and 18 U.S.C. §2422*(b)* (emphasis added), which pertains only to crimes against minors. In *United States v. Taylor*, 352 F. Supp. 3d 409, 410 (M.D. Pa. 2018), Taylor was convicted of conspiracy and substantive sex trafficking by force and coercion under 18 U.S.C. §§1594(c) and 1591(a) and (b)(1). In *United States v. Brown*, 2019 U.S. Dist. LEXIS 42603 at *2 (M.D. Pa. Mar. 15, 2019), Brown was indicted on "sex trafficking of a minor by force, fraud, and coercion in violation of 18 U.S.C. §§1591(a) and (b)(1)." It should be noted that, even in this sex trafficking of a minor case, the District Court's pretrial ruling stated:

> However, the court will allow Brown to ask the government's victim witnesses about other prostitution acts *that occurred during the time period charged in the indictment.*

*Id. at* *6. The time period of the second superseding indictment charging Torres stretches from May 2015 to October 2019.

The other seventeen or so cases named by the Government on this issue are based upon convictions of sexual abuse of a minor, 18 U.S.C. §2241(a), child sex trafficking, 18 U.S.C. §1591(a)(1) and (b)(2), transporting minors across state lines for prostitution, 18 U.S.C. §2421 and 2423(a), and similar branches of the tree called the Mann Act. None of them are derived from convictions of the instant statute.

It is baffling that few, if any, of the seventy or so cases cited by the Government in its Memorandum are relevant to the modern, revised version of 18 U.S.C. §2422(a), and the majority of them refer directly to sex trafficking cases:

> Fourth, Torres claims that the Government asserted that Torres was involved in human sex trafficking. Again, he is wrong. The Government has never indicated either to Torres or to this Court or any other, that Torres was engaged in human sex trafficking.

Government Sur-Reply Brief, Document 93, filed 04/20/21, at 3-3 to 4.

Pursuant to *Fed. R. Evid.* 412(c), Torres will file a motion by October 4, or on another date ordered by the Court, specifically describing the sexual behavior of the victims and the sex worker trade in general that he intends to offer, and their purpose. He will ask leave of the Court to allow the Government to be the victims' representative for purposes of 412(c)(1)(D).

Respectfully submitted,

*David Schafer*

David Schafer
Attorney for Jose Torres