

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Shawn Barnes & Emma Spiro*         970 Broad Street, 7th floor         973-645-2700
*Assistant United States Attorneys*   Newark, New Jersey 07102

August 30, 2021

Hon. Brian R. Martinotti
United States District Judge
United States Post Office & Federal Courthouse
2 Federal Square
Newark, New Jersey 07102

      Re:   United States v. Jose Torres
              Crim. No. 20-418 (BRM)

Dear Judge Martinotti:

     Please accept this letter brief in lieu of a more formal response to defendant Jose Torres's opposition to the Government's *in limine* motions. The Government respectfully maintains our initial positions, as outlined in our August 9, 2021 submission. This submission addresses points raised by the defense in their response. As outlined herein, the Government respectfully submits: 1) Torres's threatening and assaultive conduct is admissible as intrinsic evidence, or alternatively, pursuant to Rule 404(b); 2) the victims should be permitted to testify using only their first names; 3) Torres should be precluded from introducing evidence or arguments about the victims' sexual behaviors or predispositions; and 4) Torres should be precluded from introducing evidence or arguments tending to promote jury nullification.

## Legal Arguments

I.    <u>Evidence of Torres's assaultive, threatening, and violent conduct is admissible as intrinsic evidence, or alternatively, pursuant to Rule 404(b).</u>

     Evidence of Torres's assaultive, threatening, violent conduct is admissible as intrinsic evidence. At trial, the Government must prove that the defendant "persuade[d], induce[d], entice[d], or coerce[d] any individual to travel in interstate commerce . . . *to engage in prostitution*." 18 U.S.C. 2422(a) (emphasis added). Establishing that prostitution actually occurred goes directly to an element of this offense – the purpose underlying the interstate travel. Here, the defendant utilized

threats and violence to accomplish his stated purpose – engaging in prostitution. Torres threatened and assaulted his victims in order to prevent them from leaving the room prior to commencing the prostitution-related sexual activities (Victim-2) and to keep them in the room so that he could continue the sexual activities when they protested (Victim-1, Victim-3, and Victim-6). For instance:

- After commencing the prostitution-related sexual activities with Torres, Victim-1 stated that she was uncomfortable about the payment situation and asked Torres to stop. Torres continued forcing himself on Victim-1, slapped her in the face, and choked her. Victim-1 stayed in the room because she feared for her safety.

- Victim-2 entered Torres's hotel room and requested payment prior to beginning any sexual activities. Torres asked Victim-2 why she was being "a bitch," to which Victim-2 responded that she was leaving. Torres told Victim-2 that he was a police officer and that many things could go wrong for her if she left. Torres advised Victim-2 that if she stayed, he would pay her in the morning and she would not have any legal troubles. Torres proceeded to engage in rough, aggressive sex with Victim-2, slapping her, choking her, and calling her a whore. Victim-2 stated that she wanted to leave the room, but did not because of Torres's threats.

- After commencing the prostitution-related sexual activities with Torres, Victim-3 became uncomfortable with certain conduct, namely Torres's refusal to wear a condom and his requests to urinate and defecate on her. Torres told Victim-3 that it would not be in her interest to try and leave the room. Victim-3 took this as a direct threat and was afraid for her life.

- After commencing the prostitution-related sexual activities with Victim-6, Torres removed the condom and continued. Victim-6 attempted to push him off of her and told him to stop. He did not. Victim-6 was frightened that Torres would harm her if she was not compliant. She remained in the room. After multiple additional sessions of sexual activity with Torres, Victim-6 left the room while Torres was asleep.

The Government's argument is simple: Torres's threatening and violent conduct instilled a sense of fear in his respective victims that allowed him to accomplish his stated purpose – engaging in prostitution. This evidence is intrinsic to the charged conduct.

    The defense summarily dismisses many of the cases cited by the Government because they either arose under a different section of the Mann Act or because they involved violence inflicted by pimps, as opposed to so-called "Johns." Unfortunately, the defense is missing the point: evidence that a criminal defendant utilized violence and threats to assert control and frighten a victim into

compliance is intrinsic because the violence and threats facilitate the criminal act. Whether the respective defendant was acting as a "John" or a "pimp" is irrelevant to this analysis – indeed, 18 U.S.C. § 2422(a) makes no such distinction.

- In *United States v. Williams*, 291 F.3d 1180 (9th Cir. 2002), the Ninth Circuit considered the admissibility of assaultive, violent conduct inflicted by a pimp upon his victims. In finding that the assaults were admissible as intrinsic evidence, the court noted "[a]though [the] defendant is correct that the violent acts were not statutory elements of proof, the assaults were the *means by which [the] defendant maintained the necessary control over his victims so as to carry out the crimes charged.*" *Id.* at 1189 (emphasis added).

- In *United States v. Evans*, 285 F.3d 664 (8th Cir. 2002), the Eighth Circuit considered the admissibility of assaultive, violent conduct inflicted by a pimp upon his victims. In finding that the acts were admissible as intrinsic evidence, the court noted "[t]hese violent acts are relevant and probative of Mann Act violations because they were *done to control* and discipline prostitutes . . ." *Id.* at 670 (emphasis added).

- In *Wilkerson v. United States*, 342 F.2d 807 (8th Cir. 1965), the Eighth Circuit considered the admissibility of assaultive, violent conduct inflicted by a husband against his wife, whom he was trafficking. In finding that the acts were admissible as intrinsic evidence, the court noted that the evidence in question demonstrated "the force he used to keep his victims *under control and to carry out his ultimate purpose.*" *Id.* at 812-13.

Despite the defense's assertions to the contrary, the cases cited by the Government are directly on point.

The defense argument that the crimes were "over" the second the respective victim walked into Torres's hotel room is inaccurate. In essence, this argument inappropriately narrows the duration of Torres's criminal conduct. These incidents of engaging in prostitution (i.e., an element of the criminal conduct) were not simply brief encounters, rather, they were continuing, prolonged interactions that went on for hours. The defense's argument has the impact of placing an incorrect, incomplete, and misleading set of facts before the jury.

    II.    <u>The Victims Should Be Permitted to Testify Without Placing their Last Names on the Record in Open Court.</u>

Torres' objection to the victims testifying without their last names boils down to this: since, according to him, the victims have no safety concerns and are

not minors, they have no right to testify in a manner that does not involve public embarrassment. This is an inaccurate assessment of the facts and an inaccurate statement of the law. The Crime Victims' Rights Act grants *all* victims the right to be treated with respect for their dignity and privacy. *See* 18 U.S.C. § 3771(a)(8). Torres wholly ignores the fact that courts frequently permit victims to testify absent their full names in order to prevent public humiliation, embarrassment, or other consequences such as loss of employment. *See, e.g., United States v. Paris*, No. CR. 3:06-CR-64CFD, 2007 WL 1484974, at *2 (D. Conn. May 18, 2007) (finding that "the interests of the Government, the Jane Does and the Minors in protecting these witnesses from the likely adverse personal, professional and psychological consequences of publicly linking their identities to their past lives as sex workers is legitimate and substantial"); *United States v. Marcus*, 2007 WL 330388, at *1-2 (E.D.N.Y. Jan. 31, 2007) (ruling that potential harassment, potential loss of employment, and the explicit nature of anticipated testimony are legitimate reasons to protect witnesses' full identities and to exclude mention of witnesses' home addresses, and current places of employment). This is true both when the victims are adults, and when they are testifying about sensitive information, such as sexual exploits.

Additionally, while the charged crimes are not sexual assaults, the same underlying rationale applies to this matter: commercial sex workers, a vulnerable segment of our community, would be deterred from reporting incidents of misconduct should they be forced to testify with their full names and risk the related consequences. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006) ("the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting") (citations omitted).

Finally, Torres provides no particularized need for why the victims *should* testify with their full identifying information. In fact, he makes absolutely no Confrontation Clause-related argument at all. Nor could he, given that the Government has already provided defense counsel with the identities of the victims and intends to disclose them to Torres himself one month prior to trial. Thus, Torres's opposition to the Government's application to allow the victims to testify using only their first name appears to be a request that would serve only to harass, to embarrass and "to humiliate or annoy the [victims]," and could potentially subject them to reprisals." *United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970). Torres' request should be denied and the victims should be permitted to testify using only their first names.

    III.    <u>The Court should exclude evidence of the victims' alleged sexual behavior and/or sexual predisposition.</u>

Torres' argument regarding Rule 412 is internally inconsistent. He states both that he "does not intend to produce or solicit evidence of any of the victims'

sexual behavior or sexual predisposition" but also that he intends to elicit "any sexual behavior by sex workers in general, including the victims, that are relevant to the enticement issue." Again, Torres' argument lacks any basis in the law. He essentially says that he will not ask the victims about their sexual exploits, except of course, when he will. But it is not Torres' decision as to when evidence is admissible under Rule 412. The Rule is clear: the basic rule is that the sexual histories of victims are not admissible, except when they fall into one of the three named exceptions. *See Fed. R. Evid.* 412 (b). Torres raises none of these exceptions and therefore his motion should be denied.

Torres also attempts to discredit courts that have utilized the sound reasoning that is implicit in Rule 412 to exclude evidence of prior and subsequent sexual acts of prostitutes. He does this by attempting to distinguish these cases because they either involved minor victims or allegations of sex trafficking. However, Rule 412 is not so limited. In fact, as the Government noted in its moving papers, unlike in sex trafficking prosecutions, consent is not a defense to the charged statute in this matter. *See, e.g., United States v. Lowe*, 145 F.3d 45, 52 (1st Cir. 1998) ("Consent is a defense to kidnapping but not to a Mann Act charge."); *United States v. Pelton*, 578 F.2d 701, 712 (8th Cir. 1978) ("Consent is neither a defense to a violation charged under § 2421, nor to a violation charged under § 2422"). Therefore, the potential relevance of any prior or subsequent prostitution by the victims in this matter becomes even less probative than it would be in the cases involving sex trafficking.

The defense's reliance on *United States v. Brown*, No. 3-CR-17-396, 2019 WL 1227427, at *2 (M.D. Pa. Mar. 15, 2019) is misplaced. In *Brown*, the defendant was charged with sex-trafficking by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1), sex-trafficking of a minor by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1), and narcotics offenses. *Id.* The District Court granted the Government's pre-trial application to prevent the defendant from introducing evidence of prior and subsequent prostitution-related acts by the Government's victim witnesses. *Id.* at 1. The *Brown* Court did, however, allow for cross-examination on one very narrow area – "the court will allow Brown to ask the Government's victim witnesses about other prostitution acts that occurred during the time period charged in the indictment, as they are relevant to the issue of force or coercion." *Id.* at 2. The indictment in *Brown*, though, differs from the Second Superseding Indictment in the present case. There, the indictment contemplated a continuing course of conduct that spanned a number of years – "from in or about 2011, to in or about 2014." But here, the Second Superseding Indictment contemplates six separate and distinct counts that occurred at specific times – not a continuing course of conduct that would span from May 2015 to October 2019, as the defense suggests. Therefore, cross-examination should be limited to Torres' interaction with each victim, which spans a single day.

The present case differs from *Brown* in one additional critical respect – the *Brown* court's ruling constrained cross-examination to issues that were relevant to "force or coercion." *Id.* at 2. Here, the defense has identified no such relevant issue or permissible purpose for any such information. The defense has indicated that they will file an application, pursuant to Rule 412(c) by October 4, 2021, but until that application is filed, the Government respectfully submits that the defense has not carried their burden with respect to admission of this evidence.

IV.   **The defense should be precluded from advancing an argument or eliciting testimony that promotes jury nullification.**

Given that Torres has not contested the Government's *in limine* as it relates to legal arguments and those concerning nullification, this Court should consider that motion unopposed and make an affirmative ruling that Torres and his counsel may not put these arguments before the jury.

## Conclusion

For the foregoing reasons, the Government respectfully submits that 1) Torres's threatening and assaultive conduct is admissible as intrinsic evidence, or alternatively, pursuant to Rule 404(b); 2) the victims should be permitted to testify using only their first names; 3) Torres should be precluded from introducing evidence or arguments about the victims' sexual behaviors or predispositions; and 4) Torres should be precluded from introducing evidence or arguments tending to promote jury nullification. The Government respectfully relies on our August 9, 2021 for all additional arguments.

Respectfully submitted,

RACHAEL A. HONIG
Acting United States Attorney

By:   SHAWN P. BARNES
EMMA SPIRO
Assistant U.S. Attorneys

cc.   David Shafer, Esq.