

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

*Emma Spiro and Shawn Barnes*
*Assistant United States Attorneys*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*
*Direct Dial: (973) 645-2746*

November 7, 2022

<u>Via E-Mail and ECF</u>

The Honorable Brian R. Martinotti
United States District Judge
U.S. Post Office and Federal Courthouse
2 Federal Square
Newark, NJ 07102

> Re:  <u>United States v. Jose Torres</u>
> Crim. No. 20-418 (BRM)

Dear Judge Martinotti:

The United States respectfully submits this letter in response to Defendant Jose Torres' (the "defendant" or "Torres") motion to proceed under "hybrid representation" or in the alternative, to proceed *pro se* with standby counsel. D.E. 174.

For the reasons set forth below, the Government respectfully requests that the Court: (i) preclude any attempt at hybrid representation; and (ii) conduct a thorough colloquy with Torres regarding his request to proceed *pro se*. The Government has significant concerns regarding Torres proceeding *pro se* at trial given that, at times, he has demonstrated an unwillingness to abide by the Court's rules, including his continuous *pro se* filings while represented and his tendency to re-litigate every decision of this Court multiple times. Allowing him to proceed *pro se* could result in disruption and delay of the proceedings. Thus, if this Court is inclined to permit Torres to proceed *pro se*, it should appoint standby counsel <u>and</u> address the case-specific difficulties of *pro se* representation on the record.

**A. Torres Has No Right to Hybrid Representation**

1

The Third Circuit has held that "*[p]ro se* litigants have no right to 'hybrid representation' because '[a] defendant does not have a constitutional right to choreograph special appearances by counsel.'" *United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)). As the Third Circuit has noted:

> By requiring that briefs be filed only by counsel, we ensure that counsel and client speak with one voice. When a client seeks to raise additional issues, counsel must evaluate them and present only the meritorious ones, rather than simply seeking leave for the client to file a supplemental brief. This promotes effective advocacy because it prevents counsel from allowing frivolous arguments to be made by the client.

*Turner*, 677 F.3d at 579.

Torres, like any other defendant, has a right to <u>either</u> be represented by counsel <u>or</u> to proceed *pro se*.  *See Faretta v. California*, 422 U.S. 806, 819-20 (1975); *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963).  But he does not have the right to hybrid representation—that is, to choose those portions of the case he wishes to personally conduct and leave the rest to counsel.  *Turner*, 677 F.3d at 578; *U.S. v. D'Amario*, 268 F. App'x 179, 180 (3d Cir. 2008) ("The Constitution does not confer a right to proceed simultaneously by counsel and pro se . . . .").  This Court should deny defendant's request for hybrid representation. Notably, this subject has already arisen, and Your Honor has already admonished the Defendant for filing *pro se* while he is simultaneously represented, demonstrating Torres's inability to follow this Court's rules.

### B. The Law Governing Self-Representation

A defendant has the right to represent himself in criminal proceedings. *Faretta*, 422 U.S. at 819; *United States v. Wade*, 388 U.S. 218, 223-27 (1967). However, a trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *See Faretta*, 422 U.S. at 834 n.46. When a defendant unequivocally asserts the right to represent himself in a criminal proceeding, that assertion "place[s] on [the trial] court[s] the burden of establishing that the defendant who does so acts voluntarily, and that he understands both the scope of the right sacrificed and the restrictions and challenges that he will face." *United States v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002). Thus, to permit a defendant to waive the right to counsel and exercise the right to self-representation, a trial court must (i) ensure that the defendant understands the ramifications of this decision, and (ii) ensure compliance with necessary procedural safeguards. *See id.* at 138. Failure to establish a record of adequate waiver is *per se* reversible error on appeal. *See id.*

Four requirements must exist before the Court may permit a defendant to proceed *pro se*:

1. The defendant's assertion must be clear and unequivocal, *id.* at 132; *Buhl v. Cooksey*, 233 F.3d 783, 791 (3d Cir. 2000);

2. The Court must inquire thoroughly to satisfy itself that the defendant understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved, *Peppers*, 302 F.3d at 132; *Gov't of the V.I. v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995);

3. The Court must assure itself that the defendant is competent to stand trial, *Peppers*, 302 F.3d at 132; and

4. The request must be timely and, in cases where the request to represent oneself is made on the eve of trial, or during trial, the Court must ascertain the defendant's reasons for the dissatisfaction with counsel, *Peppers*, 302 F.3d at 132-33; *Buhl*, 233 F.3d at 798; *Gov't of the V.I. v. James*, 934 F.2d 468, 471 (3d Cir. 1991); *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982).

To be unequivocal, a defendant must explicitly choose between exercising the right to counsel and the right to self-representation, so that a court may be reasonably certain that the defendant wishes to represent himself. *Buhl*, 233 F.3d at 792. Requiring the defendant to make an explicit choice protects against manipulation by the defendant of the mutually exclusive rights to counsel and self-representation, for example, by "making casual and ineffective requests to proceed *pro se*, and then attempting to upset adverse verdicts after trials at which they had been represented by counsel" or by "proceeding *pro se*, then challenging any subsequent conviction by alleging a denial of the right to counsel." *Id.* Thus, a defendant who vacillates between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position. If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself. If the court permits self-representation, the defendant could claim that he had been denied the right to counsel. The requirement of unequivocally deciding resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel. *See, e.g.*, *Adams*, 875

F.2d at 1444; *Meeks*, 482 F.2d at 468.[1]

Next, the Court's inquiry must be designed to determine whether the defendant understands the risks, *i.e.*, "the structural limitations or perils of representing himself." *Peppers*, 302 F.3d at 134; *see also Welty*, 674 F.2d at 188 (observing that "the district court should advise him in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense efforts are unsuccessful"). The goal of this inquiry is to determine whether the defendant's waiver of counsel is made knowingly. Notably, the inquiry is not an evaluation of whether the defendant is competent to represent himself in terms of his understanding of the substantive law or the procedural details. *Peppers*, 302 F.3d at 134. Rather, the focus should be on the defendant's understanding of the importance of counsel. *Id.*

Because the defendant usually gives up more than he gains when he elects self-representation, the Court must be reasonably certain of the defendant's wishes to represent himself. *Brewer v. Williams*, 430 U.S. 387, 404 (1977). Therefore, if the defendant persists in his request to represent himself, a comprehensive *Faretta* inquiry of the defendant is appropriate.

The Court should further ensure that the defendant is made aware of the possible penalties for the charges he is facing. *United States v. Moskovits*, 86 F.3d 1303, 1309 (3rd Cir. 1996).[2] Also, because the Sentencing Guidelines apply in this case, the Court should ensure that the defendant is aware the Sentencing Guidelines will be used in an advisory fashion in the determination of any sentence. *Id.* at 1309.

In addition, the Court should also discuss with the defendant the dangers or perils of self-representation. That discussion may include:

1.  The proverb that "he who represents himself has a fool for a client." *See James*, 934 F.2d at 472 n.5 (upholding defendant's waiver of counsel where trial judge warned that "a person who has himself for a lawyer is a

---

[1]    In this matter, Torres is already on his fourth counsel. He was originally represented by Steven Altman of Benedict & Altman, Esqs. Then he was represented by Lisa Mack of the Federal Public Defenders Office. Following Ms. Mack's representation, Torres subsequently retained David Touger of Peluso & Touger. Finally, Torres was most recently represented by David Schafer, a member of the Criminal Justice Act panel. After being represented by four able counsel, Torres now seeks to represent himself.

[2]    It is preferable during a *Faretta* hearing for the Court, not the prosecutor, to conduct the waiver inquiry. *United States v. Moya-Gomez*, 860 F.2d 706, 735 (7th Cir. 1988). This, of course, includes informing the defendant of the possible penalties.

fool").

2. That such a choice must be made with eyes wide open. *See United States v. Balough*, 820 F.2d 1485 (9th Cir. 1987).

3. The Court's role does not change when the defendant proceeds *pro se*, and the defendant will not be excused from complying with rules of procedure and evidence. *See United States v. Trapnell*, 512 F.2d 10 (9th Cir. 1975). This warning should be emphasized given Torres's past failures to abide by Court protocol such as continuing to file *pro se* despite able representation and the Court's admonishments.

4. That there are rules as to when a defendant can and cannot speak during a trial.

5. That lacking knowledge and facility with evidence rules can be a detriment to making objections at trial. *See Stubbs*, 281 F.3d at 118; *Charles*, 72 F.3d at 407-08.

6. That what a defendant says during trial is not evidence unless the defendant is on the witness stand testifying. This warning, too, should be emphasized given Torres's many *pro se* submissions which make sweeping allegations without adequate factual support.

7. That sometimes attorneys know of or will see possible defenses that a defendant may not. *See Charles*, 72 F.3d at 406.

8. That sometimes attorneys can make arguments that defendants cannot.

9. That there are limited resources available to the defendant, including limited access to a law library and legal materials. *See United States v. Pina*, 844 F.2d 1 (1st Cir. 1988).

10. That attorneys have access to investigators that the defendant would not. *See Peppers*, 302 F.3d at 136.

11. The potential effect of shackles or other visible evidence of the defendant's incarceration appearing before the jury and its effect on the defendant's ability to represent himself. *See Davidson v. Riley*, 44 F.3d 1118 (2d Cir. 1995).

After conducting this inquiry to determine if the defendant is making a request to represent himself that is unequivocal, and knowing, voluntary, and intelligent (which of course includes making the defendant aware of the nature

of the charges, the possible penalties, and the perils of self-representation), the Court must determine whether to grant or to deny the defendant's request. Notably and as indicated above, a defendant who is silent or equivocal during the waiver inquiry impliedly forfeits the right to self-representation. *See, e.g.*, *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992) ("defendants forfeit self-representation by remaining silent at critical junctures before or during trial").

Finally, "[t]he Sixth Amendment gives a criminal defendant the right to represent himself at trial, but only to the extent that he is "able and willing to abide by rules of procedure and courtroom protocol." *United States v. Schwartz*, 315 F. App'x 412, 416 (3d Cir. 2009) (not precedential) (quoting *Faretta*, 422 U.S. at 834; *McKaskle*, 465 U.S. at 173). Accordingly, this Court may refuse to permit the defendant to represent himself when he is "not able and willing to abide by rules of procedure and courtroom protocol." *United States v. Lopez-Osuna*, 232 F.3d 657, 665 (9th Cir. 2000*); see also, e.g.*, *United States v. Williams*, 428 F. App'x 723, 724-25 (9th Cir. 2011); *United States v. Harris*, 317 F. Supp.2d 542 (D. N.J. 2004) (JBS) (refusing to allow criminal defendant to proceed *pro se* where defendant's intent was pretext to interfere with the court process). Moreover, the Court may terminate the defendant's self-representation if the defendant "deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46; *see also* 3B Fed. Prac. & Proc. Crim. § 733 (Wright & Miller, 4th ed. August 2022). Standby counsel could then resume the defense. *See Davis v. Grant*, 532 F.3d 132, 143 (2d Cir. 2008) ("[A] judge *may* use willingness and ability to abide by courtroom protocol as prerequisites for accepting a defendant's waiver of his right to counsel, and *may* appoint standby counsel to represent a defendant who has forfeited his right to appear *pro se*.").

If the Court were to determine that the defendant unequivocally asserted his right to proceed without counsel, that all other *Faretta* requirements have been met, and that the defendant is, therefore, competent to represent himself, the defendant should be specifically admonished and reminded that a self-represented defendant may not deviate from established court procedures. The right to self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46

Should the Court grant Torres' request to proceed *pro se* following a thorough *Faretta* inquiry, the Government urges the Court to appoint standby counsel. The Government understands that Torres does not object to this request, but it is nevertheless well settled that a court may appoint standby

counsel over a defendant's objection.[3] *See, e.g.*, *Thomas v. Carroll*, 581 F.3d 118, 125 (3d Cir. 2009) (acknowledging proposition and citing cases).

### C. Suggested Measures to Clarify the Record Concerning Waiver

Should Torres elect to proceed *pro se*, the Government requests that the Court adopt the procedure outlined below in its colloquy with the defendant during a *Faretta* inquiry. The Third Circuit in *Peppers* explicated the framework for courts to use in determining whether a defendant's decision to proceed *pro se* is knowing and voluntary. *See* 302 F.3d at 136-37 (deriving colloquy questions from Federal Judicial Center, *Benchbook for U.S. District Judges* 1.02 (4th ed. 2000)). Further, in *United States v. Jones*, the Third Circuit held that it "*require[s]* that all of the subjects covered in the model questions set forth in *Peppers* be fully explored in the inquiry, to the extent those subjects are relevant." 542 F.3d 223, 234 (3d. Cir. 2006) (emphasis added). "Even if the colloquy skips *just one* of the [relevant] factors, it fails to establish that the waiver is knowing, intelligent, and voluntary." *Id.* at 231-32 (emphasis added); *Peppers*, 302 F.3d at 135. The Third Circuit further instructs that, "if, during the course of the inquiry, it appears that the defendant needs further explanation, or it is evident that the defendant does not comprehend what the court is saying or asking, the court will need to probe further." *Peppers*, 302 F.3d at 137. In sum, in conducting its inquiry, the Court must engage in a "penetrating and comprehensive examination of all the circumstances." *Id.* at 131 (internal quotation marks omitted).

The Government thus respectfully requests that the Court employ the following colloquy, in the presence of the Government,[4] to determine whether the defendant is seeking to proceed *pro se* and has voluntarily, knowingly, and intelligently waived his right to counsel:

1. Have you ever studied law? If so, what was the nature and extent of those studies? Also, when and where did you study law?

---

[3]    The choice of whether to appoint standby counsel over Torres' objection lies within this Court's discretion. *See id.* at 177 n.8 (applying "usual deference to 'judgment calls'" to "rulings [by trial judge] reconciling the participation of standby counsel with a *pro se* defendant's objection to that participation"); *see also United States v. Fields*, 483 F.3d 313, 361 (5th Cir. 2007) (applying abuse-of-discretion review to trial court's ruling regarding standby counsel); *United States v. Webster*, 84 F.3d 1056, 1063 (8th Cir. 1996) ("Appointment of standby counsel is within the discretion of the district court . . . .").

[4]    The Third Circuit has found it "inadvisable" to conduct the colloquy in the Government's absence and stated that "the Assistant United States Attorney serves a useful function in assuring that a district court's colloquy is sufficient." *Jones*, 452 F.3d at 231.

2.    Have you ever represented yourself in a criminal action?

3.    Do you know that the Sixth Amendment gives you the absolute right to counsel?

4.    Do you understand that you are charged with six different counts of this crime: enticement and coercion, in violation of 18 U.S.C. § 2422(a) (Counts One through Six)?

5.    Do you understand that if you are found guilty of each count charged in the Second Superseding Indictment, the Court could (i) impose an assessment of $100 dollars; (ii) sentence you to up to 20 years in prison; (iii) sentence you to a term of supervised release of up to five years; and (iv) fine you as much as $250,000 or twice the gross profits or other proceeds to you, whichever is greater?

6.    Do you understand that the Court could impose those penalties on you for each of the six counts in the Second Superseding Indictment?

7.    Do you understand that the Court's sentence on each count could be imposed ***consecutive to any other sentence on any other count***? In other words, you could get up to 20 years on count one, and another 20 years on count two, and so on?

8.    Do you understand that the Court may also order you to pay restitution for these crimes?

9.    Do you understand that if you are found guilty, the Court may also order forfeiture under 18 U.S.C. § 2428?

10.   Do you understand that the United States Sentencing Commission has issued advisory sentencing guidelines that will be used in determining your sentence if you are found guilty?

11.   Do you understand that if you represent yourself, I cannot tell you—or even advise you—as to how you should try your case?

12.   Do you know what defenses there might be to the offense with which you are charged?

13.   Do you understand that an attorney may be aware of ways of defending against these charges that may not occur to you since you are not a lawyer?

14.  Do you understand that I cannot give you any advice about these matters?

15.  Do you know that there are many complex rules in court, and that most non-lawyers, including yourself, cannot know all of these rules?

16.  Do you know that ignorance of these rules can hurt your case, even if you are confident about the facts?

17.  Are you familiar with the Federal Rules of Evidence?

18.  Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules?

19.  Are you familiar with the Federal Rules of Criminal Procedure?

20.  Do you understand that these rules govern the way a criminal action is tried in federal court? Do you understand that you must follow these rules?

21.  Do you understand that you must proceed by calling witnesses and asking them questions, and that, except when and if you yourself to testify, you will not be permitted to tell the jury matters that you wish them to consider as evidence?

22.  Do you understand that it may be much easier for an attorney to contact potential witnesses, gather evidence, and question witnesses than it may be for you?

23.  Do you know that the Court may appoint a standby counsel, even if you don't want one, who will help you prepare your case or take over your case if the Court determines you cannot competently represent yourself?

24.  Do you understand that standby counsel is not co-counsel and that his or her role would be limited to what I have just stated?

25.  I must advise you that in my opinion, a trained lawyer would defend you far better than you could defend yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. Do you know that the purpose of appointed counsel is to help you put forth your best possible case? I strongly urge you ***not*** to try to represent yourself.

9

26. Now, in light of the penalties that you might suffer if you are found guilty, and in light of all the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?

27. Are you making this decision freely, and does it reflect your personal desire?

28. Do you have any questions, or do you want me to clarify or explain further anything that we have discussed here?

In the event that Torres does not clearly and succinctly answer these questions or otherwise acknowledge that he understands them, the Court should inform him that a non-responsive answer will be treated as a "No." *See Cain*, 972 F.2d at 750 (right to self-representation is forfeited by remaining silent at critical junctures before or during trial); *Williams*, 428 F. App'x at 724-25 (where defendant interrupted and was rude during a *Faretta* hearing, court correctly found that he was not willing to abide by courtroom protocol and rules of procedure). In the event Torres persists with non-responsive answers as to not permit the *Faretta* inquiry to move forward, standby counsel should be appointed as counsel of record and proceed with the defense of this case. *See Davis*, 532 F.3d at 143.

If the answers to the foregoing questions satisfy the Court that Torres knowingly and voluntarily desires to proceed *pro se*, the Court should state the necessary conclusions on the record.

### D. Difficulties in *Pro Se* Representation in this Matter

While *pro se* representation poses a difficulty in many cases, Torres' self-representation will create specific obstacles here. First, Torres has shown an inability to abide by this Court's rules and procedures as he has consistently filed *pro se* motions despite being admonished not to. Courts have stated in no uncertain terms that *pro se* defendants must abide by the rules of the court and relevant procedure as any other attorney would. *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S. Ct. 944, 948, 79 L. Ed. 2d 122 (1984) (*Faratta* requires a Defendant going *pro se* be both "able and willing to abide by rules of procedure and courtroom protocol"); see also *United States v. Lopez-Osuna*, 232 F.3d 657, 665 (9th Cir. 2000*); United States v. Williams*, 428 F. App'x 723, 724-25 (9th Cir. 2011).

In this case, the Government is concerned of Torres' ability to abide by those rules. Specifically, if this Court were to permit Torres to proceed *pro se*, the Government urges the Court to set a very strict motion schedule (as it would

with any defense counsel) and require Torres to abide by it. That is, Torres cannot continue to file repetitive motions and expect them to be responded to or considered by this Court. Additionally, as Your Honor is well aware, there are many aspects of Torres' case that have already been decided by this Court, and are now the settled law of the case. Torres should not be permitted to continue to re-raise these issues before the Court. The Court should also make it clear to Torres that each and every one of these issues is not appropriately raised before a jury. And if Torres cannot abide by those rulings, he should not be permitted to go *pro se* in this matter.

Additional issues could arise in this case during trial. First, if this Court makes the appropriate findings that Torres will be shackled at trial[5], it will require certain measures by this Court in order to prevent the jury from seeing those shackles and being prejudiced in some way against Torres. One-way Courts have resolved this potential issue is by having *pro se* defendants' question witnesses from counsel table. *See United States v. Frank Monte*, 19-cr-821 (JMV). Another issue raised by Torres proceeding *pro se* is the re-victimization his victims will be forced to endure while being cross-examined by their perpetrator. In certain circumstances, courts have required standby counsel to conduct the questioning of victims. *See Fields v. Murray*, 49 F.3d 1024, 1035 (4th Cir. 1995) (determining that the trial court's decision to limit the *pro se* defendant's ability to personally cross-examine the victim-witnesses did not violate his constitutional rights, finding the government's interest "sufficiently important to outweigh" the defendant's rights). Should the Court determine that Torres may proceed *pro se,* the Government reserves its right to file additional motions seeking to limit his interactions with the victims. Torres should also understand that the Government intends to file motions *in limine* to prevent him from making arguments that are either devoid of factual support based on the evidence admitted at trial or contradicted by the Court's earlier legal rulings, such as whether the prosecutors and agents are engaged in a conspiracy against him or may have a conflict of interest. Just as a lawyer could not make such unsupported and legally irrelevant arguments, nor can Torres.

---

[5] This generally occurs after the United States Marshals Service make a request for a defendant to be shackled during trial proceedings.

For these reasons, the Government respectfully requests that the Court (i) preclude any attempt at hybrid representation; (ii) conduct a thorough colloquy with Torres regarding his request to proceed *pro se*, and if this Court is inclined to permit Torres to proceed *pro se*, appoint standby counsel and address the case-specific difficulties of *pro se* representation on the record.

Thank you for your consideration of this matter.

Very truly yours,

PHILIP R. SELLINGER
United States Attorney

*Emma Spiro*

By: Emma Spiro
    Shawn Barnes
    Assistant U.S. Attorneys

cc:    David Schafer, Esq.

12