

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*Bruce P. Keller*                              *970 Broad Street, 7th floor*                    *973-645-2930*
*Assistant U.S. Attorney*                      *Newark, New Jersey 07102*
*Special Counsel to the U.S. Attorney*

August 10, 2023

<u>Via ECF</u>

The Honorable Brian R. Martinotti
United States District Judge
Martin Luther King, Jr. Federal
  Building and United States Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    *United States v. Jose Torres*
              Crim. No. 20-418 (BRM)

Dear Judge Martinotti:

    *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986), holds that, at some point, extended pretrial detention can trigger due process concerns.

    Here, Torres' trial is scheduled to begin in less than 60 days and his own vexatious litigation tactics repeatedly have postponed that date. Nonetheless, in the Third Circuit, *United States v. v. Torres*, App. No. 23-2294, Torres has now argued that the very delays he has caused has created an *Accetturo*-type due process problem.

    He's wrong, but this Court never has had the opportunity to consider and rule on this issue. That should occur in the first instance, so the Third Circuit has a record on which to rule. That this Court has yet to have this issue properly presented to it is another consequence of Torres' own litigation choices: He included an *Accetturo*-based claim in one of his multiple *pro se* filings. But he raised it in the context of relitigating his repeated conflict of interest and conspiracy allegations. Accordingly, the Special Master, appointed to screen such filings and ensure compliance with this Court's prior rulings, recommended that the entire filing in which the claim appeared not be docketed. (Ex. A). *See* Dkt. #295 at 9 (this Court's ruling that previously decided issues, including the conflict issue resolved over two years ago, not be relitigated). Since then, it seems Torres' current counsel may have refused to adopt Torres' *Accetturo* arguments. The Government has a brief Torres drafted for this Court *pro se*, dated August 1, 2023, but it isn't on the Court's docket.

The Government learned of it only because Torres appended it to another *pro se* filing, this one in the Third Circuit. App. No. 23-2294, No. 14 (relevant excerpt attached as Ex. B).

Nonetheless, given that any *Accetturo* issues in this case are conceptually distinct from his conspiracy and conflict arguments, the Government believes it is prudent for this Court to make a record concerning that narrow claim. Accordingly, the Government recommends that, at the upcoming status conference, this Court address Torres' claim that the *Accetturo* factors favor his release from detention.

That said, the Government does not agree there is any due process or other concern with Torres remaining detained through trial. Moreover, Torres still cannot satisfy the standards for release under 18 U.S.C. § 3142(e), (g).

As the accompanying chart (Ex. C) plainly illustrates, COVID-19 aside, Torres has only himself to blame for delaying the trial in this matter. As the Court knows, the Government has been ready to proceed to trial since as far back as the original date of October 4, 2021. Torres, however, requested that trial date be adjourned, despite the Government making it crystal clear that it was ready to proceed to trial. *See* Dkt. ## 115, 116. The Court also will recall that, at the April 5, 2023 status conference, the Government vehemently opposed another last minute adjournment of trial, then set to begin in only four weeks (on May 8, 2023). Nonetheless, Torres obtained a four month delay.

Frankly, Torres has built a record showing he will take any position, however inconsistent and lacking in merit, based on whatever he perceives to be to his then-current advantage. In February 2023, he convinced this Court to allow him to proceed *pro se* by, among other things, representing that granting such permission would not delay trial. Then, in April 2023, he claimed he could no longer go forward as scheduled and signed a continuance (after conferring with standby counsel) in exchange for an October trial date in which he disclaimed any Speedy Trial concerns, including those that were due process related. Now, however, despite his own adjournment requests and other, dilatory tactics, he claims delays have in fact created creating due process concerns.

This is gamesmanship, if not worse and nothing in *Accetturo*, or anywhere else, justifies tolerating it. To the contrary, *Accetturo* expressly notes the relevant due process factors include, among others, "the length of the detention that has in fact occurred, the complexity of the case, and *whether the strategy of one side or the other has added needlessly*" to complexity and delay. 783 F.2d at 388 (emphasis added). Other courts conducting an *Accetturo*/due process analysis agree: The

2

source of pretrial delays matters for due process purposes, just as when assessing a Sixth Amendment speedy trial claim. *United States v. Zannino*, 798 F.2d 544, 547–48 (1st Cir. 1986) (applying *Accetturo*). In both instances, "delay caused by the defense weighs against the defendant: '[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine.'" *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 529 (1972)); *see United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986) (noting that "[d]elays, for example, that the defendant caused would not raise a problem" under the Due Process Clause).

These cases recognize "the reality that defendants may have incentives to employ delay as a defense tactic: delay may work to the accused's advantage because witnesses may become unavailable or their memories may fade over time." *Brillon*, 556 U.S. at 90 (cleaned up). That describes Torres' tactics here.

In short, Torres' claim that delays now support his release from pre-trial detention is without merit. Not only does due process not warrant it, but also nothing about the passage of time undermines the extremely strong showing that Torres is both a flight risk and a threat to the community.

That said, the Government believes it is in the interests of justice to: (i) let Torres (through counsel) make his best argument to the contrary; (ii) have the argument ruled on by this Court expeditiously; and (iii) provide the Third Circuit with a concise record on which to review this Court's determination. For that reason, and to avoid even further trial delays, the Government requests that, at next week's status conference, this Court (1) allow Torres' appointed counsel to make any of Torres' *Accetturo* arguments they wish to adopt; (2) permit the Government to respond; and (3) make findings and issue a ruling. To facilitate Torres' appeal, all of that should take place on the record.

Thank you for your consideration of this matter.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By: Bruce P. Keller
 Special Counsel to the U.S. Attorney

cc:    David Schafer, Esq.
       Linwood Jones, Esq.

# EXHIBIT A

**Filing #1**

**Bail Motion Based on "Newly-Discovered" Evidence**

**<u>February 20, 2023</u>**

**I.      Document Description and Analysis**

On February 20, 2023, Mr. Torres filed a ninety-two (92) page motion titled, "Bail Motion Based on "Newly Discovered" Evidence." The filing asserts: (1) the factors considered in granting bail favor Torres; (2) the denial of bail is a due process violation; (3) newly discovered evidence shows the claims against Torres are false; (4) the Government's misconduct tainted the bail process; and (5) the Government failed to conduct a proper and complete investigation and instead "jumped to conclusions."

The entirety of the filing is premised upon and/or otherwise supported by factors specifically proscribed by the Injunction Order. Select examples of those violations include the following:

(i)      *<u>Lies to the Court</u>*:

    a.  "The Government manufactured the false allegations of violence and also lied regarding [Defendant] being a flight risk by providing misleading information to the Court." (Filing #1 at 4.)

    b.  The AUSA "lied extensively to Magistrate Judge Kiel and District Judge Martinotti throughout [Defendant's] 36+ month prosecution." (*Id.* at 16.)

    c.  From pages 16 through 24 of the Bail Motion, Defendant alleges 12 "lies" the AUSA presented to the Court. Each alleged lie is unsupported by any evidence in the record. (*See id.* at 16-24.)

(ii)      *<u>Manufactured or Fabricated Evidence</u>*:

    a.  "Also, the Government manufactured false statements that painted [Defendant] to be a flight risk." (*Id.* at 4.)

b. "Due to extensive evidence discussed below of the Government's manufactured and false statements of [Defendant] 'beating' or 'sexually assaulting prostitutes' — that were all concocted by [the] AUSA . . . and law enforcement . . . [Defendant's] release should be granted immediately in preparation for trial." (*Id.* at 6.)

(iii)    *Impersonations of Defendant's Victims*:

a. "Anonymous tip likely made by [the AUSA] impersonating 'Lindsey B.' to the FBI 6 days before [the AUSA] leaves Sher Tremonte LLP on Friday, June 7, 2019. The 'substituted text' format and phraseology completely unlike a 'working girl'." (*Id.*, Ex. 4)

(iv)    *Coerced False Testimony*:

a. From pages 11 through 16, Mr. Torres alleges his victims' allegations contradict their contemporaneous complaints. Defendant suggests throughout that the AUSA and Government coached the victims and mischaracterized their testimony. (*Id.* at 11-16.)

(v)    *Other Allegations Of Misfeasance Or Corruption*:

a. Mr. Torres's Point VI contends that the Government failed to investigate the allegations and instead engaged in the alleged conspiracy.

## II.    Recommendation

Accordingly, it is the recommendation of the Special Master that this filing violates the Injunction Order and should not be made publicly available.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

February 20, 2023

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*PLAINTIFF*<br><br>v.<br><br>JOSE TORRES<br>*DEFENDANT* | Honorable Brian R. Martinotti<br><br>Case No.: 20-cr-418(BRM)<br><br>**Bail Motion Based On "Newly Discovered" Evidence** |

0/2/26/23

# EXHIBIT B

Jose Torres
Essex County Jail
354 Doremus Avenue
Newark, NJ 07105

August 1, 2023

Patricia S. Dodszuweit, Esq.
Clerk, U.S. Court of Appeals
    for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106



District Court Case No.: 2-20-cr-418-0001
Third Circuit Court of Appeal Case No.: 23-2294

### *Pro Se* Bail Motion for Release from Custody

Dear Ms. Dodszuweit,

Please file this *pro se* bail motion for my release from custody on C.A. case no. 23-2294 given that my <u>attorneys failed</u> to file a bail motion for my release from custody despite the Third Circuit Court of Appeals directing them to do so and me instructing my attorney, Linwood A. Jones, to do the same.

As you are aware, on Saturday, July 29, 2023, when I met with my attorney, Mr. Jones, at the jail and became aware of your letter dated July 24, 2023 directing my attorneys to file a bail motion for my release from custody, I informed Mr. Jones to file a bail motion for my release. He refused.

On this very same day, I called my other attorney, David E. Schafer, multiple times from the jail phone to inform him of the same as Mr. Jones had informed me that he was not going to file a bail motion for my release from custody. Mr. Schafer never answered his mobile phone despite repeated attempts by me to reach him. FYI, I have not been able to contact Mr. Schafer from the jail phone in <u>months</u>.

In an abundance of caution, on this very same day, my Uncle - Carlos Torres – also emailed both of my attorneys, Mr. Jones and Mr. Schafer, instructing them to file a bail motion for my release from custody. His email went unanswered and as of the date of this letter no response has been received by my uncle from either attorney.

I appreciate your understanding and all of your assistance during this difficult time. Thank you.

Respectfully Submitted,

Jose O. Torres

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

August 1, 2023

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>*PLAINTIFF*<br>v.<br>JOSE TORRES<br>*DEFENDANT* | Honorable Brian R. Martinotti<br><br>Case No.: 20-cr-418(BRM)<br><br>**Bail Motion Based On "Newly Discovered" Evidence** |

# Table of Contents

I.    Background.................................................................................................. 2

II.   Factors Considered in Granting Bail....................................................... 2

III.  Due Process Violation............................................................................... 7

      Accetturo Factors ................................................................................... 7

      Length of detention that has in fact occurred......................................... 9

      The complexity of the case ..................................................................... 9

      Whether the strategy of one side or the other has added needlessly to that
      complexity............................................................................................. 10

IV Newly Discovered Evidence Showing the Governtment's Bail Claims Were False...... 11

      A  The false allegations of sexual assaults and/or violence were manufactured
         by AUSA Emma Spiro and FBI Officer Michael A. Scimeca – the evidence
         confirms it........................................................................................... 11

      B  AUSA Emma Spiro lied extensively to Magistrate Judge Kiel and District Judge
         Martinotti throughout Torres' 42 month plus prosecution................... 16

V Government Misconduct Tainted the Bail Process................................... 24

      C  A significant conflict of interest exists between Sher Tremonte and AUSA Spiro 24

      D  A financial conflict of interest exists between Sher Tremonte, the prostitutes,
         Torres, and AUSA Emma Spiro........................................................... 36

      E  The evidence supports that AUSA Emma Spiro and the Sher Tremonte
         attorneys assisted witnesses to lie..................................................... 40

      F  AUSA Emma Spiro, AUSA Shawn Barnes, FBI Officer Michael A. Scimeca, and
         DHS Officer Ronald Conyers violated multiple United States federal laws.......... 41

      G  AUSA Emma Spiro violated New Jersey Rules of Professional Conduct and
         American Bar Association Model Rules of Professional Conduct........................ 42

VI The Government Did Not Investigate...They Just Falsely Jumped to Conclusions
      and Had Already Poisoned Torres' Bail ................................................. 43

      H  The complete lack of evidence support that AUSA Emma Spiro, FBI Officer
         Michael A. Scimeca, and Sher Tremonte manufactured the prostitutes' false
         claims of violence .............................................................................. 43

      I  Prostitutes that were not paid, got mad, and lied as a form of revenge .............. 43

VII Relief Requested ...................................................................................... 44

EXHIBIT 1  Government's newspaper release article with false claims of violence
            regarding Torres ............................................................................ 45

EXHIBIT 2  Government's false press release with manufactured claims of violence
            regarding Torres dated 10/29/2019 ............................................. 46

EXHIBIT 3  Jose Torres' Professional Biography............................................ 52

EXHIBIT 4 Saturday, June 1, 2019 7:34am anonymous tip to the FBI impersonating a prostitute Torres had been with in 2015, likely sent by AUSA Emma Spiro, ~2.5 miles from Emma Spiro's former 2019 NYC address ................ 53

EXHIBIT 5 Review posted on whocallsme.com on 5/28/2015 by Lindsey B. (aka Marie Sinclair) .......................................................................................... 58

EXHIBIT 6 Twitter message posted by Count-1, Lindsey B. (aka Marie Sinclair)........... 59

EXHIBIT 7 Presidential Executive Order 13490 as of January 21, 2009 - 74 FR 4673 . 60

EXHIBIT 8 Map of 32 6th Avenue, Columbus Park, and 90 Broad Street - Sher Tremonte Office location ............................................................................ 65

EXHIBIT 9 Cases Emma Spiro worked on with her former Sher Tremonte supervisors and hiring managers prior to Emma Spiro's departure from Sher Tremonte LLP (abbreviated list) ................................................................. 68

EXHIBIT 10 Restitution calculation under the CVRA and MVRA ................................... 74

EXHIBIT 11 Emma Spiro, Noam Biale, Anna Estevao, Jutin Sher, and Michael Tremonte, connected through Sher Tremonte LLP; NYU Law School, "The Club"; and conveniently now through Torres' prosecution ................. 75

EXHIBIT 12 Other relevant information ....................................................................... 79

EXHIBIT 13 DOJ Ethics Handbook............................................................................. 93

EXHIBIT 14 New Jersey Red Umbrella Alliance [NJRUA] communicating with Sher Tremonte prior to AUSA Spiro starting employment with the DOJ...........111

# I.    **Background**

This bail motion is being submitted as Judge Martinotti stated during the August 23, 2022 Court hearing that Torres _may_ submit another bail motion no earlier than 90 days in advance of trial. (paraphrasing)  On docket #172, dated 8/23/2022, the Court stated, *"Defendant may renew the motion no earlier than 90 days in advance of trial.  So ordered by Judge Brian R. Martinotti on 8/23/2022."*

Torres has applied for bail 5 times and appealed one of his bail motions to the Third Circuit since he was arrested on February 14, 2020.  Torres was denied bail each time. At every bail hearing, the Government falsely proffered and lied to the Court that Torres was a violent individual and that Torres was also a flight risk.

The Government manufactured the false allegations of violence and also lied regarding Torres being a flight risk by providing misleading information to the Court.  The Government made these statements to the Court to prejudice Torres and to keep Torres falsely incarcerated which Torres has been for the last 42 plus months.  These false allegations of violence are detailed within this motion, as compared to the actual evidence in the case, which clearly demonstrates to the court that there was no violence that occurred.  Therefore, since the Government has provided zero evidence Torres committed violence that should not be assessed as a reason for denial of his bail.  Upon review, the court will find that Torres is not violent at all and is not a danger to the community, rather the court will conclude that the allegations of violence were manufactured by AUSA Spiro.

Also, the Government manufactured false statements that painted Torres to be a flight risk, e.g. statements that Torres has over 100 international contacts in foreign countries, when in actuality Torres' only international connection was to El Salvador where his biological mother and two brothers live.  Due to Torres' 42 month plus incarceration, Torres has lost his family connections and has had the prejudice of these outrageous charges sever his family ties with his mother and two half-brothers and his two daughters, age 15 and 20.  Regardless of what the Government has falsely alleged, Torres has never had any ties – except as just noted - to any country other than to the United States.  Torres lived in El Salvador until the age of 8 years old.  In 1986, Torres arrived in the United States and has lived only here ever since.  Torres lived in Brooklyn, New York, for approximately one year.  Thereafter, Torres lived in New Jersey and nowhere else all the years until now.

# II.   **Factors Considered in Granting Bail**

To evaluate dangerousness pursuant to 18 U.S.C. 3142(g), the Court considers: (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Torres Court has in error ruled that the Government's manufactured and false allegations of sexual assaults or violence were "intrinsic" to the offense due to the Government's misleading misrepresentations. Additionally, the Government's false allegations of Torres being a "pimp, beating, and sexually assaulting" prostitutes were also falsely created by AUSA Emma Spiro and FBI Michael A. Scimeca. Refer to **Exhibit 1** and **2** attached:

(i) **The nature and circumstances of the offense** - The nature and circumstances of the alleged offenses, persuading, inducing, or enticing escorts for their own time and companionship services are not serious charges. For example, the alleged acts, under New Jersey state law, would be classified as a petty disorderly person's offense, typically punishable by a $350 summons. While the government has proffered false statements about violence, the evidence clearly supports otherwise. In the unlikely event Torres were to be convicted, Torres' sentence exposure would be 30 to 37 months.[1] As of the date of this motion, Torres has already served more than 42 months and will have served approximately 44 months by his trial date scheduled for October 3, 2023, assuming the trial is not further delayed. Holding a defendant in excess of their potential sentence is a due process violation.

(ii) **The weight of the evidence** against conviction will be argued at trial, however the defenses' analysis indicates extensive contradictions between the DHS/FBI 302 reports and the government's allegations to the court. Even Torres' open plea agreement that was offered by the government did not reference any violence whatsoever. The defense is intimately aware of the facts of this case and is certain that there was no violence and that the jury will make no such finding.

(iii) **History and characteristics of the person** - Torres graduated from Rutgers University School of Business in 2000 with a B.S. in Accounting with honors. He went on to build a career, starting out with the top accounting firm Ernst & Young, LLP. Torres worked there for 2 years before accepting a position with Univision Communications as a Senior Auditor managing operational, financial and compliance audits. As Torres continued to build a reputation of reliability through hard work in the public accounting industry, he was offered and accepted a position with Sun Chemical as a Supervisor in the Internal Audit Department where Torres managed staff and audits around the world for this multi-billion dollar company. Torres began building expertise in forensic and technical accounting and became well known both in and outside of his company for his skills and knowledge. Torres was recruited to work for Protiviti Consulting, a subsidiary of Robert Half International, the second largest recruiting firm in the world, handling the company's largest clients in the forensic, operation, and financial space. Torres' final job position before his

---

[1] Title 18 U.S.C.S. 2422(a) is penalized using 2G1.1. The base offense level is 14. As the alleged conduct involves 6 victims, under 2G1.1(d)(1), 3D1.4 would be applied, increasing the offense level by 5 levels, to level 19. As Torres has no prior criminal history, he falls under a Category I, putting his guidelines at 30-37 months.

arrest was with DLA Consulting, a multi-million dollar accounting firm with 100+ consultants with tens of dozens of worldwide clients, including clients in financial services, healthcare, private equity, hospitality, and manufacturing to name a few. Torres' main accounts were with Sig Sauer, Selina Hotels, Bank of New York, and CDM Smith, to name a few. Torres worked for DLA since 2016 and started as a senior manager. Within months, Torres was promoted to Managing Director. Refer to **Exhibit 3**. Torres had a perfect record with Human Resources and was considered by the C-level executives as one of their most trusted, well respected, and essential executives of the firm. At the time of Torres' arrest, Torres could have been hired by virtually any accounting or consulting firm in the world. Torres could have been hired as the Chief Financial Officer or held another C-level position. The damage suffered to Torres' business reputation built up over a 20 year period of constant late nights, cancelled flights, long meetings, dedication, simple hard work, and thought leadership is almost immeasurable. Torres got up every morning at 4am and commuted to work for over 20 years. Torres was at the very beginning of the top of his career. Torres always lived a law abiding life for over 40 years and has no criminal record.

Torres has 2 wonderful daughters, Alyson (age 20) and Angelyna (age 15), who he spent extensive time with prior to his daughters moving to Illinois in June 2019 and incarceration. Every Wednesday and on alternate weekends, Torres would go to dinner, movies, walks in Princeton, NJ and out for ice cream and frozen yogurt. He has always been a kind and loving father. They attended church together in Cranford, NJ on a regular basis. After his daughters moved to Illinois, Torres had constant communication with his older daughter and spoke regularly on the phone and via text. This relationship has now ended due to Torres' false incarceration driven by the Government's false prosecution.

(iv) **The nature and seriousness of the danger to any person or the community that would be posed by the person's release** - Due to extensive evidence discussed below of the Government's manufactured and false statements of Torres "beating" or "sexually assaulting prostitutes" - that were all concocted by AUSA Emma Spiro and law enforcement (i.e., FBI Officer Michael A. Scimeca) - Torres' release should be granted immediately in preparation for trial scheduled for October 8, 2023.

**According to Title 18 U.S.C. 3142(e)-(f), the Government bears the burden of demonstrating that Torres poses a danger to the community by clear and convincing evidence or that Torres poses a flight risk by a preponderance of the evidence.** Based on the facts and information presented throughout this motion, the Government certainly cannot meet the 'clear and convincing evidence' standard or that Torres poses a flight risk by a "preponderance of the evidence" as Torres has nowhere to flee and is not violent and has no history of violence. Therefore, Torres' release on bail should be granted in preparation for his upcoming trial scheduled for October 8, 2023. Torres has been detained in pretrial detention for more than 42 months. If Torres is not released on bail in preparation for trial, Torres will have been in pretrial detention almost 44 months (or close to 1,320 days) without trial or bail. Torres just wants to get on bail to prepare for trial to be on an even footing with the Government. Preparing for trial from prison with

the complete lack of resources, printers, computer time to research, and ability to print, lay out and read carefully the voluminous copies of his enormous discovery so far provided is prejudicial to Torres' rights to a fair trial.

For all of the reasons detailed above, Torres is not a flight risk or safety risk. Additionally, to further secure the risk of flight, Torres' Uncle and Aunt, Carlos Torres and Elizabeth Torres have agreed to place their $489,000 paid off primary residence as collateral for his bail as they have done so for previous bails. They also remain ready to serve as custodians, as in the past. Besides being fully paid off, the house has no outstanding liens on it of any nature. Torres can also wear an ankle bracelet to secure his presence to the home in a track-able and verifiable way. Torres would never disrespect the Court by failing to appear for trial or jeopardize his aunt and uncle, their home or himself by fleeing. He also has zero financial resources to flea with.

Torres has already surrendered his only passport to the DOJ – his United States passport – and he has no other. In addition, as previously detailed herein, Torres has no relationship to any other country. Again, he also has no resources to use to flee. Thus, in fact, the idea of him at 46 years old running from the United States Marshalls and United States Government is just preposterous.

# III. <u>Due Process Violation</u>

## <u>Accetturo Factors</u>

The Third Circuit has clearly recognized that a defendant's due process guarantees require release in the event of unduly prolonged pretrial detention. For example, in **United States v. Lopez**, 827 F. Supp. 1107, 1112 (D.N.J. 1993), the Court vacated a detention order where almost eight months had passed since the defendant's arrest. The Court stated that "due process concerns" drove its decision, and noted that the "prolonged incarceration of [defendant was] necessarily troublesome".... See also **United States v. Gatto**, 750 F. Supp. 664, 675 (D.N.J. 1990) ordering pretrial release on due process grounds of a defendant detained for 15 months.

The Third Circuit Court of Appeals has explained: "[A]t some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." **United States v. Accetturo**, 783 F.2d 382, 388 (3d Cir. 1986). The court instructed that "due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits." <u>**The court must also consider "such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.**</u>"

Torres has been detained at Essex County Correctional Facility for more than 42 months. This level of pretrial detention is unconstitutionally punitive. There is limited time to meet

with lawyers along with extremely limited access to computers and computer time to review evidence and prepare for trial. There is simply no way that the defendant can effectively prepare for his defense under these circumstances. See **United States v. Mendoza**, 663 F. Supp. 1043, 1047 (D.N.J. 1987) ordering pretrial release on due process grounds as the defendant being detained for 9 months was unreasonable. "Without this conditional privilege, even those wrongly accused are punished by a period of imprisonment while awaiting trial and are handicapped in consulting counsel, searching for evidence and witnesses and preparing a defense."

When a lengthy pretrial delay occurs, "detention under the Bail Reform Act may be subject to a proper due process challenge." **United States v. Howard**, Crim. Action No. 4:17-cr-0291-04, at *4 (M.D. Pa. Aug 15, 2019). Said another way, "a long period of preventative detention without a finding of guilt, based solely on possible danger to the public, is anathema to American ideals of due process." **United States v. Colombo**, 616 F. Supp 780, 785 (S.D.N.Y.), quoting R.B. McNamara, Constitutional Limits on Criminal Procedure 135 (1982) rev'd 777 F.2d 96 (2nd Cir. 1985).

"The length of incarceration prior to trial is of significance to any detention decision because detainment inevitably interferes with the presumption of innocence of a defendant, with the right of a defendant not to be punished unless convicted, and with the right of defendant to the unhampered preparation of a defense." **Stack v. Boyle**, 342 U.S. 1 (1951).

Other courts have found that that detention periods of approximately four months, six months, and eight months violated the standards of the due process clause. See **United States v. Theron**, 782 F.2d 1510, 1516-17 (10th Cir. 1986) (actual period of detention was four months with an anticipated period of six to ten months of further detention); **United States v. Melendez-Carrion**, 790 F.2d 984, 1008 (2d Cir. 1986) (Feinberg, C.J., concurring) (eight months); and **United States v. LoFranco**, 620 F. Supp. 1324, 1325-26 (N.D.N.Y. 1985) (six months).

The defendants in the aforementioned cases did not suffer as much time in pretrial detention as Torres has. With over forty-two months without a trial or released on bail, Torres has already encountered serious constitutional issues that outweigh any risk to the public regarding him getting bail and that violate his right to due process of law, right to a Speedy Trial, and right to a fair and unbiased trial. *"Incarceration for periods of as long as eight months has historically been regarded as punishment".* **LoFranco** (citing **United States v. Melendez-Carrion**, *790 F.2d 984* (2nd Cir, 1986)). For similar reasons as noted in *Theron* and *LoFranco*, Torres respectfully requests that he be released immediately under conditions that this Court finds proper.

**United States v. Lo Franco**, 620 F. Supp. 1324; 1985 U.S. Dist. LEXIS 14540 (ND NY, 1985) made it clear that "The fifth amendment protects against deprivation of liberty without due process of law. It is a violation of due process to imprison a defendant for a crime without a trial. Because the fifth amendment refers not only to sentences upon conviction, but to all deprivations of liberty, **holding a defendant without bail for longer than he would serve if tried and convicted must also violate due process.**"

Because there was no violence or evidence set forth of violence, AUSA Emma Spiro cannot truthfully show a jury that any violence existed by clear and convincing evidence as there was none.  AUSA Emma Spiro also cannot cross reference Torres to sexual abuse or sexual assault charges.  Any current allegation of violence by Torres from the Government is utter, malicious, manufactured speculation - as the evidence records clearly support that there was no violence.  *United States v. Bobbitt*, 2013 U.S. Dist. LEXIS 89196 (WD NY, 1023) reads: "*United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (Courts that measure total pretrial detention count actual detention plus likely prospective future detention; **they ignore possible future detention that is only speculative**. See id. (assessing future scheduling that is "without speculation"); see also *Millan*, 4 F.3d at 1044 (2nd Cir, 1993) ("**In weighing potential future detention, however, we take into account non-speculative aspects of future confinement.**")"

In the American criminal justice system, defendants are presumed innocent until proven guilty.  Within the Torres matter, that has not been the case.  In such a system, valid pretrial detention assumes a punitive character when it is prolonged significantly.  Courts, when faced with a lengthy detention, have found a due process violation. See *Theron*, 782 F.2d at 1516-17 (4 months); *United States v. Melendez-Carrion*, 790 F.2d 984, 1008 (2nd Cir. 1986) (Feinberg, J., concurring) (8 months); United States v. Gonzales Claudio, 806 F.2d 334, 343 (2d Cir. 1986) (14 months); *Ojeda Rios*, 846 F.2d at 169 (32 months). See *United States v. Zannino*, 798 F.2d 544, 548 (1st Cir. 1986) ("in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement. . . ." (Citing *United States v. Gatto*, 750 F. Supp. 664, 1990 U.S. Dist. Lexis 14837 (D.N.J.)).  Given that Torres has already been detained for 42+ months, Torres has a clear due process violation.

### Accetturo Factor 1 - Length of detention that has in fact occurred
The defendant has been detained for over 42 months, near exceeding his potential sentence exposure, while he maintains the presumption of innocence under the law.  While a trial is set for October 8, 2023, which may be further delayed due to ineffective counsel, at least four previous trials were scheduled and later cancelled.  The defendant herein again assets his rights to a speedy trial.

This Accetturo factor weighs in favor of the defendant being released on bail.

### Accetturo Factor 2 - The complexity of the case
Torres' case is complex by the sheer number of witnesses required to address each count.  Managing this level of preparation from jail is unfair and unrealistic.  The defendant deserves the basic right to be effectively prepared for trial.  The defendant's continued unnecessary pretrial incarceration is impeding his ability to prepare his defense in a prejudicial and unconstitutional way.

This Accetturo factor weighs in favor of the defendant being released on bail.

## Accetturo Factor 3 - Whether the strategy of one side or the other has added needlessly to that complexity

The strategy of the prosecution has needlessly added to the complexity of this case by excessively overcharging and manufacturing evidence in an attempt to keep the defendant incarcerated in pre-trial detention for years under extreme conditions hoping Torres would simply give up.

The federal Justice Manual that guides all federal prosecutors states that "*in determining whether adequate alternatives to federal prosecution are available, the prosecutor should consider whether the person is subject to effective prosecution by state, local, territorial, or Tribal authorities, JM 9-27.240, or whether there exists an adequate non-criminal alternative to prosecution. JM 9-27.250 the latter may include federal or state or state civil or administrative remedies, or pretrial diversion, JM 9-27.250 & JM 9-22.000.*" This certainly applies, as the State of New Jersey does provide statutes that apply to a "john", under N.J.S.A. 2C:34-1(b)(1), "(1) The actor engages in prostitution as a patron", which is a petty disorderly persons offense and is punishable by "any fine set forth in N.J.S.2C:43-3 that is imposed upon a person by a municipal court".

The Justice Manual mandates that the selection of charges should be "likely to result in a sustainable conviction." As the Court is aware, the statute charges in this case is unprecedented and has not been attempted based on facts similar to Torres in the 113+ years since the passage of the law. A conviction is extremely improbable and the public, a jury, and the Court of Appeals would find this prosecution outlandish and absurd considering that there is an unlawful and intolerable conflict of interest.

Judge Sullivan stated in **United States v. Stevens**, Crim. No. 1:08-cr-00231-EGS (D.D.C. 2009) that "the United States Government has an obligation to pursue convictions fairly" and "when the Government does not meet its obligation"…."the system falters". Justice Sutherland writing for the majority in Supreme Court case **Berger v. United States**, 295 US 78, 99 stated, "The United States Attorney is the representative not of an ordinary part to a controversy, but of a sovereignty whose obligations to govern impartially is as compelling as its obligation to govern at all" "It is as much his duty to **refrain from improper methods calculated to produce a wrongful conviction**."

## Torres' due process rights has been violated beyond repair driven by structural errors.

Torres' due process have been violated beyond constitutional limits which have created "structural errors". Structural errors involve errors in the trial mechanism so serious that a criminal trial cannot *reliably* serve its function as a vehicle for determination of guilt or innocence. According to **United States v. Andrews**, 681 F.3d 509 (December 2011), the Third Circuit defined "structural errors as errors which affect the "framework within which the trial proceeds (*United States v. Marcus*, 130 S. Ct. 2159, 2164, 176 L. Ed. 2d 1012 (2010) (citing *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). **When a prosecutor assists in the creation of false testimony with**

# EXHIBIT C

| Action | Description | Delay |
|---|---|---|
| Complaint filed | Torres arrested in Boston and transported to DNJ | 2/14/20-3/12/20 |
| Consent continuance[1] | Steven Altman signs STA continuance | 3/5/2020-4/30/2020 |
| New counsel appointed for Torres | Lisa Mack appointed at IA in NJ on 3/17/20,[2] took time to get up to speed | 3/17/2020 |
| Torres files motion for release from detention | 5/5/20: Bail motion filed<br>5/7/20: Gov't response<br>5/14/20: Bail hearing | 5/5/20-5/14/20 |
| Torres indicted | 5/29/2020 | 5/29/2020 |
| Torres files motion to re-open detention | 6/17/20: Torres motion<br>6/23/20: Gov't response<br>6/30/20: Hearing | 6/17/20-6/30/20 |
| Torres files notice of appeal | Appealing bail decision | 7/10/2020 |
| Gov't motion for protective order | June/July 2020: briefing on protective order<br>8/5/20: Opinion issued | 6/22/2020-8/5/2020 |
| Consent continuance | Steven Altman signs STA continuance | 08/12/2020-09/30/2020 |
| Consent continuance | David Touger signs STA continuance | 9/23/2020-11/30/2020 |
| Consent continuance | David Touger signs STA continuance | 11/17/2020 -1/04/2021 |
| Torres fires Touger | Needs to get counsel appointed during holidays, hearing is set for 1/14/2021 | 1/04/2021- 1/14/2021 |
| Schafer getting up to speed on case | COVID-19 Standing orders | 1/2021-3/2021 |
| Torres files motion for reconsideration on detention hearing | 3/5/21: Torres motion<br>3/22/21: Gov't response<br>4/14/21: Torres Reply<br>5/11/21: Hearing | 3/5/202-5/12/2021 |
| Torres makes oral motion for internal DOJ communications | At hearing on 5/11/2021, Torres made an oral motion for internal DOJ communications; Govt' responded on 6/10/2021; Torres replied on 6/30/2021 | 5/11/2021-1/20/22 (ultimately denied on this date) |
| Government files letter regarding STA | Torres requested 3 months to prepare for and submit pre-trial | 5/18/2021-5/25/2021 |

---

[1] Yellow highlights represent affirmative requests for/consents to delays
[2] COVID trial continuances were in place.

| | motions but would not consent to a continuance during this time; in response Gov't asked for status conference to address the issue.  At status conference on 5/25/2021, Court sets **trial for 10/4/2021** | |
|---|---|---|
| Gov't moves for continuance through trial date over Torres' objection | Due to COVID-19, priority of cases, distance of witnesses/ victims, etc.  Notably, Torres has already indicated an intent to file motions | 6/16/2021-10/18/2021 |
| Gov't files MIL pursuant to pre-trial scheduling order | 8/23/20: Torres Opposition 8/30/20: Gov't reply No hearing because Torres moves to postpone trial | 08/09/2021-9/13/2021 |
| <mark>Torres moves to postpone trial for 90 days</mark> | <mark>Gov't responds with no formal position but indicates it is prepared to proceed on 10/4 as scheduled; Status on 10/19 Court schedules **trial for 5/16/22**</mark> | <mark>09/13/2021-10/19/2021</mark> |
| Gov't moves for Frye hearing | 10/19/21: Gov't asks for Frye hearing 11/1/21: hearing held *Trial moved to 6/1/21 for scheduling reasons | 10/19/21-11/1/21 |
| Torres files motion for early PSR / sentencing exposure | Files pro se & represented versions; denied on 11/5 | 09/17/21-11/05/21 |
| <mark>Consent continuance</mark> | <mark>David Schafer signs STA continuance</mark> | <mark>10/22/2021-05/16/2022</mark> |
| Torres MIL | Torres files multiple pro se motions in December 2021 and then Schafer files motions on 1/6/22; oppositions on 2/14/22; reply on 3/6/22; oral argument on 6/27/22; order on motions on 7/8/22 | 1/6/2022-7/8/2022 *During this time there are a series of telephone conferences with Court regarding trial delay |
| Gov't moves for status conference to set trial date | Request a status conference to set a trial date and tolling STA time pending the conference; Court schedules conference for 8/23/22 At conference, **trial set for 5/8/23** | 7/8/2022-8/23/2022 |
| Torres files a series of motions | 7/25/22: release from custody | 07/25/22-9/27/22 |

| | 8/22/22: motion to proceed under hybrid representation or pro se<br>8/25/22: motion for reconsideration of in limine<br>9/19/22: motion to vacate protective order<br>9/23/22: motion requesting law library access<br>9/27: order dismissing multiple motions without prejudice b/c pro se | |
|---|---|---|
| Torres files additional motions | 10/3: motion to reopen appearance of conflict of interest<br>10/24/22: motion for special counsel<br>11/10/22: motion for bail<br>12/5: motion that Torres be permitted to file additional motions<br>12/8: motion for early disclosures | 10/03/22-1/10/23 |
| Gov't moves for filing injunction | 12/5/22: filing injunction motion<br>12/30/22: response<br>1/04/22: reply<br>1/06/22: hearing on motion for filing injunction and motion to go pro se; reserve decision which is issued in part on 1/10/23 and grants pro se status on 2/27/23 | 12/5/22-2/27/23 |
| Gov't moves for contempt | 1/25/23: motion for contempt hearing<br>2/13/23: Torres opposes<br>2/14/23: Gov't reply<br>2/22/23: contempt hearing & pro se status granted | 1/25/23-2/22/23 |
| Gov't moves to toll STA through May 8 trial date | Motion notes that on 2/22 Torres is granted pro se status and he said he was willing and able to proceed to trial on 5/8/23 | 2/23/23-5/8/23 |
| Torres files at least 75 motions that span over 1,000 pages and issues dozens of subpoenas | Many of these motions raise already decided issues, in violation of injunction | 2/2023-5/2023 |

| Status conference on 4/11 Court adjourns trial to 10/3/23 & Torres signs STA continuance | At hearing, ==Torres indicates he is not ready to proceed to trial and in signs a continuance through 10/3/23== | 4/12/23-10/3/23 |
|---|---|---|