UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Honorable Brian R. Martinotti |
| | : | |
| v. | : | Criminal No. 20-418 |
| | : | |
| JOSE TORRES | : | |
| | : | |
| | : | |

---

**MEMORANDUM OF THE UNITED STATES
IN SUPPORT OF ITS MOTIONS *IN LIMINE***

---

 

PHILIP R. SELLINGER
United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2742

On the Memorandum:

Emma Spiro
Shawn Barnes
Assistant United States Attorneys

# INTRODUCTION

Defendant Jose Torres is scheduled for trial on October 3, 2023. The Government submits this memorandum of law in support of the following motions *in limine*:

*First*, Torres should not be permitted to raise before the jury purely legal issues or those previously decided by this Court.

*Second*, particularized findings on the record should be made if the Court determines Torres should be shackled when in court.

*Third*, to streamline the trial and prevent unnecessary delay, a preliminary determination of the admissibility of certain records is appropriate.

*Fourth*, should Torres elect to testify, the Court should admit evidence under FRE 608(b) of specific conduct that is probative of his truthfulness.

*Fifth*, Torres now has reneged on his previous agreement to stipulate to the incontrovertible fact that his victims traveled in interstate commerce and that he intended them to do so to engage in prostitution. That requires consideration of the Government's prior 404(b) motion, seeking to admit a limited number of text messages. Because those messages are probative of both the travel, and intent elements, they should be admitted.

*Sixth*, the Court should require a proffer of the testimony of all defense witnesses in advance of trial.

# BACKGROUND

The Second Superseding Indictment charges Torres with six instances of contacting a victim, usually a commercial sex worker, and inducing, enticing, or

1

coercing her to travel to New Jersey on promises of large sums of money for purposes of prostitution. Torres then manipulated the women into remaining in the room with him: either by physical aggression (*e.g.,* slapping them and/or forcing them to engage in unwanted intercourse), psychologically coercive tactics (*i.e.,* telling the victims he was a police officer or alluding to other threats), or fraudulent monetary incentives (*i.e.,* faking a wire transfer for tens of thousands of dollars).

## ARGUMENT AND AUTHORITIES

### I. The Court Should Exclude Argument Or Testimony On Legal And Irrelevant Issues.[1]

Torres has repeatedly claimed he has been unfairly targeted and prosecuted in this matter. He has made multiple allegations about the prosecutors' and agents' alleged "unethical" conduct in this case, including:

- The prosecution had some sort of bias towards Torres in initiating this prosecution;

- The prosecutor assigned to the case has a conflict of interest;

- The prosecutors assigned to this case are benefiting financially from the case;

- The prosecutors or agents have manufactured evidence;

- The prosecutors or agents have coerced victims into giving false testimony; and

---

[1] The Government moved to preclude all jury nullification issues in August 2021. This Court ruled the issue was moot after counsel for Torres – David Schafer – indicated that he understood this was not permissible and would not argue such issues at trial. But Torres continues to make even clearer his intention to raise irrelevant and highly prejudicial issues before the jury. To avoid any uncertainty and to reduce the risk of a mistrial, the Government renews its motion to preclude Torres from making these arguments at trial.

2

- The prosecutors and agents have deliberately misused the statute under which Torres was charged, which does not apply to individuals seeking sexual services, making him the only "John" to have ever been prosecuted federally.

Torres has built a record of intending to raise these issues, even after they have been decided against him. To take one example, on May 21, 2021, only two weeks after this Court determined the prosecutor assigned to this case did not have a conflict of interest in this matter, Torres stated the following to an acquaintance: "Bring up the conflict between Sher Tremonte and Spiro in front of the jury. And in big, put this one in big bold letters. And say the jury needs to know this." *See* Transcript of May 21, 2021 Jail Call, attached as Exhibit 1; Recording of May 21, 2021 Jail Call, attached as Exhibit 2.

In that same call, Torres announced his intent to defy other rulings by this Court, including the protective order issued by Judge Kiel on August 5, 2020. That ruling specifically held that Torres was not entitled to the identities of the victims and that the discovery he *was* entitled to may not "be disseminated to the public." ECF # 57. Nonetheless, Torres stated: "Bring out the names of the prostitutes for the local newspapers." Exhibit 1, at 3; Exhibit 2. Torres also made clear what his intentions were at trial: "During trial and going forward … refer to the females as prostitutes/hookers" and "ask the prostitutes during trial questions that are on the edge". Torres summarized his strategy as follows: To make the jury "very amused by all the information" brought up during trial and to "mak[e] a complete embarrassment out of these females at trial". Exhibit 1, at 3; Exhibit 2.

3

For these reasons, an order specifically precluding Torres from making such arguments and/or presenting such testimony, as described in the bullets above, is appropriate under Fed. R. Evid. 401 and Fed. R. Evid. 403. These topics: (1) are not properly presented to a jury[2]; (2) are not relevant and lack probative value to the questions the jurors will be asked to determine in this case; (3) are unduly prejudicial, have a substantial likelihood of wasting time, and will confuse the jury; and (4) improperly promote jury nullification.[3]

In addition to violating prior rulings of this Court, Torres' claims of outrageous Government conduct and claims of vindictive or selective prosecution are not properly before the jury because they are solely for the Court. *See United States v. Engler*, 806 F.2d 425, 430 (3d Cir. 1986) (claim of outrageous governmental conduct is a question of law which does not merit a jury instruction); *United States v. Bertoli*, 854 F. Supp. 975, 1076 (D.N.J. 1994), *rev'd in part on other grounds*, 40 F.3d 1384 (3d Cir. 1994) ("Case law definitively establishes that questions of vindictive prosecution and Government misconduct are not proper questions for the jury to consider.").

In *United States v. Berrigan*, 482 F.2d 171, 174 (3d Cir. 1973), the defendants sought "to introduce evidence of discriminatory prosecution to the jury." The trial

---

[2] In fact, most of these issues have already been decided by this Court, making Your Honor's decisions the law of the case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

[3] In addition to being improper attempts to encourage jury nullification, Torres lacks a good faith basis to make **any** of these claims during trial.

court ruled that "discriminatory prosecution [was] not a defense to be presented to the jury but . . . a matter that could have been raised at pretrial on a motion." *Id.* The Third Circuit affirmed, holding "[t]he question of discriminatory prosecution relates not to the guilt or innocence of [the defendants] but rather addresses itself to a constitutional defect in the institution of the prosecution" and affirmed the ruling barring the introduction of supposedly discriminatory prosecution to the jury. *Id.* at 175. Torres should be similarly precluded.

## II. Any Shackling Order Should Be Supported By Particularized Findings On The Record.

In the event the Court determines that Torres's legs should be shackled during the trial, it should support that conclusion with particularized findings on the record and make arrangements to drape counsel's tables so the jury will not be able to see the shackling.

Neither district courts nor the U.S. Marshal's Service may adopt a "general" or "routine" policy of shackling defendants or witnesses during trial. *Deck v. Missouri*, 544 U.S. 622, 626 (2005); *United States v. Salehi*, 187 F. App'x 157, 174 (3d Cir. 2006). Rather, defendants can be restrained only in cases where the court finds that the "perils of shackling are unavoidable." *Deck*, 544 U.S. at 632.

The Third Circuit has indicated that it expects a district court to make particularized findings on the record justifying the need to shackle or otherwise physically restrain a defendant.[4] *Id.* at 633. A court may not simply defer to the

---

[4] Notably, this relates to "shackles or other physical restraints *visible* to the jury." *Id.* (emphasis added).

5

Marshal's Service. *United States v. Brantley*, 342 F. App'x 762, 768-69 (3d Cir. 2009). Rather, a court must make its own findings for the necessity of shackles, including specifics regarding the compelling need for the additional security, that a less restrictive alternative to the security measures does not exist, and that restraining the defendant will not impair his ability to confer with counsel. *See Szuchon v. Lehman*, 273 F.3d 299, 314 (3d Cir. 2001). The factual record which must be created "could come from any proper source, such as the government, the Marshal's Service, the defendant's criminal record, or the Court's observations." *Salehi*, 187 F. App'x at 174.

Factors that can be considered in determining whether shackles or other restraints are necessary include: history of violent, inappropriate conduct in the past, *see Szuchon*, 273 F.3d at 314; *United States v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009); history of disruptive conduct in pre-trial detention or prison, *see United States v. Tagliamonte*, 340 F. App'x 73, 80-81 (3d Cir. 2009); *United States v. Van Sach*, 458 F.3d 694, 699-700 (7th Cir. 2006); the seriousness of the charges and potential sentence; and the physical attributes of the defendant, *United States v. Baker*, 432 F.3d 1189, 1244 (11th Cir. 2005); *United States v. Curry*, No. 04-280 (FSH), 2006 WL 1320083, at *1 n.1 (D.N.J. May 12, 2006) (finding that defendants' legs should be shackled at trial, but hidden from jury under drape on counsel tables, because it "is the least restrictive method regularly employed by the U.S. Marshal's Service in cases

such as this where there is a credible proffer of violence against witnesses"; court further found that defendants could "freely speak to counsel and assist in their own defense because there will be no manacles").

If the Court determines that shackling is appropriate based on the factors set forth above, the Government respectfully requests that such particularized findings are made on the record.

### III. The Court Should Make A Preliminary Determination Of The Admissibility Of Certain Records To Streamline Trial.

Torres has announced his intention to refuse to stipulate to any evidence. That raises the substantial risk of multiple, needless objections regarding the authenticity of certain records, including those that the Rules of Evidence make clear are self-authenticating. To avoid wasting this Court's and the jury's time at trial, the Government seeks a ruling, subject to establishing relevancy, that certain exhibits are properly self-authenticated under Rule 902 and do not require the testimony of custodial witnesses (the "Business Records Evidence").[5]

FRE 902(11) provides for the self-authentication of "certified domestic records of a regularly conducted activity." FRE 902(11) (capitalization modified). Specifically, under FRE 902(11), a "domestic record that meets the requirements of" FRE 803(6)—that is, the business records hearsay exception— "as shown by a certification of the custodian" is self-authenticating so long as the record's proponent

---

[5] The Government will provide the Court with pre-marked versions of the Business Records Evidence on or before September 8, 2023, the date this Court has set for the Government to produce exhibits to Torres. Generally, the Business Records Evidence consists of phone records, bank records, and hotel records.

7

provides proper notice. *Id.* By virtue of this rule, "'records of regularly conducted activity'… may be authenticated…by certificate rather than by live testimony." *United States v. Browne*, 834 F.3d 403, 409, n.5 (3d Cir. 2016) (quoting FRE 902(11)).

In turn, FRE 803(6) excludes from hearsay records of regularly conducted activities if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

FRE 803(6). "Rule 803(6) is designed to capture records that are likely accurate and reliable in content, as demonstrated by the trustworthiness of the underlying sources of information and the process by which and purposes for which that information is recorded." *Browne*, 834 F.3d at 410.

The Government will provide this Court with the FRE 902(11) certifications for each of the proposed exhibits. These certifications attest to the foundational requirements prescribed by both FRE 803(6) and FRE 902(11). Accordingly, the Business Records Evidence should be deemed authentic and admitted without requiring the Government to call any records custodians. Moreover, through this motion, and the subsequent disclosure of the exhibits on September 8, 2023, the

8

Government provides notice to the defense and provides an opportunity for inspection of the exhibits. *See* FRE 902(11).

### IV. Should Torres Testify At Trial, The Government Should Be Permitted To Introduce Prior Acts And Statements Bearing On His Untruthfulness Pursuant To FRE 608.

Should Torres testify at trial, the Government would seek to impeach his testimony under FRE 608(b) with specific instances of prior untruthfulness in connection with this case. This evidence includes proof that Torres: (1) represented that he had family members that were attorneys and/or judges to uncharged victims; (2) used multiple aliases; and (3) was found to have been untruthful to U.S. Pretrial Services and the Court.

FRE 608(b) provides that specific instances of a witness's conduct, including a defendant testifying on his own behalf, may be inquired into on cross-examination if they are probative of the witness's character for truthfulness. Fed. R. Evid. 608; *United States v. Schuler*, 458 F.3d 1148, 1155 (10th Cir. 2006) (Once a defendant testifies, his credibility is at issue "as with any other witness"). Thus, "[a] court may, 'at its discretion[,] permit questioning about specific instances of conduct on cross-examination, but only if the conduct is probative of the witness's character for truthfulness or untruthfulness.'" *United States v. Freeman*, 763 F.3d 322, 342 n.7 (3d Cir. 2014) (quoting *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006)); *see also* Fed. R. Evid. 608(b) ("the court may, on cross-examination, allow [specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness").

9

It is "well settled that although the opponent is not permitted to adduce extrinsic evidence that a witness lied on a previous occasion, he may nonetheless ask questions to that end." *United States v. Whitmore*, 359 F.3d 609, 620 (D.C. Cir. 2004). Torres has been repeatedly deceptive to the women he victimizes. First, he has told multiple uncharged women that he has family members that are in the judiciary or are attorneys. Two such instances of this conduct include: (1) in or around April 2014, when Victim-7 attempted to take a photograph of his license plate, he "made it a point to tell her that his sister was a judge;"[6] and (2) when Victim-8 was concerned about traveling to engage in prostitution with him, he told her that his dad was a Judge. *See* Text Messages, attached as Exhibit 4, page 4.[7] Each of these statements are lies and therefore probative of Torres' untruthfulness.

He has also used numerous aliases when communicating with these women and to the hotels at which he stays. In fact, Torres is known by at least five names to various victims and hotel staff, including: (1) Jose Alvarez; (2) John Alvarez; (3) Joseph Alvarez; (4) Guillermo Molina; and (5) Guillermo Melgoza. *See, e.g.,* Holiday Inn Records, attached as Exhibit 6. Numerous courts have held that "a witness' use of false names or identities is the proper subject of cross-examination

---

[6] Victim-7 also alleges that the Defendant made her extremely uncomfortable, and she permitted him to "molest her" for some time so that he would let her leave. The Government is not seeking to introduce these, and other potentially prejudicial portions of Victim-7's encounter with the Defendant. *See* Report, attached as Exhibit 3.

[7] There are other times that the Defendant told victims that his brother was an attorney (also not true), but the Government will limit its questioning to these two lies listed herein. *See, e.g.*, Text Message Chain, attached as Exhibit 5.

under Rule 608." *Williams*, 2007 WL 3125314, at *3 (citing cases); *see also Nibbs v. Goulart*, 822 F. Supp. 2d 339, 351 (S.D.N.Y. 2011) ("[T]he use of aliases and false information is indicative of a witness' character for truthfulness, and evidence of such use is properly admitted under F.R.E. 608(b)."). As the Ninth Circuit has said: "If a man lies about his own name, might he not tell other lies?" *Lyda v. United States*, 321 F.2d 788, 793 (9th Cir. 1963). Here too, the aliases are probative of Torres' truthfulness.

Finally, Judge Kiel's findings that Torres was untruthful to Pretrial Services and the Court are plainly admissible. *See Whitmore*, 359 F.3d at 619-620; *United States v. Lopez,* 944 F.2d 33, 38 (1st Cir.1991) (no abuse of discretion in prohibiting cross-examination about prior judicial finding). Judge Kiel noted that the "Defendant's inconsistent story about the whereabouts of his family is of concern" since he "reported that his parents and two brothers live in Florida" when, "[i]n actuality, his mother and two half-brothers live in El Salvador." ECF # 28, at 6. Similarly, Judge Kiel found that there were "inconsistencies in [the Defendant's] statements concerning his financial condition. He worked as an accountant for a decade and reported a high income. . . He initially reported substantial liquid assets, but later reported nearly no assets when seeking court-appointment counsel." *Id.* at 5. Finally, Judge Kiel noted that Torres "did not indicate any travel outside the United States" when interviewed by pretrial services, when, in reality, he "has travelled internationally on at least a dozen trips over the past three years, including six trips to Colombia and four trips to El Salvador." *Id.* These lies, told to a federal

11

judge, should be admitted under FRE 608 if Torres takes the stand.

## V. Evidence of Torres' text messages to uncharged victims are admissible.

In August 2021, the Government moved to admit text messages that Torres sent to uncharged victims, where he specifically offered them money in exchange for sex, *i.e.*, soliciting prostitution. Many of these messages demonstrate that Torres often solicited women from outside the state of New Jersey and offered them exorbitant rates to travel to New Jersey to engage in prostitution with him. The Government sought to introduce these messages to demonstrate Torres' intent for the present charges.

To preclude any ruling, Torres, through his counsel, previously conceded "both the elements of interstate travel and the purpose of prostitution" and stated that he would "stipulate to both elements to streamline the trial." ECF # 113, at 6-7. Based on that representation, this Court ruled that "[i]n light of Defendant's stipulation, admission of the text messages with uncharged victims to prove he intended to engage in prostitution with the six victims would constitute unnecessary cumulative evidence in violation of Rule 403." Opinion, at 18-19, attached as Exhibit 7.[8]

Torres now has reneged, flatly rejecting all evidentiary stipulations. That requires the Government to renew its motion to admit this evidence.

This evidence is plainly relevant to Torres' intent to engage in prostitution of victims in this matter, and to have them travel to do so. *See, e.g.*, Text Messages,

---

[8] This opinion remains sealed and is not publicly available on the docket.

12

attached as Exhibit 8 (Torres requesting Madison to travel to Boston for $35,000); Exhibit 9 (Torres requesting "overnight outcall" in NJ for $7,500); Exhibit 10 ("12K no condom"); Exhibit 11 (Asking Ayla to "come to Boston for 3 days for $50,000" . . . "wear thigh high . . . thongs" and "if you do anal and everything I can do $100,000").

Multiple courts have held that evidence of a defendant's prior solicitation of prostitution is admissible to prove his intent in the context of a Mann Act violation. *See United States v. Ratley*, 284 F.2d 553, 554 (2d Cir. 1960) (holding that "[e]vidence of other similar crimes is admissible to show intent to commit the crime charged; it is particularly pertinent in Mann Act cases. . . . The testimony was most relevant here in view of defendant's attempt to make Janifer's trips to Montreal appear innocent." (internal citations omitted)); *United States v. Drury*, 582 F.2d 1181, 1184-85 (8th Cir. 1978) (holding "[t]his court has expressly held that, in order to establish the intent required for a Mann Act violation, the prosecution may admit into evidence testimony that the defendant had solicited girls on prior occasions." *Neff v. United States*, 105 F.2d 688, 692 (8th Cir. 1939)).

Here, Torres is charged with conduct stemming from his interaction with prostitutes on six different occasions. Accordingly, any additional prejudice or "shock-value" associated with evidence showing he frequented prostitutes is so minimal as to be practically non-existent and addressed with an appropriate jury instruction about the purpose for which the evidence is being admitted. Thus, this evidence is admissible pursuant to Rule 404(b).

## VI. The Court Should Require A Proffer Of Defense Witnesses Prior To Trial.

13

As this Court is aware, Torres has been utilizing Rule 17 subpoenas to procure testimony from (1) two brothers of a victim; (2) the boyfriend of a different victim[9]; and (3) attorneys for the victims, among others. To the Government's knowledge, none of these individuals have personal knowledge of or information relevant to the charges against the Defendant. This Court should use its authority under Federal Rule of Evidence 103(c) to require a proffer of witnesses outside the presence of the jury and prior to trial. In particular, the notes to FRE 103(c) emphasize the importance of offers of proof for ensuring that "[t]he judge can foreclose a particular line of testimony and counsel can protect his record without a series of questions before the jury, designed at best to waste time and at worst 'to waft into the jury box' the very matter sought to be excluded." FRE 103(c) Note to Subdivision (c).

Courts in this district and elsewhere have applied this rule to require defendants to proffer the testimony of their trial witnesses. *United States v. Ailemen*, 43 F. App'x 77, 82 (9th Cir. 2002) (holding that "the district court acted within its discretion in requiring an offer of proof because defense counsel had previously attempted to circumvent the court's ruling by trying to introduce evidence of government misconduct"). Just recently, Judge Quarashi required a particularly litigious *pro se* defendant to proffer the testimony of his witnesses prior to calling them to testify before a jury. *See United States v. Rufus Williams*, 19-cr-804 (January

---

[9] At the time that the defense's investigator approached this boyfriend, the boyfriend was not even aware that his girlfriend – one of Torres' victims – was previously involved in prostitution.

2023), portions of trial transcripts attached as Exhibit 12, Exhibit 13.  In requiring such proffers, Judge Quarashi did not accept "conclusory statements" from the defendant, *see* Exhibit 12, nor did he permit "fishing expeditions," *see* Exhibit 13.

The Court should therefore require Torres to proffer what each of his proposed trial witnesses would testify to in order to ensure that (1) they have personal knowledge as required by FRE 602; and (2) their testimony would be relevant at trial as required by FRE 401.

## CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to grant its motions *in limine* in their entirety.

<br>

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:   s/ Emma Spiro
Emma Spiro
Shawn Barnes
Assistant United States Attorneys

Dated:  August 28, 2023
Newark, New Jersey

15