

*U.S. Department of Justice*

*United States Attorney*
*District of New Jersey*

___

*Shawn Barnes and Emma Spiro*  *970 Broad Street, 7th floor*  *973-645-2700*
*Assistant United States Attorneys*  *Newark, New Jersey 07102*

September 1, 2023

Hon. Brian R. Martinotti
United States District Judge
U.S. Post Office and Federal Courthouse
2 Federal Square
Newark, New Jersey 07102

      Re:   <u>United States v. Jose Torres</u>
            Crim. No. 20-418 (BRM)

Dear Judge Martinotti:

      Jose Torres ("Torres") has filed a motion seeking to pierce the rape-shield protections afforded by Federal Rule of Evidence 412. Docket Entry ("DE") 334. Torres' motion improperly seeks to re-litigate a previously decided matter of law, as Your Honor previously granted the Government's motion to prohibit such cross-examination. The law, facts, and arguments, however, remain the same, and Torres' application should fare no differently than it did when Your Honor ruled on it nearly two years ago. Thus, Torres' application to elicit testimony of the victims' prior sexual conduct should be denied.

**1. Torres' Application to Pierce Rape-Shield Protections and Cross-Examine the Victims About Prior Sexual Encounters Should be Denied.**

      As a threshold matter, this Court has already reviewed significant briefing (DE 111, 113, 114), held oral argument, considered the arguments of counsel (DE 160), and granted the Government's motion "to exclude evidence of the victims' sexual behavior before and after their encounter with Defendant." DE 163. The Government's application was brought pursuant to FRE 412. But now, without even referencing the Court's prior decision barring him from attempting to introduce such testimony, Torres raises the issue anew. That is improper and Torres should not be permitted a second bite at the apple – rather, he should be estopped from raising this (and other previously-decided) issues that now constitute the law of the case. *See Bolden v. Southeastern Penn. Transp. Auth.*, 21 F.3d, 29, 31 (3d Cir. 1994).

But even if the Court were inclined to address Torres' application, it fails on the merits for three reasons.

First, Torres' entire motion rests on a fundamentally flawed premise: that because commercial sex worker victims are involved, as opposed to victims who were *forced* to engage in sexual conduct against their will, *id.* at 2, "[t]his is not a case that falls under" the federal rape shield law. *See United States v. Brown,* 810 F. App'x 105, 106 (3d Cir. 2020) (FRE 412 is "often called the rape-shield law"). According to Torres' interpretation, either FRE 412 does not apply, or it somehow applies with less force. But Torres' narrow view of FRE 412 is wholly unsupported.

Cases nationwide, including, most recently, the Panel decision in *Brown*, have consistently held that FRE 412 applies with full force to commercial sex workers who nonetheless have been victimized through sexual misconduct, such as Torres' abhorrent conduct. 810 F. App'x 105, 106. *Brown* is far from alone in that regard – in fact, the Government previously brought many such cases to the Court's attention when we briefed this issue two years ago (*see* DE 111). *See United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012) (applying FRE 412 to protect prostitutes); *United States v. Rivera*, 799 F.3d 180 (2d Cir. 2015) (admitting evidence of a victim's prior sex work precluded by Rule 412 was not required to uphold the defendant's Constitutional rights under the Confrontation Clause); *United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) (victim's participation in prostitution, either before or after the time period in the indictment, had no relevance to whether defendant "beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex"); *United States v. Valenzuela*, 495 Fed. Appx. 817, 820 (9th Cir. 2012) (evidence of victims' prior work in prostitution excluded as irrelevant under Rule 412, even initial consent by some of the victims was irrelevant to whether the defendant kept them, after that consent, through "force, fraud, or coercion (or threats thereof" in order to "cause the girls to engage in a commercial sex act.")

Simply stated, Torres' narrow reading of FRE 412 is incorrect. And not only is his position unsupported by caselaw – it is directly refuted.

Second, the so-called Constitutional Rights Exception contemplated by FRE 412(b)(1)(C), upon which Torres relies, does not apply in this case. That provision applies only to evidence that, if excluded, "would violate a defendant's constitutional rights."

But as *Brown* makes clear, the Constitutional Rights Exception is markedly narrow. That is because evidentiary restrictions are unconstitutional "only if their application is arbitrary or disproportionate to the purposes that they are designed to serve." *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

Here, the only Constitutional rights violation Torres is able to identify is a supposed violation of his Confrontation Clause right to cross examine his victims. But multiple courts have rejected this very argument when considering the relationship between FRE 412 and the Confrontation Clause. *See United States v. Roy*, 781 F.3d 416 (8th Cir. 2015) (the District Court's exclusion of evidence that a victim was a prostitute prior to meeting the did not violate his Sixth Amendment right to confront and cross-examine witnesses in a prosecution for sex trafficking by force, fraud, or coercion, and stating "[t]he victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex") (internal citations omitted); *United States v. Haines*, 918 F.3d 964 (9th Cir. 2019) (exclusion of minor victim's prior prostitution activities under FRE 412 did not violate the defendant's Sixth Amendment right to confront witnesses).

Moreover, the right to cross-examine witnesses is not without limits. Indeed, trial judges retain wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues and other matters. *United States v. VanArsdall*, 475 U.S. 673, 679 (1986). The Government certainly understands that the victims will be subjected to vigorous cross examination, but, as with any witness, they should not be subjected to lines of cross-examination that are solely intended to harass, embarrass, and intimidate them. The questions that Torres proposes to ask of the victims, including those about their commercial sex worker experiences/activities have nothing to do with Torres or the issues involved in this case. Thus, in this particular context, the correct application of Rule 412 does not form the basis of a Confrontation Clause violation.

Counsel for Torres is free to cross-examine the victims within the scope of direct, which will focus on their encounters with him. He also is free to impeach their credibility with inconsistencies or other matters within the scope of the Rule. He is not, however, allowed to impeach them by showing they "engaged in ***other*** sexual behavior" and to attempt to prove his "victim's ***sexual predisposition***." FRE 412(a). That is the whole point of the Rule, which precludes sex acts from being used as a form of propensity evidence for impeachment purposes.

*Cephus*, 684 F.3d at 708, is directly on point in explaining why Rule 412 precludes Torres' Confrontation Clause argument. There, the defendant contended that evidence suggesting that one of his adult victims had worked as a prostitute before meeting the defendant was admissible under the "Constitutional rights" exception to Rule 412. The court rejected that argument, holding there was no Constitutional need for the defendant to bring out that the victim had been a prostitute before, particularly because her background didn't "suggest that he didn't beat and threaten her – that was his *modus operandi* and there's no evidence that he would have made an exception for [the victim]." *Id*. Put another way, "even if

she knew going in, from her prior experience, that [defendant] probably would beat her, it was still a crime for him to do so." *Id.*

*Rivera*, 799 F.3d at 185, makes the same point: Admitting evidence of a victim's prior sex work simply isn't required to uphold a defendant's Constitutional rights under the Confrontation Clause, because the argument that commercial sex worker victims "knew what they were getting into," does not mean that the victims consented to being threatened or coerced into performing sexual acts they did not wish to perform. To the contrary, "***[t]he very purpose of the Rule is to preclude defendants from arguing that because the victim previously consented to have sex--for love or money— . . . claims of coercion should not be believed***." *Id.* (emphasis added).

It simply cannot be the case that application of a federal rule of evidence, whose very purpose is intended to preclude what Torres wishes to accomplish, is arbitrary, disproportionate, or otherwise improper. It is plain, from the questions he proposes to ask, that he plans to elicit irrelevant but embarrassing details about his victims on matters having nothing to do with their encounters with him. His questions could hardly be in more direct conflict with Rule 412 – they are explicitly about their commercial sex work "before" any encounter with Torres, including the most money they received during that period of time, any clients (other than Torres) who did not pay them, how much they charged other clients, and "past" (before Torres) and "current" (after Torres) sex work. Dkt. #334 at 2-6.

Not only is Torres' embarrassment and harassment motive clear enough from the questions themselves, but this Court also knows, from the Government's motion *in limine*, that the linchpin of Torres' defense strategy is to make the jury "very amused by all the information" brought up during trial about the other commercial sex acts in which his victims engage and to "mak[e] a complete embarrassment out of these females at trial". DE 335 at 4.

Torres' proposed lines of cross-examination are patently improper. What Torres' victims did on other occasions, in circumstances unrelated to Torres and his conduct, has no relevance as to whether he committed the acts with which he is charged: inducing, enticing, or coercing his victims to travel to New Jersey on promises of large sums of money for purposes of prostitution, then manipulating them into remaining in the room with him, either by physical aggression (*e.g.*, slapping them and/or forcing them to engage in unwanted intercourse), psychologically coercive tactics (*i.e.*, telling the victims he was a police officer or alluding to other threats), or fraudulent monetary incentives (*i.e.*, faking a wire transfer for tens of thousands of dollars. The purposes of Rule 412 would be negated were such irrelevant, prejudicial questions allowed. *See* Fed. R. Evid. 412, Advisory Committee Notes (1994) (purpose of rule is to protect against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with

public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process).

Third, and finally, Torres' proffered questions lack relevance and constitute improper propensity evidence.

In an attempt to breathe some semblance of relevance into his wholly improper questions, Torres injects the same legally-flawed, inaccurate misstatement of the law that he has advanced in past filings. According to Torres, the enticement element of the charged offense requires the Government to prove that Torres "persuade[d], induce[d], entice[d] or coerce[d]" the sexual misconduct. DE 334, p. 1. He is wrong. The statue upon which Torres is indicted, requires the Government to prove that Torres "persuade[d], induce[d], entice[d] or coerce[d] any individual *to travel* in interstate or foreign commerce . . . to engage in prostitution . . ." 18 U.S.C. § 2422(a) (emphasis added).

The Government **is not required** to prove that Torres induced or enticed the victims to engage in prostitution – the Government **is required** to prove that Torres induced or enticed the victims **to travel** in interstate commerce in order to engage in prostitution. Torres claims that he needs to ask the victims questions about their encounters with others because such questions are "probative of each of the women's possible tendency to initiate sexual misconduct – prostitution that is illegal in New Jersey – in exchange for money." DE 334 at 1. But determining whether it was the victims or Torres who initiated the "sexual misconduct" is neither an element of any charged conduct nor an issue for this jury. Thus, Torres' proposed questions are not relevant to any issue in this case.

Moreover, Torres' proposed questions are unfairly prejudicial under Rules 401 and 403, as well as under Rule 404(b) because, per his own admission, he plans to confront the victims with "any and all history, past or present," about their "illegal" prostitution. DE 334 at 1.

On their face, Torres' explanations of the supposed relevance of his questions shows they plainly are not. For example, he repeatedly suggests that questions about the other sexual activities of his victims are relevant to whether Torres knowingly enticed or did not entice them to travel in interstate commerce with the intent that they engage in prostitution with him. That simply doesn't follow and, if anything, is an improper propensity argument. Dkt. #334 at 2-6.

The proposed questions also carry a significant amount of prejudice. The victims in this case recognize that they are going to have to come into open court and testify about highly sensitive matters under oath. But Torres' proposed questions, which have no probative value, carry a significant risk of unnecessarily embarrassing, harassing, and intimidating the witnesses in this case. Moreover, the proposed questions will likely result in unnecessary delay and may very well inject

a level of confusion that causes the jury to focus on salacious details, as opposed to the actual issues involved in this case.

And again, Torres' stated reason for the proposed questions demonstrates that he seeks to ask this jury to draw a wholly improper propensity inference. Again, according to Torres, the proposed questions are "probative of each of the women's possible **tendency** to initiate sexual misconduct – prostitution that is illegal in New Jersey – in exchange for money." DE 334 at 1 (emphasis added). The rule against propensity evidence, FRE 404(b), is clear: "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformance with the character." By his own acknowledgement, Torres seeks to pursue the proposed lines of cross-examination in order to demonstrate the victims' "tendency" to initiate sexual misconduct. This is propensity evidence, plain and simple, and Torres should be barred from pursuing the proposed lines of cross-examination. *See, e.g., E.E.O.C. v. Donohue*, 746 F. Supp. 2d 662 (W.D. Pa. 2010) (holding that evidence of an employee's propensity to engage in particular sexual behavior in other settings, such as her current workplace, was not probative of any issues in a Title VII sex discrimination suit and generated inadmissible propensity evidence).

Accordingly, although Torres may, within the scope of these and other evidentiary rules, question his victims about the extent to which he enticed or induced them to travel to New Jersey for commercial sex with him, what they did as commercial sex workers generally or with other clients is off limits. He may not delve into all of their commercial sex activities before and after their encounters with him, which is what he explicitly seeks to do.  Dkt. #334 at 2-6.

### 2. The Government Moves to Dismiss Count Five of the Second Superseding Indictment and Proceed on the Remaining Five Counts.

By way of this application, the Government moves to dismiss Count Five of the Second Superseding Indictment. "The government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a).  And it may narrow allegations without returning to the grand jury. *See* Fed. R. Crim. P. 31(c). Here, the Second Superseding Indictment has provided Torres with sufficient notice of the conduct with which he is charged. The Government's application does not alter the proofs or the evidence with respect to the remaining five counts.

A court's "discretion under Rule 48(a) is severely cabined," and refusal to allow dismissal is appropriate "only in the rarest of cases." *In re Richards*, 213 F.3d 773, 788, 786 (3d Cir. 2000). A court may refuse dismissal "to protect a defendant against prosecutorial harassment" by means of repeated indictment, *Rinaldi*, 434 U.S. at 30 n.15, or where "dismissal ... is clearly contrary to the public interest," such as if "the prosecutor appears motivated by bribery, animus toward the victim, or a desire to attend a social event rather than trial." *Richards*, 213 F.3d at 489-90.

- 7 -

No such considerations apply in this case. After assessment of the case, and consultation with the respective victim, the Government has determined that prosecution of Count Five of the Second Superseding Indictment is not in the interest of the United States.

## Conclusion

For all these reasons, the Government requests that this Court: (1) DENY Torres' Rule 412 motion and (2) GRANT the Government's application to dismiss Count Five of the Second Superseding Indictment.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:   Shawn P. Barnes
      Emma Spiro
      Assistant U.S. Attorneys

cc.   David Shafer, Esq.
      Linwood Jones, Esq.