**DAVID E. SCHAFER**
*Attorney-at-Law*
2273 State Highway 33
Suite 207
Trenton, NJ 08690
(609)439-7790
schafdave@gmail.com

Honorable Brian R. Martinotti     September 5, 2023
(By ECF)

*United States v. Jose Torres*
Crim. No. 20-418

**REPLY TO GOVERNMENT'S MOTIONS *IN LIMINE***

Dear Judge Martinotti:

    Torres has responses to several sections of the Government's motion:

**V. Evidence of Torres' text messages to uncharged victims** (pages 12 and 13)

    The Government has often referred to the Court's prior rulings as "the law of the case." This should include Your Honor's decision in Docket Document 163 at page 2-11 and 12: "**ORDERED** that the Government's motion to admit text messages to uncharged victims is **DENIED**." The Court explained this conclusion in his July 8, 2022 sealed Opinion:

> Defendant concedes "the purpose of prostitution" and states he will stipulate to this element. (ECF No. 113 at 6.) In light of Defendant's stipulation, admission of the text messages with uncharged victims would constitute unnecessary cumulative evidence in violation of Rule 403. Accordingly, the Government's motion to introduce text messages to uncharged victims is **DENIED** as the probative value of this evidence is outweighed by the potential prejudicial effect.

    This is the law of the case. When the Government emailed a request for a formal Stipulation from the defense on March 30, 2023 at 3:41 pm, the decision had to be made by the *pro se* defendant, not standby counsel. (Torres was granted *pro se* status on February 27, 2023; that status was rescinded on May 9, 2023). Now that counsel is again permitted to make such decisions, he will sign a formal Stipulation to "the purpose of prostitution."

    Therefore, none of the proposed Exhibits that contain text messages between Torres and uncharged victims should be admitted.

1

### VI. The Court Should Require A Proffer Of Defense Witnesses Prior (pages 13 to 15)

Such a request should be reviewed in three timeframes. For all of the subpoenas that counsel served prior to the defendant's *pro se* status was in effect, counsel submitted a letter to the Court explaining why the potential witnesses were being issued a subpoena. For example, three attorneys for five of the victims were parties to interviews by the FBI and DHS. The reason for the subpoenas for those three attorneys was the credibility of their clients at trial. The defense examination would not delve into any privileged communications between the victims and their attorneys, but it would include asking the attorneys about the truthfulness of claims made by their clients at trial if those claims were different from what they heard reported to the Government agents. Therefore, Torres vehemently objects to having the Government know prior to trial the bases for the testimony of the defense witnesses served subpoenas through counsel before the defendant's *pro se* status.

With regard to the subpoenas given to the clerk during the tenure of the defendant's *pro se* status, any reasons for the subpoenas, if any, would have been examined by the Special Master. As counsel during that time were basically only conduits for transporting the defendant's subpoenas to the Clerk, they do not know the reasons for the subpoenas. Therefore, only the Special Master or the defendant himself would know the reasons for any subpoenas that were not stricken from the docket at the May 8, 2023 hearing (transcript at 5-10 to 16) and served.

Regarding the subpoenas served after the defendant's *pro se* status was revoked, counsel notified the Court the reasons those subpoenas were being issued. Again, Torres objects to having the Government know prior to trial the bases for the testimony of the defense witnesses served through counsel after the defendant's *pro se* status.

Even the single unpublished case the Government relies on to support their request simply reinforced a court's authority under *Fed. R.* 103(c) to demand an offer of proof *during trial*:

> Here, the district court acted within its discretion in requiring an offer of proof because defense counsel had previously attempted to circumvent the court's ruling by trying to introduce evidence of Government misconduct.

*United States v. Ailemen*, 43 Fed. Appx. 77, 82 (9th Cir. 2002). Even the rule itself infers that the offer of proof is understood to be made *during a trial*, not prior to one: "To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." *Fed. R. Evid.* 103(d).

**III. The Court Should Make A Preliminary Determination Of Admissibility** (pages 7 to 9)

Now that counsel has returned to trying the case for the defense, they will agree to self-authentication of records in compliance with *Federal R. Evid.* 902(11) and 803(6). In addition, to avoid wasting the Court's and the jury's time, if the defense offers a phone record that was clearly given to the defense in Discovery (for example, with a Bates stamp or dependable number at the bottom right), and the defense cannot locate the particular certificate for that record within the enormous amount of phone records in Discovery, the Court should consider such a document "likely accurate and reliable in content, as demonstrated by the trustworthiness of the underlying sources of information." *United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016).

**I. The Court Should Exclude Argument Or Testimony On Legal & Irrelevant** (pages 2 to 4)

Now that counsel has returned to trying the case for the defense, they will abide by the rules of evidence and criminal procedure. However, as prostitution is included in the third element of the statute, counsel should be allowed to use the term "prostitute" as well as "sex worker."

**IV. Should Torres Testify At Trial, The Government Should Be Permitted** (pages 9 to 12)

The paragraph at the top of page 10 of the Government's motion again attempts to challenge the law of the case by introducing text messages of uncharged victims. Besides already having been excluded by the Court's prior ruling, the texts are clearly forbidden by *Fed. R. Evid.* 608(b):

> (E)xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.

Also, the Government's cites lend no support to its position. Its *Schuler* quotes are so distorted that the case's actual language should be presented to the Court:

> (I)t is within the discretion of the district court to decide whether a defendant may be cross-examined about prior conduct concerning her character for truthfulness, *subject always to the balancing test of Federal Rule of Evidence 403*. In addition, *Rule 608(b)* states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness (a collateral matter) ... may not be proved by extrinsic evidence."
> ....

3

> In this case, the false tax return and credit card applications were not collateral because they had already been admitted into evidence by stipulation of Ms. Schuler.

*United States v. Schuler*, 458 F. 3d 1148, 1153 (10th Cir. 2006) (emphasis added).

In *United States v. Freeman*, 763 F.3d 322, 341-42 (3rd Cir. 2014), footnote 7 recites the language of *Fed. R. Evid.* 608(b) and adds some language of *United States v. Williams*, 464 F. 3d 443, 448 (3d Cir. 2006) to emphasize that the District Court was correct in sustaining the Government's objection to defense counsel's failure to "play by the rules."

The bottom of page 10 of the motion, also requesting that extrinsic evidence of Holiday Inn records be admitted, infers that Torres gave five various names to a hotel clerk. Although parts of such records could possibly be admissible under *Fed. R. Evid.* 902, the data punched in by clerks regarding names of guests are hearsay until the clerks who typed them in testify that Torres gave them those names, a mini-trial that would be "wasting time, or needlessly presenting cumulative evidence." *Fed. R. Evid.* 403. The six women in the indictment will be testifying to untruthfulness of Torres during their direct examinations.

In the bottom paragraph of page 11 of the motion, the Government seeks to resurrect alleged lies by Torres during his bail hearing. The Court should not allow this questioning if Torres takes the stand. Any relevancy this cross-examination may have is unfairly prejudicial to Torres, as well as a waste of time and misleading the jury with a mini-trial. *Fed. R. Evid.* 403. For example, somehow between Torres' counsel at the time, the Pretrial Services interview, and the communication between the parties and the Court, it was never understood that Torres' biological mother lives in El Salvador, his biological father was deceased long ago, and his foster parents who took him in as a child raised him in Florida. If the Court recalls, the Government was claiming that his family lived in South America, not Central America. Such irrelevant questions would force Torres to have witnesses testify to the bases for his answers to Pretrial Services and the Court during detention hearings, which have no relevance to the elements of the statute. *Fed. R. Evid.* 402.

For all of the above reasons, if Torres chooses to testify, the Government should not be permitted to introduce extrinsic prior acts and statements bearing on his character for truthfulness.

Respectfully submitted,

*David Schafer*

David Schafer
Attorney for Jose Torres

4