UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Brian R. Martinotti |
| | : | |
| v. | : | Crim. No. 20-418 |
| | : | |
| JOSE TORRES | : | |

OPPOSITION TO TORRES' POST-TRIAL MOTION FOR A JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

                                      PHILIP R. SELLINGER
                                      UNITED STATES ATTORNEY
                                      District of New Jersey
                                      970 Broad Street
                                      Newark, New Jersey 07102
                                      973-645-2700

On the Brief:

EMMA SPIRO
SHAWN BARNES
Assistant United States Attorneys

## PRELIMINARY STATEMENT

Torres' post-trial motions for a judgment of acquittal under Rule 29 and for a new trial under Rule 33 suffer from irremediable flaws. To begin, his Rule 29 motion rests entirely on an incorrect statement of the law that governs his conviction – an incorrect statement that this Court has consistently rejected for some time, making it the law of the case. Nonetheless, Torres continues to argue he cannot have violated 18 U.S.C. § 2422(a) because, even though he persuaded prostitutes to visit him in New Jersey through multiple falsehoods, those women (i) enticed him first through their advertisements and (ii) would have traveled to New Jersey to engage in acts of prostitution with Torres even he had not made his false representations about money, future business and his excellent reputation as a client. Dkt. #386-1 at 2.

But Torres is wrong. The content of the online promotions for sexual services, however provocative, doesn't matter. Only Torres' role in offering to make the trip to New Jersey worth their effort matters. Accordingly, all of Torres' arguments, Dkt. #386-1 at 2-6, that the evidence was insufficient to convict him of violating § 2242(a) fail as a matter of law.

They also fail as a factual matter. Ample evidence, including Torres' own admissions on the stand, demonstrated the lengths to which he went to make the women visit him from out of state with the intent that they engage in prostitution upon arrival and how Torres' made it such an attractive proposition. That's enough

2

to sustain the jury's verdict. To conclude otherwise would completely "usurp the role of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

Torres's Rule 33 motion is equally flawed. He argues, despite the limiting instruction to which he agreed, that: (i) evidence of his interactions with the women once they were alone with him, could not properly have been admitted as intrinsic to his crimes; (ii) they proved other bad acts and therefore were unfairly prejudicial and inadmissible under Rules 403 and 404(b): and (iii) text messages to uncharged victims also were unfairly prejudicial.

Not so. The evidence of what occurred in the room between Torres and his victims pertained to acts that were performed contemporaneously with the crime of bringing them to New jersey for prostitution and facilitated Torres's completion of his crime: Bringing women across state (and international) lines to having sex with him. Those acts also showed (as the jury was instructed) that had been his intent in convincing them to travel, making the evidence both intrinsic and admissible under Rule 404(b). As for the texts, they too were highly probative of Torres's intent, which he continually put at issue by trying to confuse the jury by claiming it was females' intent that mattered, not his. They were admissible under Rule 404(b).

For these reasons, Torres' motions must be denied.

3

## ARGUMENT

### I. THE RELEVANT RULE 29 AND RULE 33 STANDARDS

When reviewing a post-verdict motion for judgment of acquittal under Rule 29, the Court "must view the evidence in the light most favorable to the verdict and must presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987). "Courts must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Brodie*, 403 F.3d at 133; *see also United States v. Picciotti*, 40 F. Supp. 2d 242, 245 (D.N.J. 1999) ("[I]n evaluating the evidence, the 'district court cannot and should not weigh the evidence . . . Nor . . . is the district court permitted to make credibility determinations. The district court is confined solely to its assessment of the sufficiency of the Government's evidence.'") (quoting *United States v. Giampa*, 758 F.2d 928, 934-35 (3d Cir. 1985)).

Defendants like Torres bear a heavy burden on a sufficiency challenge and cannot, as he does, "simply reargue their defense." *United States v. Smith*, 186 F.3d 290, 294 (3d Cir. 1999) (citation omitted), superseded by statute on other grounds as stated in *United States v. Diaz*, 245 F.3d 294, 303 (3d Cir. 2001). Further, "[a] verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable

4

doubt." *Coleman*, 811 F.2d at 807. "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," may the Court overturn the jury's verdict. *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir.1990) (citation omitted). "Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred." *McNeill*, 887 F.2d at 450. "The evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore*, 910 F.2d 1084, 1129 (3d Cir. 1990).

Under the Rule 33 standard, a district court "can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred— that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (internal quotation marks omitted). "A court must grant a motion for a new trial when a reasonable possibility exists that a trial error had a substantial influence on the verdict." *United States v. Hamilton*, Crim. No. 05-876, 2010 WL 1027412, at *1 (D.N.J. Mar. 18, 2010) (internal quotation marks omitted). A Court will find error when the conduct in question was "sufficiently prejudicial to violate [a] defendant's due process rights." *United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir. 1982).

Unlike a Rule 29 motion for judgment of acquittal based on the insufficiency

of the evidence, "when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (citations omitted). Such motions, however, "are not favored and should be granted sparingly and only in exceptional cases." *Silveus*, 542 F.3d at 1005 (citation and internal quotation marks omitted).

### II. THE EVIDENCE AGAINST TORRES WAS VOLUMINOUS AND HE CANNOT MEET THE HEAVY BURDEN TO OBTAIN ACQUITTAL PURSUANT TO RULE 29.

#### A. THE OFFENSES OF CONVICTION

To convict Torres of each count of enticement, in violation of 18 U.S.C. § 2422(a), the Government was required to prove:

(1) that Torres knowingly persuaded, induced, or enticed the woman in question to travel in interstate or foreign commerce;

(2) that the woman traveled in interstate or foreign commerce; and

(3) that Torres acted with the intent that she would engage in prostitution.

Sand, *Modern Federal Jury Instructions*, Instr. 64-6.

Given Torres' consistently incorrect statements on the governing law, it is worth reemphasizing that even if a woman was predisposed to leave her home state or country and travel to New Jersey, that still would not preclude a jury from finding that Torres persuaded, induced, or enticed her to do so. *United States v. Rashkovski*, 301 F.3d 1133, 1137 (9th Cir. 2002) ("None of the statutory language

6

requires Rashkovski to have created out of whole cloth the women's desire to go to the United States; it merely requires that he have convinced or influenced Touchsheva and Tsimbal to actually undergo the journey, or made the possibility more appealing"); Sand, *Modern Federal Jury Instructions*, Instr. 64-7 ("It is not a defense that the individual already had a wish to make the trip if the defendant did something that made the trip more appealing.").

Moreover, whether the woman willingly traveled to engage in prostitution is irrelevant—her voluntary travel for that purpose is not a defense when, as here, acts of persuasion have been proven. As set forth below, the Government met its burden as to each element of each count.

Torres' motion seeks to have this Court make a completely different factual determination from that reached by the jury: That the four women who testified at trial were persuaded, induced or enticed to travel to New Jersey by Torres. Torres states that the "jury *ignored* the nature of the four women's enticing," essentially asking this Court to substitute its judgment of the evidence for that of the jury. Torres's argument is both legally and factually wrong.

First, no element in the charged crimes involves whether Torres was enticed by anyone. The only relevant determination is whether Torres himself persuaded, induced or enticed each female to cross state lines for prostitution. The jury instructions, *see* Tr. 545:17 – 546:10, make this clear: Whether the women wanted to come to New Jersey or not, and whether they wanted to travel for prostitution or

7

not, is completely *irrelevant*.

Second, Torres ignores the volume of proof plainly showing his guilt. Each victim testified that she traveled in interstate commerce (Element 2) and that she did so for the purpose of prostitution (element 3). Each victim also testified that she came to New Jersey for prostitution only because of the promises of money by Torres:

- Anna T. testified that she was in New York when Torres reached out to her and he offered her $11,000 to come to New Jersey for prostitution, more than double her overnight rate at the time. He also offered to pay for a car service and to set her up with his friends to make it even more lucrative for her. *See* Tr. 78:20-24; 80:19-81:09. Anna T.'s account was corroborated by multiple text messages where Torres indicated he understood her overnight rate, offered to reimburse her for a car service, and offered to set her up with friends. *See* GX 200, 201. Torres himself testified that it was "just common sense" that Anna would not have come to New Jersey if he hadn't offered to pay her. Tr. 489:16-19.

- Lindsey B. testified that Torres reached out to her while she was in New York and offered her $10,000 to come to New Jersey to have sex with him. *Id*. 147:21-148:23. Torres then offered to call a car service for her, to pay her back for alcohol and condoms, and provided her with a reference. *Id*. 148:23-149:17. Lindsey described Torres as having a "salesman-like personality." *Id*. 149:04-07. But it was the money that ultimately persuaded Lindsey to come. *Id*. 151:04-06. Lindsey's testimony was corroborated by her advertisement (GX 100), bank records (GX 103), and cell cite records (GX 705c, 805).

- Chelsea L. testified that Torres reached out to her in response to her advertisement which indicated she was located in New York. Tr. 232:18-233:01; 235:14-24. Torres then offered her $10,000, double her overnight rate, and offered to pay for her car service to come to New Jersey to have sex with him. *Id*. 236:11-237:03. When Chelsea questioned why he would offer her so much, Torres immediately upped the offer to $12,500. *Id*. 237:04-06. Chelsea described Torres as

8

"very self-assured, very confident, suave" during her initial conversations with him. *Id*. at 239:12-13. Chelsea's testimony was corroborated by her advertisement (GX 500), hotel records (GX 502), cell cite records (GX 501b, 805), and photographs taken of Chelsea that were recovered from Torres' phone (GX 851, 852, 853).

- Katherine L. testified that Torres contacted her while she was in Canada and offered her $20-30 thousand to come to New Jersey a few times a month to have sex with him. Tr. 288:10-290:01. She testified that Torres was "very charming on the phone. Very believable . . . I trusted him pretty quickly." *Id*. 290:07-09. But ultimately, she traveled to New Jersey because of "the promise of the money that was offered." *Id*. 290:19-20. Torres also offered to book her a flight to ensure she traveled. *Id*. 291:06-09. Katherine's testimony was corroborated by boarding passes (GX 601), a $20,000 check Torres gave her with his name and account number (GX 603), hotel records (GX 703), and cell cite records (GX 805). Torres himself testified that it was "just common sense" that he agreed to transfer $20,000 to Kate because otherwise "she wouldn't have come." Tr. 460:22-23.

This testimony left no doubt for the jury as to the reason the women traveled to New Jersey: They had received promises of large sums of money, travel arrangements and other business, not to mention Torres' supposedly high client rating. That all persuaded, induced and enticed them to travel.

This testimonial evidence was corroborated by other, contemporaneous documentary evidence. *See* GX 103 (Lindsey B. taxi purchases from New York to New Jersey); GX 100 (Lindsey B. advertisement for prostitution); GX 201 (Torres text message to Anna T. asking her to travel from upstate New York); GX 200 (Torres email message to Anna T. indicating he saw her advertisement on Eros New York); GX 805 (Chelsea L.'s cell cite information showing her travel from New York to New Jersey); GX 500 (Chelsea L's advertisement for prostitution); GX 601

9

(Katherine L.'s plane tickets from Canada to Newark, New Jersey) and GX 603 ($20,000 check from Torres made out to "Cash" with a memo of "Donation"). In this case, that corroboration, which amply reinforced the victims' testimony, is essentially icing on the cake. It is well-settled that at this stage, even without it, this Court must view all evidence in the light most favorable to the Government. *See United States v. Bimbow*, Crim. No. 21-48, 2022 U.S. Dist. LEXIS 92386, at *3-4 (S.D.N.Y. May 23, 2022) ("It is well established that, when considering a Rule 29 motion, the Court is not entitled to determine the credibility of a witness, which is the province of the jury. The appropriate 'place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury.'")

Against the weight of this compelling, corroborated testimony, Torres' complains that the Government somehow tricked or confused the jury by not highlighting each woman's advertisement with sufficient detail motion. Dkt. # 386-1 (using terms like "breezed over" and "gave a fleeting reference" to their advertisements). First, that's simply not so. The Government asked each and every victim about their respective advertisements. Tr. 68:23 – 69:4; 145:20 – 146:20; 232:15 – 235:13; 287:6 – 288:8. Second, if that had been the case, Torres had every opportunity to explore the details of those ads on cross-examination (and, in fact did so). Tr. 104:3 – 119:10; 165:21 – 179:3; 255:21 – 264:21; 304:15 – 310:13.

But it's not just the testimony and documents in evidence that doom Torres' motion. So too does his own decision to take the stand where he admitted that:

10

- He knew each of the four victims were coming to New Jersey for prostitution.  Tr. 487:05-07.

- He knew Anna, Lindsey and Kate traveled to him from out of state.  *Id*. 486:21-487:01.

- These women would not have come to New Jersey, but for the promises of payment.  *See, e.g.*, Tr. 489:16-19; Tr. 460:21-23.

- And even though he would not admit knowing where Chelsea came from, the jury was shown the advertisement which said that she was on the "New York stage" (GX 500) and also saw her cell cite information, showing her travel from New York to New Jersey (GX 805).

Put bluntly, Torres' attempts to blame the victims throughout this trial failed before the jury and that argument is even more inadequate in connection with a Rule 29 motion.  *Smith*, 186 F.3d at 294 ("Defendants bear a heavy burden on a sufficiency challenge and cannot simply reargue their defense.").

The jury correctly found ample evidence to satisfy each of these elements. This Court should therefore deny Torres' Rule 29 motion for a judgment of acquittal.

### III.   TORRES IS NOT ENTITLED TO A NEW TRIAL.

Torres' request for a new trial pursuant to Federal Rule of Criminal Procedure 33 should also be denied.  Torres uses Rule 33 to attempt to re-litigate issues that this Court previously decided against him.  *See Bolden v. Southeastern Penn. Transp. Auth.*, 21 F.3d. 29, 31 (3d Cir. 1994) (stating "[t]he law of the case doctrine applies both to issues expressly decided by a court in prior rulings and to issues decided by necessary implication."). First, Torres argues that the evidence

11

that he assaulted and threatened the charged victims should not have been admitted. Second, he argues that the three text messages to uncharged victims, admitted under Rule 404(b), should similarly have been excluded from trial. According to Torres, the combined weight of these supposed errors results in the serious risk that a miscarriage of justice has occurred because he is an innocent person, wrongly convicted of a crime.

Not so. This Court carefully considered each of the evidentiary rulings to which Torres now points as error and correctly ruled the evidence was admissible. Torres' arguments to the contrary must fail.

### **Evidence of Torres' Assaults and Threats were Properly Admitted.**

As briefed extensively in August 2021, the evidence that Torres assaulted and/or threatened his victims was (1) admissible as intrinsic to the charged crimes; and (2) admissible under FRE 404(b) to show his intent and motive to commit those crimes.

Under *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010), evidence is intrinsic if: (1) it "'directly proves' the charged offense"; or (2) "uncharged acts performed contemporaneously with the charged crime . . . facilitate the commission of the crime." Here, that Torres engaged in violent sex acts with his victims directly proves his knowledge and intent: To intentionally persuade, induce and entice out-of-state sex workers in order to get them somewhere they are unfamiliar where he can force sex on them. *See Wilkerson v. United States*, 342 F.2d 807, 813 (8th Cir.

12

1965) ("[E]vidence of defendant's conduct immediately before, during and after the transportation from Little Rock to St. Louis was admissible as part and parcel of the entire transaction and as such indicative of his intent to transport the three women from Little Rock, Arkansas, to St. Louis, Missouri, in contravention of 18 U.S.C.A. § 2421"). Additionally, the assaults and threats were performed contemporaneously to the crimes, in that they aided Torres in finishing his intended act: Having sex with his victims. *See United States v. Williams*, 291 F.3d 1180 (9th Cir. 2002) (overruled on other grounds by *United States v. Gonzalez*, 506 F.3d 940 (9th Cir. 2007)) (in a Mann Act case, admitting "repetitive" testimony about the defendant beating his prostitute-victims as intrinsic and noting that while "the violent acts were not statutory elements of proof, the assaults were the means by which the defendant maintained the necessary control over his victims so as to carry out the crimes charged" and thus "were necessarily part of the transactions"); *United States v. Evans*, 285 F.3d 664, 670 (8th Cir. 2002) (finding "violent acts are relevant and probative of Mann Act violations because they were done to control and discipline prostitutes"). In fact, it would have been virtually impossible for the victims to explain the events in question without completing the story of what Torres subjected them to. *See United States v. Johnson*, 578 F. App'x 150, 156 (3d Cir. 2014) ("[B]ecause intrinsic evidence aids understanding by complet[ing] the story of the charged crime, it is considered part and parcel of the charged offense' and need not be subjected to Rule 404(b) review") (internal quotation marks

13

omitted).

Torres appears to argue that because his crimes were complete the moment the women crossed state lines, the assaults and threats were not intrinsic. Again, not so. By acting as he did, Torres pressured the women he cheated not to report him to the police because they were scared and they were engaged in an illegal enterprise. *United States v. Diaz*, No. 21-1709, 2022 WL 4298338, at *3 (3d Cir. Sept. 19, 2022) (holding that testimony regarding the destruction of evidence was not uncharged conduct, but rather, intrinsic evidence because "[b]y altering documents, [the defendant] was able to avoid detection and keep defrauding his clients").

In addition to being intrinsic, this evidence is, alternatively, admissible to show Torres' motive and intent under FRE 404(b). That Torres had sex with these women and used violence and threats to accomplish that goal is extremely probative of his motive and intent: That he intended to target out-of-state sex workers in order to get them somewhere unfamiliar and used coercive acts to complete the sex acts. *See United States v. Campbell*, 49 F.3d 1079, 1084 (5th Cir. 1995) (in Mann Act case, that the defendant "used force to intimidate the women and make them think twice before turning him over to the police . . . while prejudicial, was highly important to the prosecution in light of [the defendant's] defense that his relationship was entirely innocent").

Here too, Torres based much of his trial strategy on calling the women liars

14

and claiming that they willingly engaged in sex acts with him. To show Torres' intent, motive, and to refute this defense (which he advanced years prior to the trial), the Court properly permitted the Government to introduce such evidence.

And, as this Court held in connection with its Rule 403 an analysis, the highly probative value of this evidence far outweighed any prejudicial effect. *See* Tr. 522:09-17. Particularly when intent is involved and a defendant contests his knowledge or intent, evidence far more graphic than text messages soliciting sex has been held admissible under Rule 403 when it corroborates other evidence of intent. *United States v. Finley*, 726 F.3d 483, 492-93 (3d Cir. 2013) (upholding admission of child pornography videos where intent was disputed*); United States v. Escalante-Melgar*, 567 F. Supp.3d 485, 494 (D.N.J. 2021) (Rule 403 does not preclude the admission of relevant evidence simply because other evidence addresses the same issues).

Moreover, to further ensure against any prejudice, the Court provided a limiting instruction to which the parties agreed. *See* Jury Instructions at 23 ("You also heard testimony that the Defendant said and did certain things when he was with those women after they had arrived in New Jersey to meet him and the extent to which those women consented to all of the sexual activity he engaged in with them. You may consider this testimony only to decide whether the Defendant's motive or intent was for these women to travel in interstate or foreign commerce to engage in prostitution and that he knowingly persuaded, induced or enticed them to

do so.").

There was no risk that, based on these evidentiary rulings, Torres was wrongly convicted and there is no danger that a miscarriage of justice has occurred. *Silveus*, 542 F.3d at 1004-05. Far from establishing actual innocence – Torres took the stand and openly admitted to each and every element of the crimes charged. There has been no miscarriage of justice here.

## **Evidence of Three of Torres' Text Messages to Uncharged Victims were Properly Admitted.**

The Court also properly admitted three text messages in which Torres texted uncharged victims, offering them money to travel to New Jersey for sex. *See* GX 818, 821a and 822(a). This evidence was highly probative of Torres's intent—which Torres himself put at issue when he attempted to confuse the jury by claiming it was females' intent that mattered, not his. Thus, it was highly relevant that he had intended to solicit women to travel from out-of-state for prostitution in the past. *See United States v. Ratley*, 284 F.2d 553, 554 (2d Cir. 1960) ("[e]vidence of other similar crimes is admissible to show intent to commit the crime charged; it is particularly pertinent in Mann Act cases. . . . The testimony was most relevant here in view of defendant's attempt to make Janifer's trips to Montreal appear innocent." (internal citations omitted)); *See United States v. Drury*, 582 F.2d 1181, 1184-85 (8th Cir. 1978) (holding "[t]his court has expressly held that, in order to establish the intent required for a Mann Act violation, the prosecution may admit into evidence

16

testimony that the defendant had solicited girls on prior occasions."); *Neff v. United States*, 105 F.2d 688, 692 (8th Cir. 1939)).

The prejudicial impact of this evidence would have been extremely low even if Torres had not taken the stand and admitted that he frequented prostitutes. *See* Tr. 485:08-10. The jury would hardly be surprised to learn that on three additional occasions he reached out to women soliciting them for sex. Torres argues that the prices offered in those text messages were materially higher than those offered to the victims in this case. Not true. He offered Lindsey B. $10,000, Chelsea $12,500, Anna T. $11,000 – all for just one evening. He offered Katherine L. $20,000-$30,000 for a few times in one month. In the text messages presented at trial, Torres offered Dee $7,500 for 12 hours, *less* than what he offered any victim in this case. GX 818. Torres offered Ayla $50,000 and Nadja $30,000, but those offers were for 3 days and 2 days, respectively. Therefore, they were more akin to the multi-day arrangement he offered Kathryn L – and the prices were consistent with the proposed timeframes. Thus, there was minimal prejudicial impact from these messages.

On top of all that, the Government undertook efforts to sanitize these messages to further eliminate any possible prejudice. For instance, the full conversation with Ayla was 98 pages long and included Torres offering to pay for her schooling, telling her he would "make sure you reach all your dreams" and that he "would love to be [her] sugar daddy" to convince her to travel to see him. GX 821 (not admitted at trial). The Government removed all of these messages and

17

admitted a trimmed-down, 11-page exhibit at trial. GX 821a. Similarly, Torres's full conversation with Nadja was 140 pages long and included Torres asking her to "promise" she was coming and reassuring her that he "had daughters" and he therefore knew "how to treat a lady" in order to make her feel safe enough to get on a plane. And, once he found out she was religious, Torres told her: "I am sure god has put us together for me to help you." Rather than admit those messages, the Government admitted a significantly pared-down 14-page exhibit. GX 822a.

The jury also was clearly instructed as to how they should (and should not) use this evidence. *See* Jury Instructions at 22 ("You also saw three specific text messages which the Government purports the Defendant sent to women requesting that they travel to his location to engage in prostitution. This evidence of other acts was admitted only for a limited purpose. You may consider this evidence only for the purpose of deciding whether the Defendant had the state of mind, knowledge, or intent necessary to commit the crimes charged in the indictment. Do not consider this evidence for any other purpose"). Thus, this evidence was properly admitted and Torres' Rule 33 motion should be denied.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Torres' motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and for a new trial pursuant to Federal Rule of Criminal Procedure 33.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney
District of New Jersey

By: _____
EMMA SPIRO
SHAWN BARNES
Assistant U.S. Attorneys

Date:  November 6, 2023