<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

v.

JOSE TORRES,

              Defendant.

Case No. 2:20-cr-00418 (BRM)

**OPINION
(SEALED)**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Jose Torres's ("Defendant") renewed[1] Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"), or, in the alternative, Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). (ECF No. 386.) The United States of America (the "Government") filed an Opposition. (ECF No. 390.) Having reviewed the submissions filed in connection with Defendant's Rule 29 and Rule 33 motions (ECF No. 386) and having declined to hold oral argument, for the reasons set forth below and on the record during trial, and for good cause having been shown, Defendant's Rule 29 Motion for Judgment of Acquittal, or, in the alternative, Rule 33 Motion for a New Trial (ECF No. 386) is **DENIED**.

**I.    BACKGROUND**

The Court incorporates by reference the underlying facts set forth in the Court's July 8, 2022 Opinion. (ECF No. 162.) In the Second Superseding Indictment, Defendant was charged with

---

[1] The Court previously denied Defendant's Rule 29 Motion for Judgment of Acquittal made after the close of the Government's evidence during trial. (*See* ECF No. 384 (Trial Tr. Vol. IV) at 393–402.)

four counts[2] of knowingly persuading, inducing, and enticing an individual to travel in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2422(a).[3] (ECF No. 374.) Defendant's criminal jury trial commenced on October 3, 2023 and concluded on October 11, 2023. (*See* ECF Nos. 379, 380, 381, 382, 383, 384, 385.) The jury found Defendant guilty on all four counts in the Second Superseding Indictment. (*See* ECF Nos. 372, 373.) Defendant's criminal sentencing is currently scheduled for June 5, 2024.[4]

During trial, Defendant, through counsel, made a blanket Rule 29 application and moved for a judgment of acquittal following the close of the Government's evidence. (*See* ECF No. 384 at 393–94.) Following oral argument on this motion, the Court denied Defendant's Rule 29 motion made during trial. (*Id.* at 393–402.) On October 23, 2023, Defendant filed a renewed Rule 29 Motion for Judgment of Acquittal, or, in the alternative, a Rule 33 Motion for a New Trial. (ECF No. 386.) On November 6, 2023, the Government opposed Defendant's Rule 29 and Rule 33 motions. (ECF No. 390.)

---

[2] In the Second Superseding Indictment, Defendant was originally charged with six counts of knowingly persuading, inducing, and enticing an individual to travel in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2422(a), but the Government filed unopposed motions to dismiss two of those six counts, which motions the Court granted. (*See* ECF Nos. 71, 342, 351, 356, 359, 374.) Accordingly, the redacted Second Superseding Indictment reflects the remaining four counts. (ECF No. 374.)

[3] 18 U.S.C. § 2422(a) prohibits "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] any individual to travel in interstate or foreign commerce . . . to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so[.]" 18 U.S.C. § 2422(a). In this case, however, the Government filed an unopposed motion to strike the words "coercion" and "coerce" from all counts of the Second Superseding Indictment, which motion the Court granted. (ECF Nos. 357, 361.) Accordingly, the Court herein only refers to persuading, inducing, or enticing—not coercing—when referring to § 2422(a).

[4] In January 2024, Defendant submitted two near-duplicate letters to the Court containing, among other things, written requests to invoke his Sixth Amendment right to self-representation and proceed *pro se* at his upcoming criminal sentencing. (ECF Nos. 392, 393.) The Court construes these letters as letter motions, which remain pending before this Court.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 29(c)(1) provides "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). In evaluating Rule 29 motions, courts "consider whether the evidence, when viewed in a light most favorable to the government, supports the jury's verdict." *United States v. Fattah*, 914 F.3d 112, 182–83 (3d Cir. 2019) (citing *United States v. Dixon*, 658 F.2d 181, 188 (3d Cir. 1981)). "When the sufficiency of the evidence at trial is challenged, [courts] must view the evidence in the light most favorable to the government." *United States v. Anderson*, 108 F.3d 478, 480 (3d Cir. 1997) (citations omitted). Courts "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *Fattah*, 914 F.3d at 182–83 (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

"In conducting the sufficiency inquiry, [courts] do not view the government's evidence in isolation, but rather, in conjunction and as a whole." *Id.* at 134. "The court must determine 'whether all the pieces of evidence, taken together, make a strong enough case to let a jury find [the defendant] guilty beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Coleman*, 811 F.2d at 807). "In reviewing a jury verdict for sufficiency of the evidence, '[courts] determine whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Lore*, 430 F.3d 190, 203–04 (3d Cir. 2005) (quoting *United States v. Helbling*, 209 F.3d 226, 238 (3d Cir. 2000)). "A

finding of insufficiency should be confined to cases where the prosecution's failure is clear." *United States v. Ollie*, 624 F. App'x 807, 811 (3d Cir. 2015) (quoting *Brodie*, 403 F.3d at 133). Therefore, "[t]he burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Rivers*, No. 18-00577, 2019 WL 4565223, at *1 (D.N.J. Sept. 20, 2019) (quoting *Lore*, 430 F.3d at 203).

Federal Rule of Criminal Procedure 33(a), however, provides "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Nwokedi*, No. 15-00177, 2016 WL 7015626, at *4 (D.N.J. Dec. 1, 2016) (quoting Fed. R. Crim. P. 33(a)). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). But "even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *Id.* at 1004–05 (quoting *Johnson*, 302 F.3d at 150). Rule 33 motions for a new trial "are not favored and should be 'granted sparingly and only in exceptional cases.'" *Id.* at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)); *see also United States v. Lowell*, 490 F. Supp. 897, 904 (D.N.J. 1980), *aff'd*, 649 F.2d 950 (3d Cir. 1981) ("Motions under Rule 33 are addressed to the sound discretion of the trial court and are granted sparingly." (citations omitted)).

## III. DECISION

Defendant was charged with four counts of knowingly persuading, inducing, or enticing four women—Lindsey B. (Count 1), Katherine L. (Count 2), Chelsea L. (Count 3), and Anna T.

(Count 4)—to travel in interstate commerce for the purpose of engaging in prostitution, in violation of 18 U.S.C. § 2422(a), and was convicted on all four counts following a jury trial. (*See* ECF Nos. 372, 373, 374.) Defendant argues the Court should issue a judgment of acquittal pursuant to Rule 29 for insufficiency of the evidence, or, in the alternative, should order a new trial pursuant to Rule 33 based on improperly admitting evidence that was irrelevant to the elements of the charged offenses and/or was unduly prejudicial to Defendant under Federal Rules of Evidence 403 and 404(b). (ECF No. 386-1.) In opposition, the Government contends Defendant's Rule 29 and Rule 33 motions fail both as a matter of law and as a factual matter, and therefore should be denied. (ECF No. 390.) The Government asserts that (1) ample evidence, including Defendant's own testimony, supports the jury verdict and proves every element of the charged offenses beyond a reasonable doubt, and (2) the evidence Defendant complains was improperly admitted was probative of Defendant's intent and was both intrinsic and admissible under the applicable Federal Rules of Evidence; accordingly, the evidence was properly admitted, and any prejudicial effect to Defendant was outweighed by the probative value of this evidence under Federal Rule of Evidence 403. (*Id.*)

The Court first addresses Defendant's renewed Rule 29 Motion for a Judgment of Acquittal and then addresses Defendant's alternative Rule 33 Motion for a New Trial.

### A.    Defendant's Renewed Rule 29 Motion

Defendant argues the Court should issue a judgment of acquittal pursuant to Rule 29(c)(1) because "the jury ignored the nature of the four women's enticing" and instead "considered only [Defendant's] intentional responses to the[ir] advertisements." (ECF No. 386-1 at 1; *see also id.* at 1–5.) Defendant contends the women were the ones who enticed him, not the other way around, and therefore "the jury unreasonably concluded that the four women would not have travelled to

[Defendant] even if he had not offered more than their normal rate." (*Id.*)

Specifically, as to Lindsey B. (Count 1), Defendant argues the evidence showed: (1) Lindsey's Backpage advertisement "lured [Defendant] with descriptions such as 'stunning, 100 percent natural, 24-year Cali bombshell'" and had a "time limitation of 'Today only'"; (2) Lindsey stated her minimum overnight fee was $10,000 and Defendant "agreed to that and offered no higher 'reward'"; and (3) Lindsey's Backpage advertisement also "indicated that, despite her preference for New York, she would have traveled to Pennsylvania, Connecticut or somewhere else in New Jersey for the minimum overnight fee[.]" (*Id.* at 2.)

As to Katherine L. (Count 2), Defendant contends the evidence showed: Defendant's call to High Society[5] was transferred to Katherine; and Katherine testified the purpose of her Eros advertisement "was to 'persuade clients to hire' her, such as [Defendant]." (*Id.* at 2–3.) Defendant also contends "the jury was not able to determine whether $20,000, including High Society's 'cut' in the fee, was above her normal rates" because her ad was not available at trial. (*Id.* at 3.)

As to Chelsea L. (Count 3), Defendant asserts the evidence showed Chelsea's Eros advertisement stated she was "'a 23-year-old Eli, a Yale Grad . . . Admitted to Julliard, I play about 11 instruments . . . I am a moonlighter, a model, a dreamer as well as addictive and intoxicating,' many of them exaggerations or lies in order to induce [Defendant] to respond to the ad." (*Id.* at 3 (alterations in original).) Additionally, Defendant states the evidence also showed he only offered her "$400 more than what her hourly rate of $800 would have amounted to for a twelve-hour overnight stay." (*Id.* at 3–4.)

As to Anna T. (Count 4), Defendant argues the evidence showed Anna's Eros

---

[5] High Society is a Canadian escort agency and was Katherine's former employer who posted her advertisement to Eros. (*See* ECF No. 383 at 304.)

advertisement was posted in the New York section of Eros but was "universally available across the Internet" and could have been accessed from anywhere. (*Id.* at 4.) Defendant contends the Government confused the jury by emphasizing that advertisements on Eros "could contain a preferred 'section' such as New York" and that this "somehow provided a basis for [Defendant's] alleged enticement of the women over the New York-New Jersey state line." (*Id.*) Defendant asserts the evidence also showed Anna "was going to New Jersey to get paid for her ad whether it was for her usual rate of $4,000 for an overnight outcall or a larger sum for a more extensive date." (*Id.* at 5.) Therefore, Defendant submits the Court should issue a judgment of acquittal on all four counts. (*Id.* at 1–5.)

In opposition, the Government argues that sufficient evidence supports the jury's guilty verdict on all four counts. (ECF No. 390 at 6–11.) The Government contends that although Defendant argues the women enticed him through their advertisements for their services, the content of those advertisements, however provocative, does not matter for purposes of 18 U.S.C. § 2422(a); rather, "only [Defendant's] role in offering to make the[ir] trip to New Jersey worth their effort matters." (*Id.* at 2.) The Government also emphasizes that "even if a woman was predisposed to leave her home state or country and travel to New Jersey, that still would not preclude a jury from finding that [Defendant] persuaded, induced, or enticed her to do so"; and further, "whether the woman willingly traveled to engage in prostitution is irrelevant—her voluntary travel for that purpose is not a defense when, as here, acts of persuasion have been proven." (*Id.* at 6–7 (citations omitted).)

Further, the Government argues it proved every element of the charged offenses beyond a reasonable doubt. (*Id.* at 8–11.) The Government asserts each victim testified that she traveled in interstate commerce to engage in prostitution and that she did so "only because of the promises of

money by [Defendant]." (*Id.* at 8.) In response to Defendant's argument that the Government purportedly "somehow tricked or confused the jury by not highlighting each woman's advertisement with sufficient detail[,]" the Government states this is untrue because they asked each victim about their respective advertisements, and additionally, even if Defendant's argument was true, he had the opportunity to explore the details of those advertisements on cross-examination, and indeed did so. (*Id.* at 10 (citations omitted).)

Here, Defendant does not meet the high bar for a judgment of acquittal under Rule 29 as he has not shown the evidence was insufficient to sustain the jury verdict. To satisfy its burden of proof to show a violation of 18 U.S.C. § 2422(a), the Government had to prove beyond a reasonable doubt the following elements, as provided in the Jury Instructions:

> First: The defendant knowingly persuaded, induced, or enticed the woman in question to travel in interstate or foreign commerce.
> Second: [The woman] traveled in interstate or foreign commerce.
> Third: The defendant acted with the intent that she would engage in prostitution.

(*See* ECF No. 385 at 544–45); *see also* 3 Modern Federal Jury Instructions-Criminal ¶ 64.02, Instruction 64-6. The Government satisfied its burden of proof here with the evidence presented at trial, which was sufficient to show beyond a reasonable doubt that Defendant persuaded, induced, or enticed each woman—Lindsey B. (Count 1), Katherine L. (Count 2), Chelsea L. (Count 3), and Anna T. (Count 4)—to travel in interstate commerce to engage in prostitution, that each woman traveled in interstate commerce to engage in prostitution, and that Defendant acted with the intent that each woman would engage in prostitution. (*See generally* ECF Nos. 381 (Trial Tr. Vol. I), 382 (Trial Tr. Vol. II), 383 (Trial Tr. Vol. III), 384 (Trial Tr. Vol. IV), 385 (Trial Tr. Vol. V).)

For example, Lindsey B. (Count 1) testified that: (1) Defendant reached out to her in

response to her Backpage advertisement posted in the New York City section of Backpage; (2) she was located in New York at the time, and Defendant testified[6] that he knew she was located in New York at the time; (3) Defendant offered her $10,000 to come to New Jersey for prostitution[7]; (4) Defendant also offered to arrange a car service to bring her to New Jersey for prostitution; (5) she traveled to New Jersey to engage in prostitution; (6) she would not have traveled to New Jersey but for Defendant offering to pay her that money; and (7) Defendant testified that he knew the reason she was traveling to New Jersey was for prostitution. (*See* ECF No. 382 at 147–51; ECF No. 384 at 486–87.)

Similarly, Katherine L. (Count 2) testified that: (1) Defendant reached out to her through her former employer High Society in response to her Eros advertisement; (2) she was located in Canada at the time, and Defendant testified that he knew she was located in Canada at the time and that he knew High Society was a Canadian escort agency; (3) Defendant offered her $20,000 to $30,000 to come to New Jersey a couple of times per month for prostitution; (4) $20,000 to $30,000 was a significant amount of money for her at the time, and she had never made that amount of money previously; (5) Defendant also offered to book her a flight to come to New Jersey for

---

[6] Defendant chose to take the stand in his own defense and testified during trial. (*See generally* ECF No. 384 at 407–511.)

[7] As Defendant notes, Chelsea testified that she told Defendant her minimum rate for overnight was $10,000. (ECF No. 382 at 148, 174.) However, even if Defendant had offered to pay Chelsea her stated rate (rather than something more, or even if Defendant had offered her something less), such a fact would be irrelevant as it is not the amount of money offered that matters for purposes of 18 U.S.C. § 2422(a); rather, what matters for purposes of the statute is Defendant's intent to persuade, induce, or entice Chelsea to travel across state lines to engage in prostitution. *See United States v. Lee*, No. 15-30134, 2016 WL 4046967, at *17 (S.D. Ill. July 28, 2016) ("Given that [18 U.S.C. § 2422(a)] specifically prohibits enticing individuals to travel in interstate commerce for prostitution, the Court believes that ordinary people using common sense would understand that they cannot have a person travel from another state to have sex for money." (citations omitted)).

prostitution; (6) she had never previously agreed to travel to the United States to engage in prostitution; (7) she traveled to New Jersey to engage in prostitution; (8) she was in a poor financial situation at the time and would not have traveled to New Jersey but for Defendant offering her that amount of money; (9) Defendant testified he knew the reason she was traveling to New Jersey was for prostitution; and (10) Defendant testified that it was "[j]ust common sense" that he agreed to transfer $20,000 to her "because otherwise she wouldn't have came" [*sic*] to New Jersey. (*See* ECF No. 383 at 284–91; ECF No. 384 at 460, 486–87, 489–90.)

Likewise, Chelsea L. (Count 3) testified that: (1) Defendant reached out to her in response to her Eros advertisement, which indicated she was located in New York; (2) Defendant offered her $10,000 and offered to pay for a car service to bring her to New Jersey for prostitution; (3) $10,000 was double her overnight rate at the time; (4) Defendant later increased his offer to $12,500; (5) she traveled to New Jersey to engage in prostitution; (6) she was in a dire financial situation at the time and would not have traveled to New Jersey but for Defendant offering her that amount of money, which she said would have been "absolutely life-changing"; and (7) Defendant testified that he knew the reason she was traveling to New Jersey was for prostitution. (*See* ECF No. 383 at 231–40; ECF No. 384 at 487.)

Lastly, Anna T. (Count 4) testified that: (1) Defendant reached out to her in response to her Eros advertisement posted with the geographic location Manhattan, New York; (2) she was located in New York at the time, and Defendant testified that he knew she was in New York at the time; (3) Defendant offered her $11,000 and offered to pay for a car service to bring her to New Jersey for prostitution; (4) Defendant also offered to set her up with his friends if she came to New Jersey for prostitution; (5) $11,000 was more than double her overnight rate at the time; (6) she traveled to New Jersey to engage in prostitution; (7) she was living paycheck-to-paycheck at the time and

would not have traveled to New Jersey but for Defendant offering her that amount of money; (8) Defendant testified that he knew the reason she was traveling to New Jersey was for prostitution; and (9) Defendant testified that it was "just common sense" that she would not have come to New Jersey if he hadn't offered to pay her. (ECF No. 382 at 68–81, 85–86; ECF No. 384 at 486–87, 489.)

In addition to the aforementioned testimonial evidence, the jury also saw corroborating contemporaneous documentary evidence, including but not limited to communications between Defendant and the women; copies of certain of the women's advertisements; documents showing the women's travel to New Jersey and expenses for same; cell site records; hotel records; and bank records. *See, e.g.*, Gov't Exs. 100, 103, 200, 201, 500, 501b, 502, 601, 603, 703, 704, 705, 705c, 805, 851, 852, 853, 904.

When viewing the evidence in totality and in a light most favorable to the Government, as the Court must do for this Rule 29 motion (*see Brodie*, 403 F.3d at 134; *Anderson*, 108 F.3d at 480), it is apparent there was sufficient evidence in the record for a rational jury to convict Defendant of each of the four charges of violating 18 U.S.C. § 2422(a)—*i.e.*, knowingly persuading, inducing, or enticing an individual to travel in interstate commerce to engage in prostitution. The other selective evidence Defendant points to in his motion is not sufficient to show he is entitled to a judgment of acquittal.

Additionally, Defendant's argument that the women enticed him, not the other way around, is also unpersuasive. Section 2422(a) prohibits knowingly persuading, inducing, or enticing individuals to travel in interstate commerce to engage in prostitution, which is violated if those elements are satisfied, whether or not prostitution occurs and regardless of the individual's willingness to travel and/or engage in prostitution. Rather, under § 2422(a), "it is the *defendant's*

11

intent that forms the basis for his criminal liability, not the victims'." *United States v. Rashkovski*, 301 F.3d 1133, 1137 (9th Cir. 2002) (emphasis added). In other words, the focus is on Defendant's mental state, not the women's. Accordingly, Defendant's focus on the women's purported willingness to travel in interstate commerce and/or engage in prostitution is misguided because even if the women were generally willing to travel in interstate commerce and/or engage in prostitution in exchange for money, this does not matter for purposes of § 2422(a). Instead, what is relevant is that Defendant knowingly persuaded or induced or enticed these four women to travel interstate to New Jersey to engage in prostitution on the specific dates testified about during trial. *See United States v. Dhingra*, 371 F.3d 557, 567 (9th Cir. 2004), *as amended on denial of reh'g* (July 23, 2004) (noting defendant misconstrued the nature of liability under 18 U.S.C. § 2422(b) (which is nearly identical to § 2422(a) except that § 2242(b) involves an individual who is a minor): "In effect, [defendant] claims that entrapment by the victim ameliorates any inducement on his part. Again, this reading of the statute mistakenly changes the focus from the defendant to the victim. The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."); *Rashkovski*, 301 F.3d at 1136–37 (stating 18 U.S.C. § 2422(a) liability does not require a defendant "to have created out of whole cloth the women's desire to [travel interstate to engage in prostitution]; it merely requires that he have convinced or influenced [them] to actually undergo the journey, or made the possibility more appealing"); *Lee*, 2016 WL 4046967, at *17 (noting that while "[18 U.S.C. §] 2422(a) was originally enacted to combat forced prostitution, as opposed to simply patronizing a prostitute[,] . . . the statute can 'be read to apply to johns as well.'"; and stating that "[g]iven that the challenged clause specifically prohibits enticing individuals to travel in interstate commerce for prostitution, the Court believes that ordinary people using

common sense would understand that they cannot have a person travel from another state to have sex for money." (citations omitted)).

Therefore, Defendant's renewed Rule 29 Motion for a Judgment of Acquittal is **DENIED**.

### B.    Defendant's Rule 33 Motion[8]

In the alternative, Defendant argues the Court should order a new trial pursuant to Rule 33 for two main reasons. (ECF No. 386-1 at 5–12.) First, Defendant contends the Court should order a new trial because it erred in permitting the Government to admit evidence of bad acts— specifically, testimonial evidence of what occurred between Defendant and the four women after they crossed state lines, including evidence of sexual assault and violence against the women— which Defendant asserts was prejudicial to him, was irrelevant to the elements of the charged offenses, did not prove or facilitate any elements of the charged offenses, constituted other crimes, and could not be considered intrinsic evidence. (*Id.* at 5–9.) Defendant also asserts this error "unfairly deprived [him] of his due process rights under the Fifth Amendment" because this evidence was not subject to certain objections or a limiting instruction during trial based on the Court's pretrial rulings. (*Id.* at 9.)

Second, Defendant argues the Court should order a new trial because it erred in permitting the Government to admit certain text message evidence—specifically, certain text messages Defendant sent to uncharged victims—which Defendant contends was unfairly prejudicial, greatly outweighed any probative value, and was misleading to the jury under Federal Rule of Evidence

---

[8] Federal Rule of Criminal Procedure 33(b)(2) provides: "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Here, the jury found Defendant guilty on October 11, 2023. Defendant filed his Rule 33 Motion on October 23, 2023, which is within fourteen days after the jury verdict. Therefore, Defendant's Rule 33 Motion is timely.

403. (*Id.* at 9–12.) Defendant states these text messages to uncharged victims "were extremely disproportionate to what [Defendant] offered the charged victims, and therefore did not show motive relevant to this case." (*Id.* at 12.) Defendant also notes that the Court initially denied the Government's motion *in limine* to admit certain text messages to uncharged victims, based on Defendant conceding "the purpose of prostitution" and stating he would stipulate to this element, but later granted the Government's renewed request for same after getting clarification of some ambiguity regarding to what, specifically, Defendant was willing to stipulate. (*Id.* at 9–12.) Defendant also contends, "No limiting instruction could have overborne the impact of the huge amounts of money[9] offered by [Defendant] in the eyes of the jury with regard to the first element." (*Id.* at 12.) Accordingly, Defendant asserts, in the alternative, that the Court should grant him a

---

[9] Defendant argues the three text messages Defendant sent to uncharged victims were "extremely disproportionate" to what he offered the charged victims—that Government Exhibits 821 and 822, putting aside "the jurisdictional question of its relevance due to [Defendant] being in Massachusetts, indicated offers of $100,000, five times what [Defendant] offered Katherine L., eight times what he offered Chelsea L., nine times what he offered Anna T., and over ten times what he offered Lindsey B." (ECF No. 386-1 at 12 (citations omitted).) However, this argument somewhat misconstrues the evidence. Government Exhibits 818, 821a, and 822a and the related testimony in the trial transcripts reflect the three text messages Defendant sent to uncharged victims included the following: (1) a message showing Defendant offered someone named Dee, who was located in Brooklyn, New York, $7,500 for twelve hours (which is less than what Defendant offered any of the four charged victims in this case); (2) a message showing Defendant offered someone named Ayla, who was located in Sao Paulo, $50,000 for three days, and Defendant stating in a later message: "If you do anal and everything, I can do $100,000?" (which initial offer was similar to Defendant's offer of $20,000-to-$30,000 to Katherine, who was likewise located internationally, for two days; and Defendant later increasing the offer for Ayla was similar to how Defendant later increased the offer for Chelsea L. in an attempt to persuade or induce or entice her to travel in interstate commerce to engage in prostitution with him); and (3) a message showing Defendant offered someone named Nadja, who was located in Fort Lauderdale, Florida, $30,000 for two days, and Defendant stating in a later message: "So 35K for two days or 100[K] for six days" (again, similar to Defendant's offer to Katherine). (*See* ECF No. 382 at 191–206; Gov't Exs. 818, 821a, 822a.) Additionally, Defendant testified that in communicating with women regarding prostitution, he would "say whatever it takes. You want $1 billion, I'll give you $1 billion." (ECF No. 384 at 449.)

new trial. (*Id.*)

In opposition, the Government argues Defendant is not entitled to a new trial because (1) evidence of what occurred between Defendant and the women after they crossed state lines occurred contemporaneously with the charged offenses and facilitated his completion of those offenses—*i.e.*, knowingly persuading, inducing, or enticing four women to travel in interstate commerce to engage in prostitution—and was probative of Defendant's intent in convincing the women to travel to New Jersey, "making the evidence both intrinsic and admissible under Rule 404(b)"; and (2) the three text messages Defendant sent to other uncharged victims were admissible under Rule 404(b) and were also "highly probative of [Defendant's] intent, which he continually put at issue by trying to confuse the jury by claiming it was [the] females' intent that mattered, not his." (ECF No. 390 at 3, 11–18.[10]) Accordingly, the Government contends this evidence was properly admitted and its probative value outweighed any prejudicial effect. (*Id.*)

The Government also asserts that evidence that Defendant "had sex with these women and used violence and threats to accomplish that goal is extremely probative of his motive and intent: That he intended to target out-of-state sex workers in order to get them somewhere unfamiliar and used coercive acts to complete the sex acts." (*Id.* at 14 (citing *United States v. Campbell*, 49 F.3d 1079, 1084 (5th Cir. 1995)). The Government submits "[p]articularly when intent is involved and a defendant contests his knowledge or intent, evidence far more graphic than text messages soliciting sex has been held admissible under Rule 403 when it corroborates other evidence of

---

[10] The Government also states that to further eliminate any possible prejudice to Defendant, it significantly pared these text messages down from their original form and only admitted excerpted, targeted exhibits for the limited purpose of showing Defendant's intent to persuade, induce, or entice these four women to travel in interstate commerce to engage in prostitution with him. (ECF No. 390 at 17–18.)

intent"; and in any event, the Court issued appropriate limiting instructions for this evidence. (*Id.*
at 15 (first citing *United States v. Finley*, 726 F.3d 483, 492–93 (3d Cir. 2013); and then citing
*United States v. Escalante-Melgar*, 567 F. Supp. 3d 485, 494 (D.N.J. 2021)).)

Here, Defendant has not shown he is entitled to a new trial under Rule 33, which motions
are "granted sparingly and only in exceptional cases." *Silveus*, 542 F.3d at 1005 (quoting *Derricks*,
810 F.2d at 55). After carefully weighing the potential prejudice to Defendant against the probative
value of this evidence under Rule 403, the Court properly permitted the Government to admit
evidence regarding what occurred between Defendant and the four women after they traveled in
interstate commerce, which was relevant and intrinsic to the charged offenses and was probative
of Defendant's intent and motive to persuade or induce or entice the women travel in interstate
commerce to where he was located so he could exercise a greater degree of control over them and
facilitate completion of the charged offenses—*i.e.*, prostitution. *See United States v. Johnson*, 578
F. App'x 150, 156 (3d Cir. 2014) ("[B]ecause intrinsic evidence 'aids understanding by
"complet[ing] the story"' of the charged crime, it is considered 'part and parcel of the charged
offense' and need not be subjected to Rule 404(b) review" (alteration in original)); *United States
v. Evans*, 285 F.3d 664, 670 (8th Cir. 2002) (finding no abuse of discretion where district court
admitted evidence of defendant's violent treatment of sex workers, which it found were "relevant
and probative of Mann Act violations because they were done to control and discipline [the sex
workers]"); *United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir. 2002) (overruled on other
grounds by *United States v. Gonzalez*, 506 F.3d 940 (9th Cir. 2007)) (finding district court did not
abuse its discretion in admitting "'repetitive' testimony about [defendant's] beating the victims[,]"
noting "[t]he beatings were an integral part of the transactions that constituted the crimes charged"
and that while "the violent acts were not statutory elements of proof, the assaults were the means

by which [d]efendant maintained the necessary control over his victims so as to carry out the crimes charged" and that "[i]n the circumstances, the assaults were necessarily part of the transactions and therefore were inextricably intertwined" and "also allowed the government to present a coherent and comprehensible story about what took place" (citations omitted)).

Further, to minimize any potential prejudice to Defendant, the Court gave an appropriate limiting instruction to the jury for this evidence regarding what occurred between Defendant and each of the four women (*see* ECF No. 385 at 548–49), notwithstanding Defendant's argument to the contrary that this evidence was not restricted by any limiting jury instruction (*see* ECF No. 386-1 at 9). The Court provided the jury the following limiting instruction:

> You also have heard testimony that the [D]efendant said and did certain things when he was with these women after they had arrived in New Jersey to meet him and the extent to which those women consented to all of the sexual activity they engaged in with him. You may consider this testimony only to decide whether the [D]efendant's motive or intent was for these women to travel in interstate or foreign commerce to engage in prostitution and that he knowingly persuaded, induced, or enticed them to do so.

(ECF No. 385 at 548.[11])

Similarly, with respect to the three text messages Defendant sent to uncharged victims, the Court also properly permitted the Government to admit this evidence, which was both relevant and probative of Defendant's intent in persuading or inducing or enticing women to travel in interstate

---

[11] A prior version of this jury instruction read in relevant part: "You may consider this testimony only to decide whether the Defendant *wanted* those women to travel in interstate or foreign commerce to engage in prostitution and that he knowingly persuaded, induced or enticed them to do so." (*See* ECF No. 385 at 522–25 (emphasis added).) Following argument from the parties, the Court changed "*wanted*" to "*motive or intent*" in this instruction. (*See id.*) Defendant did not object to changing "*wanted*" to "*motive*" but objected to also using "*or intent*" in this instruction, which objection the Court noted but overruled. (*See id.*) Defendant did not otherwise object to this jury instruction. (*See id.*)

commerce to engage in prostitution. Additionally, the probative value of this evidence outweighed any potential prejudice to Defendant, particularly when he repeatedly made the element of his intent an issue during trial. *See United States v. Ratley*, 284 F.2d 553, 554 (2d Cir. 1960) ("Evidence of other similar crimes is admissible to show intent to commit the crime charged; it is particularly pertinent in Mann Act [18 U.S.C. § 2422] cases. . . . The testimony was most relevant here in view of defendant's attempt to make Janifer's trips to Montreal appear innocent." (citations omitted)); *United States v. Drury*, 582 F.2d 1181, 1184–85 (8th Cir. 1978) ("[I]n order to establish the intent required for a Mann Act [18 U.S.C. § 2422] violation, the prosecution may admit into evidence testimony that the defendant had solicited girls on prior occasions. . . . Testimony that [defendant] had employed prostitutes on prior occasions is relevant to his intent in employing prostitutes in the instant case." (citations omitted)).

Further, the Court also gave appropriate limiting instructions to the jury for these three text messages. (*See* ECF No. 382 at 206–07; ECF No. 385 at 547–48.) The Court provided the jury the following limiting instruction:

> You also saw three specific text messages which the [G]overnment purports the [D]efendant sent to women requesting that they travel to his location to engage in prostitution. This evidence of other acts was admitted only for a limited purpose. You may consider this evidence only for the purpose of deciding whether the [D]efendant had the state of mind, knowledge, or intent necessary to commit the crimes charged in the indictment. Do not consider this evidence for any other purpose.

(*Id.* at 547.[12]) Indeed, the Court provided this limiting instruction to the jury twice—both immediately after this evidence was shown to the jury (*see* ECF No. 382 at 206–07) and again during the jury charge before deliberations (*see* ECF No. 385 at 547–48). The Court trusts and

---

[12] Defendant did not object to this jury instruction.

presumes that the jury adhered to the Court's instruction as to how they should and should not consider this evidence. *See United States v. Franz*, 772 F.3d 134, 152 (3d Cir. 2014) ("Absent . . . extraordinary situations, [] we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions." (first alteration in original) (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985))); *id.* at 151–52 ("Regarding the curative instructions, 'the almost invariable assumption of the law [ is] that jurors follow their instructions.' Therefore, '[we] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.'" (alterations in original) (citations omitted)).

The Court acknowledges it initially denied the Government's motion *in limine* to admit certain text messages to uncharged victims, based on Defendant conceding "the purpose of prostitution" and stating he would stipulate to this element, but it later granted the Government's renewed motion to admit these text messages of uncharged victims after receiving clarification of some ambiguity regarding to what, specifically, Defendant was willing to stipulate. In so doing, the Court specified the Government's renewed motion to admit this evidence was being granted "for the limited purpose of showing Defendant's alleged intent with respect to the first element of the charged offenses in the Second Superseding Indictment—i.e., whether Defendant knowingly persuaded or induced or enticed or coerced the victims to travel in interstate or foreign commerce." (ECF No. 352 at 21; *see also id.* at 14–21; ECF No. 162 at 16–19.) Throughout trial, Defendant repeatedly contested the intent element, and this evidence was highly probative of his intent to intentionally persuade, induce, or entice the women to travel in interstate commerce to engage in prostitution with him.

19

Moreover, even if the Court believed the jury verdict was contrary to the weight of the evidence, which it does not, it could only order a new trial if it believed "there [wa]s a serious danger that a miscarriage of justice ha[d] occurred—that is, that an innocent person ha[d] been convicted." *See Silveus*, 542 F.3d at 1004–05 (citation omitted). The Court does not believe a miscarriage of justice has occurred here. As explained in Section III.A, there was sufficient evidence for a jury to find Defendant guilty of all four counts of violating 18 U.S.C. § 2422(a), and the Court finds no reason to disturb the jury's verdict and order a new trial.

Therefore, Defendant's Rule 33 Motion for a New Trial is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above and on the record during trial, Defendant's renewed Rule 29 Motion for Judgment of Acquittal, or, in the alternative, Rule 33 Motion for a New Trial (ECF No. 386) is **DENIED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  April 16, 2024