Jose Torres
Essex County Jail
354 Doremus Avenue
Newark, NJ 07105

**VIA REGULAR**

July 21, 2024

Hon. Brian R. Martinotti, U.S.D.J.
50 Walnut Street
Newark, NJ 07102

District Court case no.: 20-cr-418 (BRM)

# **MASSIVE AND ORGANIZED CORRUPTION WITH THE NJ FEDS**

Judge Martinotti,

Attached are select pages from one of the 42 motions I sent while I represented myself which all of the motions were stricken from the record after my *pro se* status was revoked. These pages illustrate the level of government and prosecutorial misconduct in my case.

There is something unique about the NJ Feds that is not present in other states …. **MASSIVE AND ORGANIZED CORRUPTION**. The NJ Feds will win at all cost without regard to human and constitutional rights. The NJ Feds have everyone in position and lined up so that they can ensure a win at all cost.

This level of corruption starts with federal law enforcement (i.e., the FBI and Domestic Homeland Security) who are making false arrests, federal prosecutors, including management, and the U.S. Attorney, Philip R. Sellinger, who currently runs the office. Everyone knows about it, but they all have each other's backs. It comes with the territory.

It is very sad to know that this occurs in this day in age. Everyone turns their eyes away from it.

All the Fed corruption is done to give the false impression to the public that justice is being done, all for the purpose of keeping and justifying their public jobs. And, the amount of lying is excessive and over the top. It's no longer about justice, it's about winning at all cost.

Respectfully Submitted and Wrongfully Convicted,

Jose O. Torres

1/16

#7
E2

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

February 4, 2023

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*PLAINTIFF*<br><br>v.<br><br>JOSE TORRES<br>*DEFENDANT* | Honorable Brian R. Martinotti<br><br>Case #: 20-CR-418 (BRM)<br><br>**CRIME-FRAUD EXCEPTION MOTION** |

OT 2/26/23    2/16

# TABLE OF CONTENTS

I. BACKGROUND ............................................................................................. 3
II. CRIME-FRAUD EXCEPTION LEGAL STANDARD ................................. 6
   (i) THE ATTORNEY-CLIENT WAS COMMITTING OR INTENDING TO COMMIT A CRIME OR FRAUD. .......................................................... 8
   (ii) THE ATTORNEY-CLIENT COMMUNICATIONS WERE IN FURTHERENCE OF THAT ALLEGED CRIME OR FRAUD ................... 8
III. CRIMES OR FRAUD COMMITTED .......................................................... 10
   HONEST SERVICES FRAUD: 18 U.S.C.S. 1346 ..................................... 10
   OBSTRUCTION OF JUSTICE: 18 U.S.C.S. 1519 .................................... 11
   OBSTRUCTION OF JUSTICE: 18 U.S.C.S. 1621 PERJURY ................. 12
   PERJURED STATEMENTS FROM AUSA EMMA SPIRO ABOUT TORRES ........ 13
IV. RELIEF REQUESTED .............................................................................. 277
   EXHIBIT A – GOVERNMENT'S FALSE NEWSPAPER ARTICLE REGARDING TORRES ......................................................................... 29
   EXHIBIT B – GOVERNMENT'S FALSE PRESS RELEASE POSTED 10/29/2020 FALSELY DEPICTING TORRES AS AN ELIZABETH, NJ PIMP WHO WOULD BEAT AND RAPE OUT-OF-STATE ESCORTS ........ 30
   EXHIBIT C – JOSE TORRES' PROFESSIONAL BIOGRAPHY ......................... 34
   EXHIBIT D – REVIEW POSTED ON WHOCALLSME.COM ON 5/28/2015 BY PROSTITUTE-1 LINDSEY B. (AKA MARIE SINCLAIR0) ........ 35

3/16

D.L 2/26/23

# I. BACKGROUND

<u>The Defendant moves the Court to obtain ALL attorney-client privileged and work-product communications regarding the "no conflict of interest" General Counsel's Letter of Opinion regarding AUSA Emma Spiro and the Torres case. Regarding this Opinion Letter would include all correspondence, emails, communications written and verbal between the United States Attorneys' Office "USAO" and Emma Spiro; Emma Spiro and Sabrina Comizzoli; AUSA Emma Spiro and/or USAO and the General Counsel's Office for the Executive Office of the U.S. Attorneys at the Department of Justice in Washington, D.C. ("GCO") in regard to Torres under the crime-fraud exception. Defendant requests all relevant documents and disclosures made to the GCO to and from all parties above in regard to what they were explained to obtain the Opinion.</u> Had Emma Spiro timely provided all the honest facts to the GCO upfront regarding her relationship with her former employer, Sher Tremonte LLP, their clients and the Torres prosecution, the GCO would have never authorized the issuance of such an Ethics Opinion Letter in advance of the case starting approving AUSA Emma Spiro to prosecute Torres.

Emma Spiro left Sher Tremonte on Friday, June 7, 2019 and began to work for the DOJ on Monday, June 24, 2019. Within less than 60 days of Emma Spiro's start date with the DOJ, AUSA Emma Spiro initiated a formal investigation and prosecution into Torres on August 22, 2019 with the assistance of her former Sher Tremonte employer. Specifically, AUSA Emma Spiro's former Sher Tremonte supervisor, Noam Biale, and former Sher Tremonte attorney colleague, Anna Maria Estevao, represented the prostitute clients at Sher Tremonte, alleged victims of Torres and provided them as


"referrals". Biale and Estevao represented the prostitute clients both during and after Emma Spiro's employ at Sher Tremonte.

The facts of this case show that, in order for the GCO to provide a "clean" Ethics Opinion Letter authorizing AUSA Emma Spiro to prosecute Torres, it required that AUSA Emma Spiro and/or the USAO provide false, misleading, incomplete, and/or perjured information to the GCO. Why? Because any plain reading of the applicable statutes rules, regulations, and orders involved require a reasonable person to affirm there is a conflict of interest. **In other words, AUSA Emma Spiro wrongly obtained the Ethics Opinion letter and then used the Ethics Opinion letter from the GCO to further conceal the very conflict of interest she is involved in. AUSA Emma Spiro has used this letter obtained on false premises to 1) engage in honest services fraud in violation of federal law, 2) allow AUSA Emma Spiro to engage in the destruction, alteration, or falsification of records in a federal investigation in violation of federal law, 3) commit perjury by repeatedly lying about Torres to the Court during Torres' federal proceedings to strongly prejudice the Torres case in violation of federal law and 4) tamper with the testimony of witnesses. All of these violations and the breach of federal laws by AUSA Emma Spiro would not have been possible to hide if in fact AUSA Emma Spiro had been truthful in her communications with the GCO in Washington, D.C. and had obtained an accurate Opinion Letter written based upon the true facts that have occurred, with the request for such Opinion Letter having been made and obtained before the Torres prosecution was instituted.**

Page 5 of 35

AUSA Emma Spiro concealed the true facts to the GCO about her previous work relationship with her former employer, Sher Tremonte LLP, because they had engaged the prostitute clients **prior** to Emma Spiro leaving Sher Tremonte. AUSA Emma Spiro hid her work relationship with her former Sher Tremonte supervisor, Noam Biale, and former attorney colleague, Anna Maria Estevao, from the GCO and Opinion creation process at DOJ. AUSA Emma Spiro's former supervisors represented these prostitute clients at the same time as Spiro's employ at Sher Tremonte within close physical proximity in its small office environment and her direct involvement helping her supervisors. This concealment confirms AUSA Emma Spiro has in fact breached her employment agreement, DOJ Policy, Executive Order 13490, 5 Code of Federal Regulations - 502(d)(1)-(6), 5 Code of Federal Regulations - 2635.101, and the New Jersey Rules of Professional Conduct 1.9(b)(1).

After Sher Tremonte realized they could not sue Torres for his personal illegal prostitution debts, Sher Tremonte referred their prostitute clients to AUSA Emma Spiro. Again, AUSA Emma Spiro personally worked on and/or had direct substantive knowledge of the prostitutes' cases **prior** to departing Sher Tremonte. The date of exactly when and who from Sher Tremonte called AUSA Emma Spiro to refer the cases over to the DOJ is not known and is subject to the Defendant's discovery. However, due to the short time period between when AUSA Emma Spiro began to work for the DOJ and when the Torres' investigation began, it was not possible for the GCO to have received proper disclosure and conducted a complete and thorough ethics investigation historically to provide an accurate, timely, and prior-approved Ethics Opinion before the investigation was started and assigned to AUSA Emma Spiro. Such a historical letter authorizing AUSA Emma Spiro to work on the prosecution of Torres prior to her assignment of the

case and/or the start of her investigation does not exist. Clearly, the attempt by AUSA Spiro to obtain the Opinion Letter only after Torres reported the conflict of interest breach is an after the fact attempt to hide the conflict AUSA Emma Spiro is a part of and "sweep it under the rug". Notably, again AUSA Spiro concealed the existence of her conflict of interest until it was discovered and reported by Torres approximately 18 months into the case, much after it was too late to cure the fruits of her tainted prosecution already in substantial and material progress.

## II. CRIME-FRAUD EXCEPTION LEGAL STANDARD

"To circumvent the attorney-client privilege and the work-product doctrine under the fraud-crime exception, the party seeking to overcome the privilege must make a prima facie showing that (1) <u>the client was committing or intending to commit a crime or fraud, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud</u>." **In re Grand Jury, 705 F.3d 133 (3rd Cir. 2012); In re Grand Jury Matter, 847 F.3d 157 (3rd Cir. 2017)**. "A prima facie showing requires presentation of evidence which, if believed by the fact finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." **In re Grand Jury Subpoena ABC, 696 Fed. Appx. 66 (3rd Cir. 2017)**.

For purposes of the crime-fraud exception to the attorney-client privilege, Torres does not have to show that the intended crime or fraud was accomplished, only that the lawyer's advice or other services were misused. Typically that can be shown by evidence of some activity following improper consultation, on the part of either the client or the lawyer, to advance the intended crime or fraud. **In re Grand Jury Investigation, 445**

F.3d 266 (3rd Cir. 2006); **Pallares v. Kohn (In re Chevron Corp.), 650 F.3d 276 (3rd Cir. 2011).**

"The crime-fraud exception applies even when an attorney is unaware that the client is engaged in or planning a crime." **In re Grand Jury Proceedings, 87 F.3d 377, 382 (9th Cir. 1996)**("It's therefore irrelevant, for purposes of determining whether the communication here were made 'in furtherance of'... criminal activity, that counsel may have been in the dark about the details of that activity.") **In re Sealed Case, 244 U.S. App. D.C. 11, 754 F.2d 395 (D.C. Cir. 1985).** "It is well settled that an attorney's ignorance of his client's misconduct will not shelter that client from the consequences of his wrongdoing." **In re Sealed Case, 244 U.S. App. D.C. 11, 754 F.2d 395, 402 (D.C. Cir. 1985).** "The crime-fraud exception may apply even if the attorney is completely innocent of any wrong doing." **Sheehan v. Mellon Bank, N.A., 1996 U.S. Dist. Lexis 6265** (District Court for the Eastern District of Pennsylvania).

In **United States v. Zolin**, 491, U.S. 554 (1989), "the Supreme Court held that district courts could conduct an in camera review of allegedly privileged communications that fall within the crime-fraud exception. 491 U.S. at 565. If explained that before doing so, the judge should require a showing of a factual basis adequate to support a good faith belief...that in camera review of the materials may reveal evidence to establish...that the crime-fraud exception applies. Id at 572 [**7]". See also **In re Chevron Corp., 633 F.3d 153** (3rd Cir. 2006).

Additionally, the crime must have been committed after the work-product was generated, or the work-product must have generated as part of an ongoing criminal endeavor. "The crime-fraud exception applies where legal advice gives direction for the

commission of future fraud or crime." **United States v. Weingold**, 69 Fed. Appx. 575 (3rd Cir. 2003). See also **In re Grand Jury Subpoena**, 223 F.3d 213 (3rd Cir. 2000).

## (i) THE ATTORNEY-CLIENT WAS COMMITTING OR INTENDING TO COMMIT A CRIME OR FRAUD

The evidence supports that AUSA Emma Spiro has committed 1) honest services fraud against the United States in violation of federal law due to her tainted conflict of interest and improper prosecution costing the United States Government likely millions; 2) perjury by repeatedly lying to the Court about Torres during Torres' federal proceedings in violation of federal law; 3) engaged in the destruction, alteration, and/or falsification of records and testimonies in a federal investigation in violation of federal law; and 4) conducted witness tampering.

## (ii) THE ATTORNEY-CLIENT COMMUNICATIONS WERE IN FURTHERANCE OF THAT ALLEGED CRIME OR FRAUD

The attorney-client privilege ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing but to future wrongdoing. The work product privilege is perverted if it is used to further illegal activities. AUSA Emma Spiro's after the fact attorney-client communications with the GCO and Government's Ethics Advisor, Sabrina G. Comizzoli, were in furtherance of her concealment of the conflict and witness tampering wrongdoings as the GCO was clearly provided with false and misleading information as no such positive opinion is possible. The evidence supports that AUSA Emma Spiro's attorney-client communications were not made with fully accurate, complete, and honest disclosures of the facts regarding her former employment

and personal and substantive past duties at Sher Tremonte. Therefore, they are subject to discovery under the crime-fraud exception doctrine. Committing crimes and frauds would not have been possible without misleading the GCO attorneys as to AUSA Emma Spiro's actual direct and personal knowledge of the prostitutes' cases and her personal substantial involvement and input into same while at Sher Tremonte. This is indicated for many reasons, including: 1) the latest DHS 302 reports are devoid of proofs of violence by Torres yet someone in the Government felt so personally concerned about the case, that immunity was given to the prostitutes to lie and insert alleged violence into their testimonies after their original 302 interviews; 2) since the 302s are absent violence, and reference only consensual acts, Spiro has to coach the escorts to add additional claims much after the contemporaneous event reports involved; 3) the Sher Tremonte organization is a physically small sized office with lawyers closely physically proximate to one another who know and get involved with each other's case; 4) AUSA Emma Spiro, due to the proximate work environment at Sher Tremonte had personal knowledge, input, access, and substantial participation into her direct supervisors, Noam Biale's, Justin Sher's, Michael Tremonte's, and Anna Estevao's cases as part of Spiro's duties; 5) AUSA Emma Spiro likely impersonated a prostitute on Saturday, June 1, 2019 via an anonymous tip that was sent to the FBI at 7:34 am EST from 32 6th Avenue, NYC, NY making false allegations of violence. The location were the anonymous FBI tip was sent from is within walking distance [~2.5 miles] from AUSA Emma Spiro's former 2019 NYC residence and within approximately 1.4 miles of Sher Tremonte; and 6) Emma Spiro spoke over the phone and/or met with the prostitutes at Sher Tremonte while employed there, therefore having personal knowledge of the prostitutes' cases.

Emma Spiro worked directly for Noam Biale and with Maria Estevao, the prostitutes' attorneys of record.

# III. CRIMES OR FRAUD COMMITTED

## HONEST SERVICES FRAUD: 18 U.S.C.S. 1346

AUSA Emma Spiro has defrauded the United States of substantial monies in her salary, benefits, and misuse of the marshalling of likely millions of dollars in Government resources in a tainted and false prosecution of Torres. Her concealed - but now obvious conflict of interest - has driven the misuse of United States Federal Government Resources and honest services fraud.

"For purposes of an honest services fraud claim, an official's intentional violation of duty to disclose provides the requisite deceit. The defendant's intent is demonstrated by his failure to disclose his conflict of interest although he was required to do so." **United States v. Gordon, 183 Fed. Appx. 202** (3rd Cir. 2006).

If a public official has a duty to disclose information pertaining to a conflict of interest under state and local law, his failure to do so constitutes honest services fraud." **United States v. Gordon, 183 Fed. Appx. 202** (3rd Cir. 2006). See also **United States v. Carbo, 572 F.3d 112** (3rd Cir. 2009).

"At least in some cases, however, courts have convicted solely on the basis of the defendant's intentional breach of a duty to disclose, without any allegation or evidence

of bribery or other misuse of office." United States v. Welcht, 2007 U.S. Dist. Lexis 79142. See **United States v. Bush, 522 F.2d 641, 646** (7th Cir. 1975).

"One reason why federal and state law mandates disclosure of conflicts of interest, however, is that it is often difficult or impossible to know for sure whether a public official has acted on a conflict of interest." **United States v. Panerella, 277 F.3d 678** (3rd Cir. 2001).

## OBSTRUCTION OF JUSTICE: 18 U.S.C.S. 1519
Destruction, alteration, or falsification of records in federal investigations and bankruptcy

Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States of any case filed under title 11, or in relation to or contemplation of any such matters or case, shall be fined under this title, imprisoned not more than 20 years, or both."

In order to prove a violation of 1519, the Government must show that the Defendant (1) knowingly committed an enumerated act in the statute, such as destroying or concealing, (2) towards "any record, document, or tangible object", (3) with intent to obstruct actual or contemplated investigation by United States of matter within its jurisdiction. **United States v. Katakis**, 800 F.3d 1017, 2015 App. Lexis 15334 (9th Cir. 2015).

AUSA Emma Spiro is in violation of 18 U.S.C.S. 1519 because AUSA Spiro manufactured alleged Victim-1, Victim-2, Victim-3 and Victim-6' violence or sexual assault statements in the Torres case record, attempted to cover up a significant conflict of interest between AUSA Emma Spiro, the United States Government she represents, the prostitutes, the Sher Tremonte attorneys, Noam Biale, AUSA Emma Spiro's former supervisor from Sher Tremonte and Anna Estevao. AUSA Emma Spiro manufactured alleged victims' violence or sexual assault statements and alleged testimonies and communicated them to the Court with the intent to impede, obstruct, and falsely influence the investigation of Torres, as well as tamper with witnesses. AUSA Emma Spiro attempted to cover the manufactured and alleged statements by concealing her conflict of interest, obtaining an untimely after the fact GCO Opinion Letter on false premises, and then using her relationship with Sher Tremonte to coerce false testimony not found in their clients DHS/FBI 302s and tamper with the witnesses and/or the Sher Tremonte prostitutes involved.

AUSA Emma Spiro committed numerous acts prohibited in the obstruction of justice statute such as concealing, "towards" government records and documents with the intent to obstruct an actual federal investigation or proceeding.

## OBSTRUCTION OF JUSTICE: 18 U.S.C.S. 1621 PERJURY
Whoever:

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and

contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or outside of the United States.

In order to prove perjury, there must be proof that a person (1) willfully, (2) made a false statement, (3) under oath, (4) before a tribunal or officer, and (5) about a material matter.

AUSA Emma Spiro is in violation of 18 U.S.C.S. 1621 because AUSA Emma Spiro took an oath and did not testify, declare, and certify truthfully in front of Magistrate Judge Kiel and District Judge Martinotti. Below is a list of lies told by AUSA Emma Spiro regarding Torres - the Defendant.

### PERJURED STATEMENTS FROM AUSA EMMA SPIRO ABOUT TORRES

1. **AUSA Emma Spiro <u>lied</u> to Judge Martinotti when AUSA Emma Spiro stated "Torres beat prostitutes". No prostitute has ever accused Torres of beating them.** In Torres' August 2020 bail hearing with Judge Martinotti, AUSA Emma

# EXHIBIT A
## GOVERNMENT'S FALSE NEWSPAPER ARTICLE REGARDING TORRES

**FEDERAL COURT**

## Man lured prostitutes to N.J., then raped them and refused to pay them, feds say

A man enticed prostitutes from Canada and New York to travel to New Jersey for work and then refused to pay and sometimes sexually assaulted them, authorities said.

Jose Torres, 42, is charged with two counts of coercion and enticement, the U.S. Attorney's Office for New Jersey said. Torres, a New Jersey resident, made a first appearance in federal court in Boston on Tuesday following his arrest there on Friday.

Torres "persuaded, induced and enticed commercial sex workers" to travel to places in and around Middlesex County between May 2015 and last October to engage in prostitution by promising them large payments, officials said. When the prostitutes asked to be paid, he got aggressive, often assaulting and raping them, officials said. Prosecutors didn't provide a hometown for Torres.

Each charge carries a maximum 20-year penalty in federal prison. Torres' attorney Joseph B. Simons couldn't immediately be reached for comment. *Jeff Goldman*

*FBI request*

- Wanted By The FBI
- Community Outreach
- About

**FBI Newark**
Public Affairs Specialists Patty Hartman and Doreen Holder
(973) 792-3020

August 14, 2020

**Seeking Victims in the Jose Ovidio Torres Investigation**

The FBI, in coordination with the Department of Homeland Security, is asking for the public's assistance to identify potential victims of an alleged sexual predator who hired sex workers and physically raped, assaulted, terrorized, and/or choked the unsuspected parties.

Jose Torres, a 43-year-old, is currently in federal custody and charged with four counts of coercion and enticement in the United States District Court for the District of New Jersey. Torres has travelled frequently throughout the years and is suspected to have committed these offenses throughout the country, to include New Jersey, Massachusetts, New Hampshire, New York, South Carolina, and California. Torres has been preying on sex workers for over 10 years and is believed to have numerous victims. Torres would locate his victims by utilizing various sex worker websites, including EROS, Erotic Monkey, Tryst, Backpage, etc. From there, he would entice them to meet by offering large sums of money and groom his victims towards engaging in sex trafficking activities at his direction or command. Most of his meetings would require the sex worker to travel interstate, many times at their own expense.

If you believe you may have been victimized by Jose Torres, or he has solicited your services, please email _____. Your response is voluntary but would be useful in the federal investigation to identify you as a potential victim. Based on the response provided, you may be contacted by the FBI and asked to provide additional information.

The FBI is legally mandated to identify victims of federal crimes that it investigates and provide these victims with information, assistance services, and resources.

16/16

O.1 2/25/23

Jose Torres
ECCF
354 Doremus Ave
Newark, NJ 07105



DVD P&DC AFSM #2
KEARNY NJ 070    PM
WED 24 JUL 2024

Court Clerk
50 Walnut Street
Newark, NJ 07102