Jose Torres
Essex County Jail
354 Doremus Avenue
Newark, NJ 07105

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2024 JUL 30 P 10:48

**VIA REGULAR**

July 23, 2024

Hon. Brian R. Martinotti, U.S.D.J.
50 Walnut Street
Newark, NJ 07102

District Court case no.: 20-cr-418 (BRM)

# More Evidence Regarding Government Corruption and Prosecutorial Misconduct

Judge Martinotti,

No action needed on this submission, just placing it on the record.

Attached is another motion that was submitted to Court while I represented myself which was stricken from the record after my *pro se* status was *unconstitutionally* revoked. This motion further illustrates government and prosecutorial misconduct by misapplying case law to my case with the goal to win at all cost.

In my 46 years, I have never heard or seen a case with massive and organized corruption from all ends like my case.

My family who was in the courtroom and who have followed this case closely for the past 4+ years, are all too familiar with Government and Prosecutorial Misconduct stemming from the NJ Feds. They saw it live when I was sentenced to 25 years and 11 months for something I did not think of doing much less do.

Respectfully Submitted and Wrongfully Convicted,

Jose O. Torres

Cc: Bruce Keller – served via the District Court's electronic docketing system

F5

Jose Torres
J-2020-03855
Essex County Jail
354 Doremus Ave.
Newark, NJ 07105

August 20, 2022

Honorable Brian R. Martinotti
M.L.K. Building and Courthouse
50 Walnut Street
Newark, NJ 07102

Criminal No. 20-418 (BRM)

Re: Motion for Reconsideration Related to the Court's Opinion and Order Addressing Motions in Limine

Dear Honorable Martinotti,

Attached is a Motion for Reconsideration related to the Court's Opinion and Order, at document # _______. The Motion for Reconsideration addresses the following four items:

1) Alleged violence is not intrinsic and is not part of the transaction as per *Green*;
2) Inclusion of the prostitutes' advertisements used to entice the defendant or other "john" is relevant and use of 2422(b) case law is not applicable as persuasion, inducement, and enticement are irrelevant when it involves minors; and
3) There is overriding case law regarding the full use of the prostitutes' names and even the Court / Judge Martinotti's case law states that it only applies to those who are no longer prostitutes and therefore addresses only their "former" or "past lives", and;
4) Evidence defendant utilized and frequently switched telephones with the charged victims is false.

As the Court is well aware, Courts typically evaluate reconsideration motions in criminal cases "under the standard applied to civil motions for reconsideration". Under these standards, reconsideration is appropriate if the Court:

1. Is presented with newly discovered evidence;
2. Committed clear error on the initial decision and was manifestly unjust; or
3. If there is an intervening change in controlling law

Of the items presented above, item #2 applies to Torres because the law is very clear on these issues and the District Court committed clear error in their initial decision and it is manifestly unjust.

O.I 2/24/23 2/39

F5

Table of Contents

I. Alleged violence is not intrinsic and is not part of the transaction ........ 2

II. Inclusion of the prostitutes' advertisements used to entice the defendant or other "johns" is relevant and use of 2422(b) cases is not applicable as persuasion, inducement, and enticement are irrelevant ........ 4

III. There is overriding case law regarding the full use of the prostitutes' names and even the district court's (Judge Martinotti's) case law suggests that it only applies to their "former" or "past lives" ........ 5

IV. Evidence Defendant Utilized and Frequently Switched Telephones with the Charges Victims is False ........ 7

V. Relief Requested from the Court ........ 7

## I. Alleged violence is not intrinsic and is not part of the transaction

On page 17 and 18 of the Opinion, the Court stated:

> "While Section 2422(a) does not require the Government to demonstrate Defendant assaulted or threatened the victims after he enticed them to travel across state lines, the conduct was part of the transaction, is not evidence of some "other" crime, and facilitated the commission of the charged crime". See United States v. Williams, 291 F.3d 1180, 1189 (9th Cir. 2002)...(admitting testimony regarding the defendant's violent assaults on his prostitution victims because "[t] the beatings were an integral part of the transactions that constituted the crimes charged". Accordingly, the evidence satisfies both elements of Green and is admissible as intrinsic evidence."

In ***United States v. Williams***, 974 F.3d 320 (3d Circuit 2020) at *357, the Third Circuit Court of Appeals stated, "intrinsic evidence need not be analyzed under Rule 404(b) because it is not "[e]vidence of any crime, wrong, or other act," Fed. R. Evid. 404(b) (1), but rather "part and parcel of the charged offense," ***United States v. Green***, 617 F.3d 233, 245 (3d Cir. 2010). We have, however, limited "the 'intrinsic' label [to] two narrow categories of evidence": (1) where the uncharged conduct "directly proves the charged offense"; <u>and</u> (2) where it is "performed contemporaneously with the charged crime" <u>and</u> "facilitate[s] the commission of the charged crime." Id. at 248-49.

<u>First</u>, the alleged sexual assaults, the uncharged conduct, does not "directly prove the charged offense" as the alleged violence at the rendezvous location does not prove

E.J. 2/26/23 3/39

F5

enticement to cross state lines for prostitution. Next, it must also be "performed contemporaneously with the charged crime" and "facilitate the commission of the charged crime". Again, the alleged violence at the rendezvous location <u>does not facilitate enticement to cross state lines for prostitution</u>, as is required under <u>*Green*</u>.

The evidence does not satisfy both elements of *Green* contrary to the Court's ruling. The alleged sexual assaults should not be admissible as intrinsic evidence and the Court should not have granted the Government's motion to admit evidence that Defendant assaulted and threatened the charged victims.

<u>Next</u>, the district court / Judge Martinotti used ***United States v. Williams***, 291 F.3d 1180, 1189 (9th Cir. 2002) who was charged with 2422(a), 2423 (engaging minors in prostitution), and 1952 (interstate travel in aid of racketeering) to justify the Court's legal arguments and permit allegations of sexual assaults in Torres' trial. The additional charges, specifically the racketeering, required the inclusion of the violence by Williams.

*Williams*, unlike Torres, was involved in a large scale interstate racketeering prostitution conspiracy and beat prostitutes to induce them to perform prostitution activities. Unlike Williams, Torres was charged with 2422(a) only and no other alleged crimes.

*Williams* used weapons and beatings, including beatings with a gun to induce the victims to perform prostitution activities, including even putting the gun in one of the victim's mouth. In other words, the gun/violence was intrinsic since it was used to entice, persuade or induce the prostitute to cross state lines for the purpose of prostitution. The use of *Williams* is completely erroneous. At no time is it even alleged that violence was used by Torres to induce a prostitute to cross state lines for the purpose of prostitution nor could the Government argue this point.

<u>Lastly</u>, and just to reiterate the original argument, the charged offense was complete as soon as the women crossed state lines for the purposes of prostitution. Although the Court has discretion to allow acts of prostitution to be introduced at trial, acts of prostitution are just further evidence that the rendezvous was for the purpose of prostitution. The law is clear on this point and there is no dispute on this issue of law. However, the district court seemed to ignore this point. Based on the criteria outlined in **United States v. Green and United States v. Williams**, admitting evidence that Defendant assaulted and threatened the charge victims should be denied.

OJ 2/26/23

**II. Inclusion of the prostitutes' advertisements used to entice the defendant or other "johns" is relevant and use of 2422(b) cases is not applicable as persuasion, inducement, and enticement are irrelevant**

First, the defendant respectfully requests that inclusion of the prostitutes' advertisements, including the prostitutes' rates and pictures used to entice "johns" should be admissible at trial as this evidence is highly relevant to persuasion, inducement, and enticement issue. Any removal of this would eliminate Torres' due process right to present a defense in his case. The prostitutes' advertisement behavior and how they go about doing their business is relevant to the persuasion, inducement, and enticement issue. The jury should be permitted to know of and see the prostitutes' advertisements, including the prostitutes' rates and pictures as the jury will be asked to determine if Torres enticed the prostitutes or not.

Second, use of 2422(b) cases is not applicable as persuasion, inducement, and enticement are irrelevant for the following reasons:

Congress added 2422(b) in the Telecommunications Act of 1996 (Pub. L. No. 104-104, section 508, 110 stat. 56) to specifically prohibit enticement of children.

According to ***United States v. Fugit***, 703 F.3d 248 (4th Circuit 2012) stated, "2422(b) concerns only conduct that is criminally prohibited" and offering or agreeing by an adult to have sex with a minor is exactly that.

The 3rd Circuit already ruled that "A minor cannot consent to being sexually exploited." ***United States v. Remoi***, 404 F.3d 789, 795 (3rd Cir. 2005). In Remoi, the 3rd Circuit stated, "The underlying legal theory, of course, is that because a minor lacks legal capacity to consent to sexual relations, any such relations are "forcible." The Court further stated, "A minor... is considered incapable of giving permission or consent under the law."

See also ***United States v. Abad***, 350 F.3d 793, 798 (8th Cir. 2003).

Basically, anything and everything to do with an adult seeking sexual acts from a child is a crime, including "offering or agreeing" to pay for sexual activities or for related travel, and therefore the Government's and court's use of 2242(b) cases are not applicable when assessing persuade, induce, and entice.

**The Defendant respectfully requests that the prostitutes' advertisements that are still prostituting themselves should be permitted to be admitted at trial. And, the court should reconsider not using minor case law 2422(b) as persuasion, inducement, and enticement are not relevant when comparing a 2422(b) case to a 2422(a) case.**

O.J. 2/21/23 5/39

F5

**III. There is overriding case law regarding the full use of the prostitutes' names and even the district court's (Judge Martinotti's) case law suggests that it only applies to their "former" or "past lives"**

The Defendant respectfully takes issue with the district court's ruling on hiding the prostitutes' full names and only allowing them to reveal the first name and first letter of their last name. There are multiple issues of dispute with this ruling.

First, the Court cites cases, including Torres' own case, and no 3rd Circuit cases to support their opinion. See ***United States v. Torres***, No. 20-00418, 2020 U.S. Dist. Lexis 139397, at *17 (D.N.J. August. 4, 2020; see also ***United States v. Paris***, No. 06-00064, 2007 U.S. Dist. Lexis 39276, at *2 (D. Conn. May 18, 2007) *allowing former sex workers* to testify using their first names and last initials to protect them from the adverse consequences of information about their ***past lives*** being disclosed publicly and because the protection of these individuals' identities does not impede the public's ability to stay informed; ***United States v. Thompson***, 178 F. Supp. 3d 86, 96 (W.D.N.Y. 2016) ("Given the anticipated explicit and sensitive nature of the evidence in this case, the Government has a compelling interest in protecting the victims from likely adverse personal, professional and psychological consequences of linking their identities to ***their past lives as sex workers***.")

**Second**, four out of the six prostitutes are still working as prostitutes: Count 1, Lindsey B.; Count 2, Katherine L.; Count 3, Chelsea L.; and Count 6: Anna T. These are all of the prostitutes that are represented by Sher Tremonte, A.U.S.A Emma S. Spiro's former employer. So how is the government or the court protecting prostitutes from likely adverse personal, professional and psychological consequences of linking the prostitutes identities to their past lives as the four sex workers mentioned above are still working as prostitutes?

Third, the use of ***United States v. Paris*** has no relevancy as this case deals with sex trafficking, operating a prostitution business, and forcing adults and minors to work as prostitutes. Using a pseudonym or not revealing last names in ***Paris*** would be well justified. However, in Torres' case, Torres has not been charged with sex trafficking, operating a business or forcing minors or adults to work as prostitutes. Therefore, the ***Paris*** case is irrelevant and does not bolster any argument by the Government why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial.

**Fourth**, case law supports that when adult prostitutes are involved, their last names are revealed such as in the cases the Government cited at document #111 in their Motion in Limine: ***Wilkerson v. United States***, 342 F.2d 807 (8th Cir. 1965) and ***United States v. Evans***, 285 F.3d 664, 670 (8th Cir. 2002), the adult prostitutes' full names were revealed at trial: Beverly Mae Wilson, Mary Jean Stone, Earnestine Brady; and Deanna Kirkman, Julia Wilson, Tanya Rose May, and Brenda Sharper, respectively. Additional

O.f 2/26/23

6/39

F5

cases cited by the Government dealing with adult prostitutes where the prostitutes' full names were revealed are ***United States v. Ratley***, 284 F.2d 553 (2nd Cir. 1960); ***United States v. Drury***, 586 F.2d 1181 (8th Cir. 1978); and ***Neff v. United States*** (8th Cir. 1939).

Fifth, in ***Smith v. Illinois***, 390 U.S. 129 (1968), in the Opinion, the Justices stated, "when credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." In Torres' case, credibility is in issue and therefore the witnesses' full names should be revealed at trial.

A well-recognized exception to *Smith* exists where revealing a witness' "name, address, or place of employment...would place the witness in danger." In the instant case, the defendant has not placed the prostitutes in danger. The record also does not contain anything to suggest that the prostitutes have been threatened or harmed. The facts are actually completely the opposite. Four of the six prostitutes are still working as prostitutes without any interference by anyone.

The particularized need is that there are real costs to the prostitutes testifying by first name alone. There is the risk that the jury will understand the reasons why the prostitutes are testifying by first name and first letter of their last name and wrongfully suggest to the jury that the prostitutes fear the risk of reprisal from the defendant.

There is also the risk to the integrity of the trial itself. Without being able to mention the prostitutes' full names, including last names, during voire dire, there is no assurance that a member of the jury will not be seated who knows or is familiar with the prostitutes. And there is reason to question whether the protection that any order keeping the prostitutes' full names secret at trial would, in the long run, be anything other than illusory.

If the prostitutes do not testify using their last names, Torres would be prejudiced "from a denial of the opportunity to place the witness in his (or her) proper setting and put the weight of his (or her) testimony and his (or her) credibility to a test, without which the jury cannot fairly appraise them." ***United States v. Fontana***, 231 F.2d 807 (3rd Cir. 1956).

On page 22 of the court's / Judge Martinotti's opinion, the court mentions "past lives" and "former sex worker". As discussed above, at least four of the six women are not former sex workers and this is not their past lives, but their current. The out of circuit case the district court cited further suggested that disallowing use of their full names protects victims related to their current profession; however, if their current profession is prostitution, then the Court's case law does not apply.



F5

The defendant respectfully requests that all of the six sex workers reveal their first and last names at trial, or at a minimum, that the four sex workers that are still working as prostitutes reveal their full names at trial.

## IV. Evidence Defendant Utilized and Frequently Switched Telephones with the Charges Victims is False

The Government states "he switched numbers on the telephone he used to communicate with the charged victims and such evidence is admissible under Rule 404(b) to show his intent to defraud the victim. (ECF No. 113 at 6)."

With the six prostitutes, Torres used his personal number and only telephone number with five of the six prostitutes. In 2015, Torres used his personal number and only number he had 732-310-0630 to communicate with Count 1, Lindsey B.; Count 4, Lindsay R.; Count 5, Anant Saini; and Count 6, Anna T. In 2018, Torres used his personal number and only number he had 917-861-9807 to communicate with Count 3, Chelsea L. With these five counts, Torres only had one phone, his personal cell phone. Contrary to what the Government states, there was no secondary telephone used by Torres with these five counts. Once again, the Government is not being truthful with this Court and the public. In 2019 Torres had two phones. On October 19, 2019 Torres used his secondary phone 917-535-2298 to call Count 2, Katherine L.

Per the information provided above, the Government's motion to admit evidence Defendant utilized and frequently switched telephones to communicate with the charged victims should be denied as the allegations by the Government are 100% false.

## V. Relief Requested from the Court

For the reasons set forth above, Defendant respectfully requests that this Court grant the Defendant's Motion for Reconsideration.

Respectfully Submitted,

Jose Torres [signature]

Jose Torres
Defendant

cc: David E. Schafer, Esq.

8/39

O.P. 2/26/23

F5

Jose Torres
J-2020-03855
Essex County Jail
354 Doremus Avenue
Newark, NJ 07105

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

February 12, 2022

Honorable Brian R. Martinotti
M.L.K. Building and Courthouse
50 Walnut Street
Newark, NJ 07102

**RE: Response to Government's Motion in Limine (docket #111) & Supplemental Information for this Court**

Criminal No. 20-418

Dear Honorable Martinotti,

This response addresses the following items:

## Table of Contents

Government's Motion in Limine (docket #111)....2

IB. Evidence that Torres utilized and frequently switched telephones is properly admissible as intrinsic evidence, or alternatively, pursuant to Rule 404(b) (page 11-13)....2

IC. Evidence of Torres' text messages to uncharged victims are admissible if he puts the enticement element at issue (page number 13-15)....2

II. The court should permit the victims to testify absent their identifying information including last names, home addresses, and places of employment (page number 15-21)....3

Supplemental Information for this Court....4

III. Coercion and Enticement Statute: 2422(a) and Case Law From Courts of Appeals....4

IV. Rules of Statutory Construction....6

V. FBI States Torres is NOT VIOLENT and NOT ARMED and Dangerous per the Governments Own Discovery....6

VI. FBI Knowingly Misrepresented Information on Warrants (Applications) to the Courts....7

VII. Being a "John" and Prosecuted Under 2422(a) Lacks Federal Jurisdiction....8

VIII. Location and Sophistication of the Prostitutes....8

IX. Prostitutes Predisposed to Being Enticed....9

X. A.U.S.A. Spiro Meets with HSI Before Investigation on Torres Commenced....9

9/39

F5

XI. Unsuccessful Civil Lawsuit by Sher Tremonte Turns Criminal By A.U.S.A. Spiro ............10
XII. False Bail Arguments by A.U.S.A. Spiro influenced this Court to Detain Torres ............10
XIII. Vast Amount of Discovery Provided to Torres by A.U.S.A. Spiro ............11
XIV. Allegations by A.U.S.A.Spiro re: JTBOSS – Company Owned by Torres............11
XV. Allegations by Alleged Victim-1, a/k/a Marie Sinclair............12
XVI. Grand Jury Indictments on Torres ............12

EXHIBITS – 1 Through 8............14-29

## Government's Motion in Limine (docket #111)

### IB. Evidence that Torres utilized and frequently switched telephones is properly admissible as intrinsic evidence, or alternatively, pursuant to Rule 404(b) (page numbers 11-13).

The Government states, "Torres used a cellular telephone ending in 7614 (the "7614 Phone") to communicate with Victim-5 on or about December 10, 2015". Torres only had one telephone number in 2015 – 732.310.0630. Respectfully, the Government is wrong again. Refer to Exhibit 1 as evidence that in 2015 Torres used telephone number 732.310.0630 to communicate with alleged Victim-5.

Additionally, the Government stated, "Torres utilized nearly 400 cellular telephone numbers in the three years predating his arrest in this matter". Respectfully, the Government is wrong again.

From 2016 through February 14, 2020 Torres changed his T-Mobile cellular number 79 times – refer to bates numbers 30-32 (listing of 79 T-Mobile numbers) – Refer to Exhibit 2.

### IC. Evidence of Torres' text messages to uncharged victims are admissible if he puts the enticement element at issue (page numbers 13-18).

Defendant and defense counsel will oppose the Government's request to admit evidence of text messages relating to the two alleged uncharged prostitutes because the District of New Jersey lacks venue.

Prostitute number one – Eledlani at bates number 3035R-3036R - traveled from Las Vegas, Nevada to Boston, Massachusetts to meet Torres. All of Torres' actions took place outside of the District of New Jersey; therefore, the District of New Jersey lacks venue.

10/39

C/. 2/28/23

F5

Prostitute number two – Orysea at bates number 3185R-3187R – this prostitute, also a chemical engineer from Canada, was working out of her hotel (The Liberty Hotel) in Boston, Massachusetts. Orysea was advertising her prostitution services on Eros.com. Torres saw this prostitute at her hotel. Title 18 U.S.C. Section 2422(a) relates to enticement and has the following elements: *to entice...to travel interstate...to engage in prortitution.* This prostitute never traveled outside of the state of Massachusetts to engage in prostitution with Torres so this prostitute cannot be an alleged victim of enticement. Lastly, the District of New Jersey does not have venue of Torres' actions outside of the District of New Jersey.

The Government has only one email and a text message string relating to Count 6 at bates numbers 18135R through 18145; and 18146R through 18159R, respectively, that the Government can introduce as evidence where Torres responded to a question posed by the prostitute and answered "Yes am familiar w your overnight rate", etc.

For purposes of trial, defense counsel will oppose all evidence relating to Torres' actions outside of the District of New Jersey because the District of New Jersey lacks venue relating to such evidence.

## II. The court should permit the victims to testify absent their identifying information, including last names, home addresses, and places of employment (page numbers 16-21).

In support of the Government's request to have the prostitutes testify absent their identifying information, including last names..., the Government listed and relied on 23 cases to support their argument. However, none of the 23 cases the Government cited relate to the instant statute – 2422(a). Instead, the Government cited cases relating to: 1) furnishing marihuana to a minor, 2) murder, 3), conspiracy to narcotics offenses, 4) mail fraud, 5) hijacking and conspiracy to hijack, 6) sex trafficking, 7) money laundering, 8) sexual abuse, 9) Fair Labor Act, 10) sexual assault and robbery, 11) loan sharking scheme, and 12) civil rights claim cases - just to name several examples.

To use the 23 cases the Government cited to support why the charged and uncharged prostitutes should not use their last names is erroneous as the cases the Government cited are irrelevant to the instant statute and is another attempt by the Government to convince and continue to mislead this Court.

The three cases the Government cited in their Motion in Limine on Section 1C, "Evidence of Torres's text messages to uncharged victims are admissible if he puts the enticement element at issue", does not bolster the Government's argument that the prostitutes' last names should not be revealed at trial.

On page 14 of 32 of the Government's Motion in Limine, the Government cited United States v. Ratley, 284 F.2d 553 (2nd Cir. 1960), a transportation case - 2421 were the defendant

11/39

C.1 2 26/22

F5

was convicted also for violating 2422. In citing this case, the Government failed to inform this Court that the prostitute Drury employed, Phyllis Janifer, and her friend, Dorothy Goodman, testified at trial using their first and last names. The witnesses' first and last names were also revealed on appeal.

The other case the Government cited was United States v. Drury, 588 F.2d 1181 (8th Cir. 1978). In citing this case, the Government failed to inform this Court that the adult prostitutes Drury employed revealed their first and last names at trial and for appeal purposes – Sue Lynn Nolan and Kathleen Lee Griggs. The minor prostitute, Dawn, did not testify using her full name as expected.

The third case the Government cited on Section 1C to support their argument to preclude the prostitutes to testify absent their last names does not bolster the Government's arguments either. In Neff v. United States (8th Cir. 1939), a section 398 case, the Government failed to inform this Court that the prosecuting witness' full name, Bettie Hanson, was revealed during trial along with other witnesses - Bettie Hanson's girlfriend Dolores Fagerlie and Gladys Arneson. All of these witnesses revealed their full names at trial and for appeal purposes.

The Government cited Wilkerson v. United States, 342 F.2d 807 (8th Cir. 195) on Section 1A, "Evidence that Torres assaulted and threatened the charged victims is properly admissible as intrinsic evidence." In citing this case, the Government failed to inform this Court that the women Wilkerson transported for prostitution, their full names were revealed at trial and on appeal (e.g., Beverly Mae Wilson, Mary Jean Stone, and Earnestine Brady).

The Government also cited United States v. Evans, 285 F.3d 664, 670 (8th Cir. 2002) on Section 1A. The Government failed to inform this Court that on trial and on appeal, the prostitutes' full names were revealed (e.g., Deanna Kirkman, Julia Wilson, Tanya Rose May, and Brenda Schaper).

The Government cited United States v. Williams, 291 F.3d 1180 (9th Cir. 2002) on Section 1A. Williams was convicted of 18 U.S.C.S. 2423(a) – underage charges. At trial and on appeal, the underage prostitutes' full names were not revealed for obvious reasons.

For the reasons defense counsel cited and for the reasons noted above, this Court should order the prostitutes to reveal their first and last names similar to the cases cited above. Lastly, there are no compelling or particularized reasons for this Court to protect their full identity, meaning the prostitutes' last names.

## Supplemental Information for this Court

## III. Coercion and Enticement Statute: 2422(a) and Case Law from Courts of Appeals

The law is clear. Refer to docket number 132. In addition, case law supports the intent and purpose of the law, who the law was intended to apply. At least eleven Courts of Appeals,

12/39

C.J. 2/26/22

F5

including the Military Court of Appeals, have affirmed through case law as to whom the law was meant to prosecute.

Courts of Appeals throughout the United States have affirmed convictions because defendants were persuading, inducing, enticing and/or coercing women into prostitution or recruiting females into prostitution. **The name of the statute is titled "Coercion and Enticement" and it was given this name for a reason, this was not a coincidence.**

In United States v. Griffith, 284 F.3d 338 – United States Court of Appeals for the Second Circuit (2002), per the Opinion, the court stated, "Anthony Griffith and his brother Christopher Griffith recruited into prostitution minors and young women in the Bronx..."

In United States v. Scott, 434 Fed. Appx. 103 – United States Court of Appeals for the Third Circuit (2011), on Section 106 of the Opinion, the court stated, "Yet, the District Court properly concluded that Scott and his co-conspirators routinely lured minors and young women into prostitution, and then forced them to continue prostituting..."

In United States v. Clemones, 577 F.2d 1247 – United States Court of Appeals for the Fifth Circuit (1978), on Section 1250-1251 of the Opinion, the court stated, "The women ranged from experienced professionals to teen-age girls as young as 14, some induced into prostitution by promises of money, clothing and cars, others forced..."

In United States v. Bell, 761 F.3d 900 – United States Court of Appeals for the Eighth Circuit (2014), on Section 911 of the Opinion, the court stated, "the jury had sufficient evidence to conclude that Bell coerced or enticed these women to become his prostitutes..."

In United States v. Franklin, 847 Fed. Appx. 387 – United States Court of Appeals for the Ninth Circuit (2021), on Section 389 of the Opinion, the court stated, "Section 2422(a) and (b) prohibit coercion and enticement of (a) an adult or (b) a minor to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense."

In United States v. Alfred, 982 F.3d 1273 – United States Court of Appeals for the Tenth Circuit (2020), on Section 1275 of the Opinion, the court stated, "using a social media website, "Tagged," Mr. Alfred attempted to convince a person he believed to be a nineteen-year-old woman living in Colorado to engage in prostitution. In fact, Alfred was communicating with FBI agents."

The above are several examples of Court of Appeals Opinions affirming whom the law was meant to prosecute, in line with the purpose and intent of the law.

Humbly and respectfully, the defendant requests the Government – that is A.U.S.A. Spiro – to discontinue engaging in providing this Court with knowing misrepresentations and misleading information, including case law. The defendant is very sorry for his actions and regrets his involvement in hiring prostitutes for himself. The defendant, honestly, did not know that hiring prostitutes for himself would ever be taken to be a federal offense as it defies all logic and that the Government would take offense.

13/39

C.J. 3/4/23

F5

## IV. Rules of Statutory Construction

In United States v. Schoolcraft, 879 F.2d 64 – United States Court of Appeals for the Third Circuit (1989), on section 74 of the Opinion, the court stated, "When a court interprets a statute, the starting point must be the language of the statute itself. If the terms of the statute are plain and unambiguous, judicial inquiry is complete. If the language of the statute is ambiguous, we then look to the legislative history as a guide to the meaning of the statute."

In United State v. Gilchrist, 215 F.3d 333 – United States Court of Appeals for the Third Circuit (2000), on Section 336 of the Opinion, the court stated, "In interpreting a statute, the court must give effect to Congress's intent with respect to the question at issue. To discern congressional intent, the courts first look to the plain language of the statute. Every exercise of statutory interpretation begins with the plain language of the statute itself. The starting point for interpreting a statute is the language of the statute itself."

In Orea-Hernandez v. AG of the United States, 449 Fed. Appx. 143 – United States Court of Appeals for the Third Circuit (2011), on Section 145 of the Opinion, the court stated, "In assessing the BIA's interpretation of that term, we apply the familiar two-step inquiry under Chevron, USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984):

> If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give to the unambiguous expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue...the question for the court, is whether the agency's answer is based on a permissible construction of the state."

On this section, the court also stated, "When interpreting a statute, we begin by analyzing the statutory language, assuming that ordinary meaning of that language accurately expresses the legislative purpose" (citing Hardt. v. Reliance Standard Life Co., 130 S. Ct. 2149, 2156, 176 L. Ed 2d 998 (2010).

## V. FBI States Torres is NOT VIOLENT and NOT ARMED and DANGEROUS per the Government's Own Discovery

The Government via the prostitutes claim Torres is violent. Interestingly enough, the FBI states otherwise per the Government's discovery. The FBI states Torres is not armed and dangerous – refer to Exhibit 3, bates numbers 866.

14/39

[handwritten initials and date]

F5

## VI. FBI Knowingly Misrepresented Warrants (Applications) to the Courts

The FBI knowingly misled this Court, the Court in Boston and the Court in New Hampshire to obtain warrants, including Torres' arrest and vehicle warrants. These warrants were tainted by including *known* prejudicial misstatements and charges which the FBI knew Torres had nothing to do with.

For example, the FBI included in their warrant applications charges that had absolutely nothing to do with Torres but the FBI chose to list the charges to taint how the Courts viewed Torres and to get the different judges to sign-off on warrants – a deceptive practice. The various judges relied and were influenced by the FBI's decision to list charges unrelated to Torres' actions, as judges rely on information presented by Government officials. Whom else can judges lean to trust? This is how the FBI and the Government manipulated the various courts.

In an attempt to have the different magistrate judges sign-off on the warrants, FBI Officer - Michael A. Scimeca - who has been working for the FBI for over 20 years wrote on the warrants (applications) that Torres had committed the following violations:

1. Transportation generally, 2421
2. Interstate and foreign travel or transportation in aid of racketeering enterprises, 1952
3. Mail fraud, 1341
4. Wire fraud, 1343

The FBI also documented on the warrants (applications) that Torres was involved in Human Sex Trafficking and Adult Sex Trafficking. Denise Lynn Studlack (FBI) and Michael A. Scimeca (FBI) communicated to third parties that Torres was a "serial rapist". Refer to Exhibit 4 at bates numbers 765 and 767.

A.U.S.A. Spiro also mischaracterized the nature of this case as a "rape" case in the Government's motion in limine, Torres multiple bail hearings, discovery and to the press. Refer to Exhibit 5 at bates number 799.

Although the Government months later explained on the record that "Human Trafficking" was a broad category that was used, the various Magistrate Judges were never informed of this information at the time of authorizing the warrants or at the time Torres applied for bail; therefore, the Government tainted the judges' judgment at each stage of the criminal process. The information included on the warrants (applications) and the Government's responses to Torres' bail applications were just a big hoax to deceive the judges. Refer to Exhibit 6 for additional details.



F5

## VII. Being a "John" and Prosecuted Under 2422(a) Lacks Federal Jurisdiction

While the Government is correct that the statute does not distinguish between a "john" and a "pimp", the law is clear that a person must persuade, induce, entice and/or coerce a women into prostitution. Refer to defense counsel's motion at docket #132. The Government, including the FBI, Homeland Security Investigations, and A.U.S.A. Spiro, are aware that Torres was not involved with persuading, inducing, enticing and/or coercing females INTO prostitution. The females Torres met were already working as prostitutes on the day Torres met them – four of the six prostitutes were advertising on prostitution websites, three of the prostitutes on Eros.com; and one of the prostitutes on Backpage.com. A prostitute friend referred the other two prostitutes to Torres.

Nonetheless, the Government through A.U.S.A. Spiro still decided to open an investigation, indict, arrest Torres on charges that appear to the layperson to represent what Torres did, and knowingly fabricated information on Torres to influence the Court's decision to keep Torres detained in jail.

As far as the record reveals, since the Mann Act was enacted in 1910, there are no "johns" that have ever been convicted at trial under 2422(a). In addition to the law, this further supports that 2422(a) was not meant to prosecute "johns".

For the above reasons, the Government does not have jurisdiction to prosecute Torres for being a "john" and Torres does not concede that he called prostitutes to engage INTO prostitution; therefore, Torres opposes the third element of the statute.

When did being a "john" become a federal offense and that someone could be prosecuted for the rest of their life as 2422(a) has no statute of limitation. Crimes that have no statute of limitation are generally heinous crimes such as capital offenses, sex trafficking by force, fraud or coercion (adults and minors), etc. It defies all logic that a person can be prosecuted for being a "john" for the rest of their life and that the government is interested now in prosecuting "johns".

## VIII. Location and Sophistication of the Prostitutes

All of the prostitutes Torres met are sophisticated prostitutes. Count 1 is from Las Vegas, Nevada; Count 2 is from the Toronto (or greater area), Canada; Count 3 is from the New Jersey / New York area, but originally from Massachusetts; Count 4 is from Philadelphia, Pennsylvania, but originally from Baltimore, Maryland, has also lived in California and is currently living in Hawaii now; Count 5 is from the Toronto (or greater area), Canada, and also lived in New York but may currently be living in Canada now; and Count 6 is from the upstate New York area.

Coincidently, all of the prostitutes met Torres in New Jersey. Most, if not all of the prostitutes Torres met, provide "fly me to you dates", also known as "travel dates", etc. – meaning

16/39

C.J. 2/26/23

F5

that the prostitute travel to see "johns" for as little as an hour, to a couple of hours, to a whole weekend, provide sugar daddy arrangements, etc. All of these prostitutes have a multitude of packages that a "john" can purchase. Each package includes different services, the services range as far as the imagination can take you, and each package has a different price as one can only imagine depending on the prostitute and her sophistication.

Of the 18 women that the government interviewed, as evidenced via the 302 reports, 17 women confirmed they were working as prostitutes the day they met Torres. Of the 17 prostitutes, 4 of the prostitutes met Torres outside the District of New Jersey.

Of the 13 prostitutes, 6 of the 13 prostitutes confirmed Torres did not display any form of violence with them; the other 7 prostitutes said Torres displayed some form of violence.

Of the 7 prostitutes that allege there was some form of violence, 5 prostitutes are represented by attorneys; and 2 prostitutes are not represented by an attorney.

Of the 5 prostitutes that are represented by attorneys, 4 prostitutes are represented by Sher Tremonte (count 1, 2, 6, and an uncharged prostitute named Abigail).

There is a consistent pattern with the prostitutes that are represented by Sher Tremonte – all of the prostitutes are making allegations of violence. This is not a coincidence since A.U.S.A Spiro was previously employed by Sher Tremonte and these prostitutes have been coerced.

If the 4 prostitutes from out of state are accounted, this means that 9 prostitutes allege there was no violence and 8 prostitutes allege there was some form of violence.

In any event, <u>the Government has no evidence that there was any violence other than the prostitutes' perjured testimony</u>. The Government also can never prove allegations of violence because violence never happened. There is zero evidence.

## IX. Prostitutes Predisposed to Being Enticed

Respectfully, the Government's arguments that Torres enticed the prostitutes by offering large amounts of money fails for too many reasons. In other words, this means that every prostitute in America who is selling her body on the internet or that is referred by a prostitute friend(s) is predisposed to being enticed. This also means that being a "john", you now face being prosecuted by the federal government and imprisoned up to 20 years. This novel and unique argument unfortunately is not in line with the law and with sound logic.

## X. A.U.S.A. Spiro Meets with HSI Before Investigation on Torres Commenced

A.U.S.A. Spiro meets with Homeland Security Investigations Officer, Ronald Conyers, on August 21, 2019, one day prior to when the investigation was formally opened on August 22, 2019 "to discuss the Jose Torres" per bates numbers 470031R through 470032R.



F5

## XI. Unsuccessful Civil Lawsuit by Sher Tremonte Turns Criminal by A.U.S.A. Spiro

Someone with direct contact with the prostitutes and knowledge of the case directed the prostitutes to go to Sher Tremonte, A.U.S.A. Spiro's prior employer, who is representing the prostitutes allegedly pro bono.

As noted below per the FBI or HSI, the law firm of Sher Tremonte was looking for alleged victims of Torres in order to initiate a civil lawsuit – Refer to Exhibit 7. However, when Sher Tremonte concluded that Torres did not have the money to pay the prostitutes or would be very difficult to get a money judgment from Torres because Torres was a "john", Sher Tremonte then used their Government connections and called their ex-work colleague and friend, A.U.S.A. Spiro, to turn the unsuccessful civil lawsuit into a criminal investigation.

Although this Court recommended A.U.S.A. Spiro should work on a different project, A.U.S.A. Spiro refused and ignored this Court's suggestion because this is a personal case to A.U.S.A. Spiro.

Per Agent's notes on document re: 343-NK-2955903, dated 8/29/2019, the Agent wrote, *"A July 2019 post on the SexWorkersOnly subreddit and a blog on post on www.maggiemcneill.wordpress.com/2019/6/24/joey-the-player indicated that the law firm [redacted] was looking for victims of Torres in order to initiate a civil lawsuit. A review of [redacted] confirmed that the contact information given is for [redacted] and [redacted]. [Author's note: SWOPUSA, the Sex Workers Outreach Program USA, is a non-profit that advocates for the rights and well-being of sexworkers.]"*

Aside from the three of the six prostitutes that are represented by Sher Tremonte, there is at least one other uncharged prostitute that is represented by Sher Tremonte. For example, Abigail at bates numbers 36755R-36757R.

## XII. False Bail Arguments by A.U.S.A. Spiro Influenced this Court to Detain Torres

For the Government's information, Torres has family in El Salvador; however, the only person Torres has ties is with his biological mother, no one else. So saying that Torres is a flight risk and has family ties outside of the United States is also not a completely true statement, as Torres has never fled, never had a reason to flee and never lived anywhere else outside of the United States since he arrived in New York in 1986.

Furthermore, Torres traveled primarily to other countries (excluding Colombia in South America) for work reasons, to provide consulting services to clients outside of the United States.

18/39

C.J. 3/26/23

F5

## XIII. Vast Amount of Discovery Provided to Torres by A.U.S.A. Spiro

A.U.S.A. Spiro provided counsel, David E. Schaffer, Esq. with approximately 550,000 pages of discovery. Of the 550,000 pages, approximately 500,000 pages of discovery have bates numbers and the other 50,000 pages of discovery have no bates numbers. The first part of the discovery was provided to Torres approximately in the middle of September 2020, approximately 7 months after Torres was arrested. This was not a coincidence given that the FBI collected the vast majority of the discovery post Torres' arrest.

The Government provided lots of irrelevant discovery hoping to overwhelm the defendant and defense counsel and to divert the key focus and issues of the prosecution.

## XIV. Allegations by A.U.S.A. Spiro re: JTBoss – Company Owned by Torres

On paper, Torres owned a company by the name of JTBoss, LLC. This company was registered in New Jersey. A.U.S.A. Spiro misrepresented to this Court that this company was based in New York and in Colombia, South America. By mentioning this information to this Court, it gave the aura that Torres had an international company and had access to a whole bunch of money from this company. This company had no physical presence and was not based in New York or Colombia or anywhere as the Government states. Respectfully, the Government, that is, A.U.S.A Spiro is wrong again.

JTBoss LLC was under website development and never made a dollar as this company never engaged in any financial transactions with anyone. However, A.U.S.A. Spiro knowingly misrepresented to this Court that Torres owned a company based in New York and in Colombia without knowing all of the facts. Unfortunately, this Court relied on A.U.S.A. Spiro's false hearsay arguments and deemed Torres to be a flight risk. Even if A.U.S.A. Spiro had known the facts, the facts would have been purposely misstated.

In sum, all of A.U.S.A. Spiro's bail arguments were fabricated and this Court was misled and misinformed by A.U.S.A. Spiro's erroneous information. This Court relied on A.U.S.A. Spiro's statements, in good faith, not knowing that the Government was knowingly misrepresenting information.

19

C.I 2/28/23

F5

## XV. Allegations by Alleged Victim-1, a/k/a Marie Sinclair

Per Agent's notes on document re: 343-NK-2955808, dated 8/29/2019, the Agent wrote, "A Twitter post from user @KittyKatMarieS dated 18 July 2019 indicated that Torres had assaulted her in Las Vegas, but also that she had reported it to the police in Las Vegas and in Middlesex County." That is a complete lie. Refer to Exhibit 8.

For this Court's knowledge, Torres was never in Las Vegas, Nevada in 2019. Torres never met Marie Sinclair in Las Vegas, Nevada. The one and only time Torres was in Las Vegas was between 2011 and 2013 for work related reasons.

This is the same prostitute that filed a police report with the Las Vegas Metropolitan Police Department on 6/1/2015 – four days later after she met Torres and realized she did not get paid - and reported that she met a man online on a site called Backpage. *"Lindsey stated that the person she flew out to meet went by the name "Joey" however states his real name is Jose Torres."* – refer to bates number 3958R. This prostitute never flew out from Las Vegas to meet Torres in New Jersey. That is a complete lie.

Lindsey's story about how she met a man is contradicted per the 302 Report dated November 20, 2019 at bates numbers 556 through 560. In one of the interviews Lindsey had with the FBI and HSI, Lindsey informs the FBI and HSI that *"her first interaction with Jose Torres whom she knows as Joey was while she was visiting the New York city midtown area in May 2015"*.

This is the same prostitute that has given law enforcement at least five different versions of her and Torres' encounter. On 6/1/2015, according to the North Brunswick, NJ police department, Lindsey informed law enforcement that *"In the car they talked and Jose asked Lindsey what she needed and she advised she needed money to pay off her vehicle which was approximately $10,000"*.

## XVI. Grand Jury Indictments on Torres

Knowing exactly what the Government had and has as evidence for each of the alleged victims during the time period when the indictments took place, the question begs if the Government, that is, A.U.S.A. Spiro or any other Government official provided false hearsay or might have substantially influenced the grand jury's decision to indict Torres based on flagrant, misleading and prejudicial statements to the grand jury. Did the grand jury rely on false, flagrant, misleading and prejudicial statements from A.U.S.A. Spiro and/or FBI Officer Michael A. Scimeca and/or Homeland Security Investigations Official Ronald Conyers or anyone else? Was any information presented to the grand jury? Did the prostitutes travel from Canada, Nevada, Hawaii, etc. and were they present at the grand jury during the Covid-19 pandemic with the high-level travel restrictions in 2020? Exactly, what evidence or probable cause was presented to the grand jury? Or did the Government just rubber stamp the grand jury indictments?

20/39

C/ 3/24/23

F5

Respectfully Submitted,

Jose Torres, Defendant
cc: David Schafer, Esq. – Defense Counsel
Shawn Barnes, Esq. – A.U.S.A.
Emma Spiro, Esq. – A.U.S.A.

21/39

2/24/23

F5

5/24/22

55.

Jose Torres
J-2020-03855
Essex County Jail
354 Doremus Ave.
Newark, NJ 07105

May 14, 2022

RECEIVED
MAY 24 2022
AT 8:30 M
WILLIAM T. WALSH, CLERK

Honorable Brian R. Martinotti
M.L.K. Building and Courthouse
50 Walnut Street
Newark, NJ 07102

**RE: Reply to Government's Motion at docket #137**

**Criminal No. 20-418**

Dear Honorable Martinotti,

This is a limited reply to the Government's motion at docket #137. Torres addresses three items in the Government's motion that were never addressed by defense counsel at docket #141 [illegible] the answers are obvious. However, in an abundance of caution and for the record, Torres will address. Please see below:

## Table of Contents

II. The Court Should Deny Defendant's Motion To Dismiss Because 18 USC 2422(a) is Not Unconstitutionally Vague (page 7-11)........1

III. The Court Should Permit Evidence of Assaults (page 11-16)........2

## Government's Motion (docket #137)

### II. The Government Should Deny Defendant's Motion To Dismiss Because 18 USC 2422(a) is Not Unconstitutionally Vague (page 7-11).

Item one. On page 9, the Government states, "Regardless of what name the New Jersey Code gives to this offense," (referring to prostitution as a patron) "federal law would define it as a Class B misdemeanor."

The Government is incorrect again. In order for Torres' actions to be a Federal Class B misdemeanor, Torres' actions would have to have been in a federal property. When did a private

22/39

C.I 2/26/23

F5

residence or property become a federal property? The Government is lying again to the Court as the Government cannot be this ignorant.

## III. The Court Should Permit Evidence of Assaults (page 11-16).

Item two. On page 12, the Government listed the legal elements the Government must prove to find Torres guilty of 2422(a). After listing the legal elements, the Government stated, "See Eighth Circuit Model Jury Instruction 6.18.2421."

It is important to note that the Government cited a Modern Jury Instruction unrelated to 2422(a), the charge Torres was indicted on six counts. Instead, the Government cited a jury instruction relating to 2421 – Transportation Generally from the Eighth Circuit.

Given that there is no Third Circuit Modern Jury Instruction for 2422(a), why did the Government cite/reference an unrelated jury instruction (2421) instead of citing/referencing a jury instruction for 2422(a) from the 8th or 9th Circuit, the only two circuits that have a jury instruction for 2422(a)? Makes zero sense.

Item three. On page 12, the Government stated, "Despite Torres's flagrant misreading of the statute, the Government is not required to prove that the defendant enticed the victims to engage in prostitution; rather, the Government must prove that the defendant persuaded, induced, enticed or coerced the victim to travel in interstate commerce with..."

On page 14, the Government stated, "Torres also repeats the argument that he has before, namely that "[t]he only question is who enticed whom." Def. Br. at 8. The Government must prove that the defendant persuaded, induced, enticed, or coerced the victim to travel in interstate commerce; it need not prove that the defendant enticed the victim to engage in prostitution."

Unfortunately, the Government is wrong again as the Government/AUSA Spiro fails to understand that the words *"persuade," "induce,"* and *"entice"* are all sister words of one another as each word makes reference to the other word(s). Sister words is another way to say synonyms. Below are the definitions of *"persuade," "induce,"* and *"entice"* per Black's Law Dictionary (11th ed. 2019):

Persuade – To *induce* (another) to do something; **to make someone** to do something.

Induce – To bring on or about, to affect, cause, to influence to an act or course of conduct, lead by *persuasion* or reasoning, by motives, prevail on.

Entice – To lure or *induce*. To wrongfully solicit, *persuade*, procure, allure, attract, draw by blandishment, **coax or seduce**...To lure, *induce*, tempt, incite or *persuade* a person to do a thing.

23/39

O/ 3/21/23

F5

Had the Government/AUSA Spiro taken the time and studied the definitions of *"persuade," "induce,"* or *"entice"* prior to AUSA Spiro responding to defense counsel's motion, AUSA Spiro would have known that *"persuade," "induce,"* or *"entice"* are synonyms and would not have made the comments she made on page 12 and 14 of her motion.

Conclusion

Everything that could possibly go wrong in a criminal prosecution has gone wrong in this criminal case against Torres. For example:

1. Deliberate and calculated conflict of interest by AUSA Spiro and her former employer, Sher Tremonte;
2. Deliberate misapplication of the law by AUSA Spiro against Torres;
3. Countless erroneous legal arguments by AUSA Spiro;
4. Repeated and countless lies by AUSA Spiro against Torres for over 2+ years, which most, if not all of the lies, have been documented on the docket sheet; and
5. Extreme and flagrant Federal Government corruption, deceitfulness, and lies by AUSA Spiro.

This is just an abbreviated list. This list is endless and it is an embarrassment to the United States Federal Government. The United States Federal Government deserves better.

AUSA Spiro believes that the law is on her side and that she can manipulate, fool, or outsmart the Federal Justice System, including Federal Law Enforcement by working jointly with Sher Tremonte, FBI and HSI to [handwritten: compile and] coerce the prostitutes to lie. AUSA Spiro also believes that she can manipulate, fool, or outsmart the judiciary with her deceptions and repeated lies to the Court. However, AUSA Spiro is completely mistaken.

Respectfully Submitted,

[signature] 3/14/2022

Jose Torres

cc: Philip R. Sellinger, United States Attorney
David E. Schafer, Esq.
Emma S. Spiro, A.U.S.A.
Shawn Barnes, A.U.S.A.

24/39

[handwritten initials] 3/26/22

F5

Juan Torres
J-2020-03855
Essex County Jail
354 Doremus Avenue
Newark, NJ 07105

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2022 JUN -7 A 8 54

May 27, 2022

Honorable Brian R. Martinotti
M.L.K. Building and Courthouse
50 Walnut Street
Newark, NJ 07102

RE: Addendum to docket #138, filed February 17, 2022

Criminal No. 20-418

Dear Honorable Martinotti,

This is an addendum to docket #138 filed February 17, 2022, a response to the Government's motion at docket #111.

Table of Contents

II. The court should permit the victims to testify absent their identifying information including last names (page number 15-21)........................................1-3

## II. The court should permit the victims to testify absent their identifying information, including last names... (page numbers 15-21).

The Government requests the Court to permit the prostitutes to testify absent their information, including last names.

It is worth repeating again. As previously noted, of the 23 cases the Government cited to support why the prostitutes' last names should not be disclosed, none of the cases relate to the instant statute, 2422(a): Coercion and Enticement, for which Torres has been charged with six counts.

The 23 cases the Government cited support the use of pseudonyms and not revealing the full name of the alleged victim(s) or witness(es) in cases dealing with (raping) minors; sex

25/39

O.J. 2/26/23

F5

trafficking by force, fraud or coercion of adult and minors; sexual assault or Government informants whose personal information is protected by the law.

In the instant case, the prostitutes and their personal information is not protected by the law and; therefore, the prostitutes should testify at trial using their first and last names. Refer to Exhibit A attached for the 23 cases the Government listed in their Motion in Limine at docket #111.

Torres has not been charged with any of the type of cases listed above. Therefore, the Government/AUSA Spiro's argument that the prostitutes should testify absent their identifying information is flawed and meritless as the cases the Government cited in their Motion In Limine do not support the Government's request to the Court. The cases; however; do support and point squarely in the complete opposite direction and that the prostitutes' last names should be revealed at trial.

It is difficult to comprehend that the Government requests the Court not to reveal the prostitutes' last names when their own case law and the law goes in the opposite direction. As previously noted on docket #138, the three Mann Act cases the Government's listed in their motion at docket #111, Section 1C, the adult prostitutes' full names were revealed at trial Phyllis Janifer, Dorothy Goodman; Sue Lynn Nolan, Kathleen Lee Griggs; and Bettie Hanson, Dolores Fagerlie and Gladys Arneson testified at trial, respectively.

Additionally, on docket #111, Section 1A, the Government listed two Mann Act cases: Wilkerson v. United States, 342 F.2d 807 (8th Cir. 1965) and United States v. Evans, 285 F.3d 664, 670 (8th Cir. 2002) and the adult prostitutes' full names were revealed at trial: Beverly Mae Wilson, Mary Jean Stone, Earnestine Brady; and Deanna Kirkman, Julia Wilson, Tanya Rose May, and Brenda Sharper.

In Smith v. Illinois, 390 U.S. 129 (1968), in the Opinion, the Justices stated, "when credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." In Torres case, credibility is in issue and therefore the witnesses' full name should be revealed at trial.

A well-recognized exception to *Smith* exists where revealing a witness' "name, address, or place of employment...would place the witness in danger." In the instant case, the defendant or for that matter no one else has placed the prostitutes in danger. The record also does not contain anything to suggest that the prostitutes have been threatened or harmed. The facts are completely the opposite. Some, if not all of the women are still plying their trade as prostitutes, for example, Count 1 (Lindsey) and Count 6 (Anant). Interestingly enough, the Government/AUSA Spiro is now protecting prostitutes (from "Johns") as if it were an honorable profession. This is an illogical thought process as it defines all levels of common sense since the prostitutes put themselves on the Internet for sale so they can see clients for money, this is their job, and this is what prostitutes do.

26/39

C! 2/24/23

F5

The Government/AUSA Spiro states that Torres has not shown a particularized need for the prostitutes to reveal their last names. The Government/AUSA Spiro, however, fails to recognize and understand that there are real costs to the prostitutes testifying by first name alone. There is the risk that the jury will understand the reasons why the prostitutes are testifying by first name alone and wrongfully suggest to the jury that the prostitutes fear the risk of reprisal from the defendant. There is also the risk to the integrity of the trial itself. Without being able to mention the prostitutes' full names, including last names, during voire dire, there is no assurance that a member of the jury will not be seated who knows or is familiar with the prostitutes. And there is reason to question whether the protection that any order keeping the prostitutes' full names secret at trial would, in the long run, be anything other than illusory.

If the prostitutes do not testify using their last names, Torres would be prejudiced "from a denial of the opportunity to place the witness in his (or her) proper setting and put the weight of his (or her) testimony and his (or her) credibility to a test, without which the jury cannot fairly appraise them." United States v. Fontana, 231 F.2d 807 (3rd Cir. 1956).

Therefore, for all of the above reasons, the defendant respectfully requests the Court that the prostitutes' full names be revealed at trial.

Respectfully Submitted,

Jose Torres, Defendant

cc: Philip R. Sellinger, U.S. Attorney
David Schafer, Esq. – Defense Counsel
Shawn Barnes, Esq. – A.U.S.A.
Emma Spiro, Esq. – A.U.S.A.

27/39

2/26/23

F5

# EXHIBIT A

| | Cases Cited by The Government | Description of Case and How It is Not Relevant to Torres' Case |
|---|---|---|
| 1 | California v. Green, 399 U.S. 149, 173-74 (1970) | This is a case relating to prostitution of minors and adults regarding a violent pimp. The use of pseudonyms and not revealing the full names would be well justified. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 2 | Chambers v. Mississippi, 410 U.S. 284 (1970) | This case is where the defendant's conviction was reversed in light of the trial court's failure to allow defendant to cross-examine a key witness...Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 3 | Delaware v. Arndell, 475 U.S. 673, 679 (1986) | This is a case which reversed defendant's murder conviction on the ground that the trial court by improperly restricting defense counsel's cross examination. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 4 | Alford v. United States, 282 U.S. 687, 694 (1931) | This case deals with the extent of cross-examination with respect to an appropriate subject of inquiry. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |

28/39

C/ 7/26/23

F5

| | | |
|---|---|---|
| 5 | United States v. Watson, 599 F.2d 1149, 1157 (2d. Cir. 1979) | This is a conspiracy to distribute heroin and possess it with intent to distribute case involving cross examination of a key Government witness was impermissibly restricted. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 6 | United States v. Persico, 425 F.2d 1375, 1383 (2d Cir. 1970) | This is a case where the appellants contended that their speedy trial rights had been violated, that the scope of their cross examination of a key witness had been restricted and that they had been deprived of a trial. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 7 | United States v. Paris, 2007 WL 1484974 (D. Conn May 18, 2007) | This is a sex trafficking, operating a prostitution business, forced adults and minors to work as prostitutes. Using a pseudonym or not revealing last names in the instant case would be well justified. However, in Torres' case, Torres has not been charged with sex trafficking, operating a business or forcing minors to work as prostitutes. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 8 | Globe Newspaper Co. v. Superior Court for Norfolk County, 457 U.S. 596, 607-08 (1982) | This is a case about a newspaper seeking access to a rape trial where the alleged victims were minors. Using a pseudonym in the instant case would be more then well justified. Torres has not been charged with raping minors or seeking access to a rape trial. Therefore, this case is irrelevant does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by |

29/39

[illegible]

F5

| | | |
|---|---|---|
| | | another prostitute should not reveal their last names at trial. |
| 9 | United States v. Lewis, 2017 WL 750456, at *5 (S.D. Ga. Feb. 27, 2017) | This is a sex trafficking by force fraud or coercion of adult and minors. In a case like this, it is more than well justified for the victims to use a pseudonym or to not reveal their last names. In Torres' case, Torres has not been charged with sex trafficking by force, fraud or coercion of adult and minors. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 10 | Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 580 (1980) | This is a case regarding at request of accused closing murder trial to the public and press. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 11 | United States v. Alcantara, 396 F.3d 189, 191-92 (2nd Cir. 2005) | This is a conspiracy to distribute cocaine case. The appeal dealt with whether a First Amendment's qualified right of access was violated when the first defendant's sentencing proceeding and the second defendant's guilty plea proceeding were held in the trial court's robing room rather than in the open courtroom. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 12 | Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068-69 (9th Cir. 2000) | This is a case about a Fair Labor Standard Act, a collective action, and the plaintiffs, who were foreign garment workers, were allowed to remain anonymous. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another |

30/39

OJ 2/26/23

F5

| | | |
|---|---|---|
| | | prostitute should not reveal their last names at trial. |
| 13 | Doe No.2 v. Kriko, 242 F.R.D. 193, 196 (E.D.N.Y. 2006) | This is a case about a sexual abuse of a minor and properly so no name was revealed. This is a case that is well justified for a name not to be revealed. Torres has not been charged with sexual abuse of a minor. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 14 | Paroline v. United States, 134 S. Ct. 1710, 1716 (2014) | This is a restitution case regarding child pornography and no name was revealed. This is a case that is well justified to not reveal a child's name. Torres' case is not a restitution case and nor has Torres been charged with child pornography. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 15 | United States v. Stevens, 935 F.2d 1380, 1384 (3rd Cir. 1991) | This is a sexual assault and robbery case. The victims' full names, Jane Smith and Tony McCormick, were revealed at trial. Torres has not been charged with sexual assault or robbery. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. The fact that the victims' names were revealed at trial does not further support the Government's argument. |

31/39

C.F. 7/26/23

F5

| | | |
|---|---|---|
| 16 | Doe v. Evans, 202 F.R.D. 173, 176 (E.D. Pa. 2001) | This is a civil case regarding an alleged sexual assault victim who proceeded under a pseudonym. Torres is not involved in a civil case and nor has Torres been charged with sexual assault. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 17 | Doe v. United Servs. Life Ins., 123 F.R.D. 437, 439 (S.D.N.Y. 1988) | This is a civil case regarding discrimination, sex, marital status and sexual orientation where the plaintiff proceeded under a pseudonym. Torres is not involved in a civil case and nor is Torres involved is a sexual orientation case. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 18 | United States v. Bennett, 409 F.2d 888, 901 (2d Cir. 1969) | This is a conspiracy to import narcotics and to distribute case where the Government's principle witness' full name was not revealed. Torres has not been charged with a conspiracy to import and to distribute and the prostitutes are not Government witnesses. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 19 | United States v. Marcus 2007 WL 330388, at *1-2 (E.D.N.Y. Jan 31, 2007) | This is a case relating to sex trafficking and forced labor and Government witnesses were defendant was precluded from inquiring about a witness' address...Torres has not been charged with sex trafficking and does not have any Government witnesses in this case. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by |

32/39

D.I 2/26/23

F5

| | | |
|---|---|---|
| | | another prostitute should not reveal their last names at trial. |
| 20 | United States v. Pepe, 747 F.2d 632, 656 n.33 (11th Cir. 1984) | This is a loan sharking scheme case. The appellate court found that there was no error in the district court's preclusion of cross-examination as to the home addresses of Bowdach, Rafsky, and Zucker. Bowdach and Rafsky were in the Witness Protection Program, their addresses were protected by the law. The prostitutes are not part of the Witness Protection Program and their information is not protected by the law. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |
| 21 | United States v. Navarro, 737 F.2d 625, 633-34 (7th Cir. 1984) | This is a narcotics offense case and the DEA informant's name, Jose Gutierrez, was revealed. Torres is not involved in a narcotics case and the prostitutes are not Government informants. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. The fact that an informant's name was revealed does not bolster / support the Government's argument. |
| 22 | United States v. Harris, 501 F.2d 1, 9 (9th Cir. 1974) | This is a possession of heroin with intent to distribute case where the informant's name, John Durden, was revealed. Torres is not involved in a drug case and the prostitutes are not informants. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. The fact that an informant's name was revealed also does not bolster the |

33/39

C.T. 2/26/23

F5

| | | |
|---|---|---|
| | | Government's argument why the prostitutes' last names should not be revealed. |
| 23 | United States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970) | This is a conspiracy to transport obscene material case. At trial, the court found that the inability to elicit a witness' address on cross-examination did not prejudice any investigation of the witness, and that no constitutional rights were infringed. Torres is not seeking to obtain the prostitutes addresses. Therefore, this case is irrelevant and does not bolster the Government's argument why the prostitutes who were advertising their wares on the internet or who were referred by another prostitute should not reveal their last names at trial. |

34/39

C.L 2/26/23

F5

Case 2:20-cr-00418-BRM Document 161 Filed 07/07/22 Page ID: 1134

Honorable Brian R. Martinotti
M.L.K. Building and Courthouse
50 Walnut Street
Newark, NJ 07102

Criminal No. 20-418

Dear Honorable Brian R. Martinotti,

This is a reply to response to AUSA Emma S. Spiro's opposition to defendant's Motions to Dismiss and In Limine at document #137. This letter also documents additional lies that AUSA Emma S. Spiro has told this Court and the public through her Government motions/briefs.

## Table of Contents

I. New Federal Prosecutor, Emma S. Spiro, Erroneously Applies Minor Case Law to an Adult Prostitution Case of a "John" in an Attempt To Bolster Her Argument that Torres Induced Prostitutes Who Were Selling Their Bodies Online To Come and See Him.......1

II. Mrs. Spiro's Lies to this Court and to the Public Are Endless.......3

III. Conclusion.......3

## I. New Federal Prosecutor, Emma S. Spiro, Erroneously Applies Child Case Law to an Adult Prostitution Case of a "John" in an Attempt to Bolster Her Argument that Torres Induced Prostitutes to Come and See Him

Mrs. Emma S. Spiro gets creative and erroneously uses child case law in an attempt to bolster her argument that Torres induced adult prostitutes who were selling their bodies online to come and see Torres by offering or agreeing to pay money in exchange for engaging in sex acts.

At document #137, page 14, Mrs. Spiro states: "See United States v. Rutgerson, 822 F.3d 1223, 1234 (11th Cir. 2016) (rejecting defendant's argument that he could not have persuaded the victim (referring to a child) who held herself out as a prostitute and finding that "offering or agreeing to pay money in exchange for engaging in various sex acts qualifies as inducement within the meaning of the statute"). Thus Torres's argument that, because the victims were prostitutes, he

35/39

C/ 1/24/23

F5

and any offering or agreeing to pay money by an adult in exchange for engaging in various sex acts with a minor is a criminal offense. This fact alone does not bolster Mrs. Spiro's argument.

Congress added 2422(b) in the Telecommunications Act of 1996 (Pub. L. No. 104-104, section 508, 110 stat. 56) to specifically prohibit enticement of children.

Two years later, the Child Protection and Sexual Predator Punishment Act of 1998 made substantial changes to related laws. The House Judiciary Committee explained that the 1998 Act responded to "highly publicized news accounts in which pedophiles" use the web to "seduce or persuade children to meet them to engage in sexual activities," and confirmed its intent to enact "a comprehensive response to the horrifying menace of sex crimes against children...and bring to justice those individuals who prey on our nation's children." H.R. Rep. 105-557, 10, 21, 1998 U.S.C.C.A.N. 678, 678-79, 690 (June 3; 1998). United States v. Montijo-Maysonet F.3d 34 (1st Circuit, 2020), footnote #7.

According to United States v. Fugit, 703 F.3d 248 (4th Circuit 2012) stated, "2422(b) concerns only conduct that is criminally prohibited" and offering or agreeing by an adult to have sex with a minor is exactly that.

The 3rd Circuit already ruled that "A minor cannot consent to being sexually exploited." See United States v. Remoi, 404 F.3d 789, 795 (3rd Cir. 2005). See also United States v. Abad, 350 F.3d 793, 798 (8th Cir. 2003).

In *Remoi*, the 3rd Circuit stated, "The underlying legal theory, of course, is that because a minor lacks legal capacity to consent to sexual relations, any such relations are "forcible." The Court further stated, "A minor... is considered incapable of giving permission or consent under the law."

*Abad* quoting Guarro v. United States, 237 F.2d 578, 99 U.S. App. D.C. 97 (1956), stated: "When sexual assaults are committed upon children..., consent is not a defense. The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their 'consent' is of no significance." Abad, 350 F.3d at 790. This statement also applies to any offering or agreeing to pay money in exchange for any sexual activities with a minor.

Since a child cannot consent as a defense to 2422(b), then the analysis of whether you did or did not persuade them is moot, because regardless you have already committed the crime.

For example, if a drug law existed that said if you persuade someone to buy or sell some illegal drugs from you, the analysis of persuade is moot simply because the buying/selling of drugs is illegal and the crime is complete.

36/39

F5

Appeals concluded that the statute was "written for the protection of minors caught in the web of these illicit activities, rather than for offenders choosing to turn a blind eye to the age of the victims...."

Mrs. Spiro's analysis is misguided as the analysis of 2422(b) is distinct because both Congress and the courts have made it clear that when children are involved, the analysis of persuade, induce, entice, or coerce is moot regardless of whether you persuaded, induced, or enticed, which created a consent by the child, you have already violated 2422(b) simply since the victim is a child.

<u>Mrs. Spiro cannot successfully cite to one single case relating to 2422(a) dealing with a "john" and adult prostitutes where "offering or agreeing to pay money" in exchange for engaging in sex acts constitutes inducement</u>.

Bottom line, Mrs. Spiro squarely misses the point that anything to do with an adult seeking sexual acts from a child is a crime, including "offering or agreeing" to pay for any sexual activities, and therefore Mrs. Spiro's argument is moot for all of the reasons stated above. Lastly, Mrs. Spiro also misses the point that case law regarding minors cannot be applied to an adult prostitution case relating to a "john" because child sex acts are not crimes of enticement, they are crimes period. This concept is simple; it is the law but yet Mrs. Spiro misses this exact point.

## II. Additional Lies to This Court and to the Public from Mrs. Emma S. Spiro

On document #137, page 1, Mrs. Spiro lied to this Court and to the public when Mrs. Spiro stated, "Once the women arrived, Torres often sexually and physically assaulted them, and always refused to pay them." The truth is that Torres has *never* sexually and physically assaulted anyone and never prevented anyone from leaving the room. Mrs. Spiro attempts to add gravity to the charges by falsely alleging that the defendant had rough sex, including slapping the buttocks, and other similar acts. Once again, Mrs. Spiro is lying to this Court and to the public. This is not a surprise.

Five of the six prostitutes Torres met, the rendezvous took place in a major hotel. How come none of the prostitutes alerted the hotel staff or called the main desk or the local police meanwhile Torres was asleep or after the prostitutes left the hotel?

Mrs. Spiro's statement, "and always refused to pay them" is also incorrect. Torres' payment just simply never went through and not that Torres always refused to pay the prostitutes. Once again, Mrs. Spiro misstates the facts.

F5

Taking into consideration all of the lies by Mrs. Spiro and the FBI, most certainly Mrs. Emma S. Spiro and FBI Officer Michael A. Scimeca worked with Ronald Conyers (HSI) to manipulate the 302 reports. This further confirms what Torres has been stating for months now. This also helps explain why Mrs. Spiro met in person with Ronald Conyers on August 21, 2019, one day prior to the official opening of Torres' investigation.

## III. Conclusion

Without a shadow of a doubt, Mrs. Emma S. Spiro cannot be trusted as she lies all the time to this court and to the public, is a corrupt Government employee, and has violated her oath of office

Without a shadow of a doubt and for all of the reasons stated above, Mrs. Spiro is erroneously misapplying child case law that was enacted to protect children and is using such case law to an adult prostitution case regarding a "john" in an attempt to convince the court and the public that "offering money or agreeing" to a prostitute's rate is a form of inducement as it relates to an adult prostitute that is selling her body on the internet. Again, Mrs. Spiro's use of child case law to an adult prostitution case of a "john" is wrong on all levels and makes no sense.

Without a shadow of a doubt, Mrs. Spiro has a professional Government license to lie and lies to this court and to the public all the time. Mrs. Spiro is misapplying the law to prosecute Torres under 2422(a), erroneously using child case law, and twisting the facts of this case. Because Mrs. Spiro lies to this court and to the public, the public and the courts should not place any trust in Mrs. Spiro.

The defendant begs this court to put an end to Mrs. Spiro's lies, dishonesty, deceitfulness, and Government corruption. Someone needs to put a stop to Mrs. Spiro's lies. The public demands the truth and the defendant should be prosecuted by an honest, forthright Government prosecutor who has strong ethical values, does not lie, does not manipulate the law, does not tamper and/or twists the facts to a criminal defendant's case, and upholds his or her oath of office. This is not Mrs. Spiro. I humbly request this court to put a stop to Mrs. Spiro's repeated and countless lies. There is no place for liars and corrupt government employees in a federal court.

F5

cc: Merrick Garland, United States Attorney General
Jeffrey Ragsdale, Office of Professional Responsibility
Philip R. Sellinger, United States Attorney
David Schafer, Esq. – Defense Counsel
Shawn Barnes, Esq. – A.U.S.A.
Emma Spiro, Esq. – A.U.S.A.

39/39

JOSE TORRES
ECCF
354 DOREMUS AVE.
NEWARK, NJ 07105

COURT CLERK
50 WALNUT STREE[T]
NEWARK, NJ 0710[2]

2024 JUL 30 P 10:48

RECEIVED
DISTRICT OF NEW JERSEY
U.S. DISTRICT COURT
CLERK